1  Shari Mulrooney Wollman (Bar No. CA 137142)
   E-mail:  swollman@manatt.com
2  Matthew P. Kanny (Bar No. CA 167118)
   E-mail:  mkanny@manatt.com
3  Jessamyn Vedro (Bar No. CA 280209)
   E-mail:  jvedro@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:  (310) 312-4224

7  Christine Yang (Bar No. CA 102048)
   Email:  cyang@sjclawpc.com
8  LAW OFFICES OF S.J. CHRISTINE YANG
   17220 Newhope Street, Suites 101-102
9  Fountain Valley, CA 92708
   Telephone:  (714) 641-4022
10 Facsimile:  (714) 641-2082

11 *Attorneys for Defendant and Counterclaimant*
   SCEPTRE, INC.

12

13                 UNITED STATES DISTRICT COURT

14                CENTRAL DISTRICT OF CALIFORNIA

15

16 ZENITH ELECTRONICS LLC,              No.  2:14-cv-05150-JAK (AJWx)
   PANASONIC CORPORATION, AND
17 U.S. PHILIPS CORPORATION,            **Honorable John A. Kronstadt**

18            Plaintiffs,               **SCEPTRE, INC.'S FIRST
                                        AMENDED COUNTERCLAIMS**
19       vs.
                                        **[JURY TRIAL DEMANDED]**
20 SCEPTRE, INC.,

21            Defendant.

22 SCEPTRE, INC.,

23            Counterclaimant,

24       vs.

25 ZENITH ELECTRONICS LLC,
   PANASONIC CORPORATION, U.S.
26 PHILIPS CORPORATION, and MPEG
   LA, LLC,
27
             Counter-Defendants.
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                    SCEPTRE, INC.'S FIRST
                                            AMENDED COUNTERCLAIMS

# **COUNTERCLAIMS**[1]

Sceptre, Inc. ("Sceptre") hereby submits its Counterclaims against Plaintiffs Zenith Electronics LLC ("Zenith"), Panasonic Corporation ("Panasonic"), and U.S. Philips Corporation ("Philips") (collectively, "Plaintiffs")  and MPEG LA, LLC ("MPEG LA") (together with Plaintiffs, "Counter-Defendants" or "the co-conspirators"), and upon information and belief as to the actions of all persons or entities other than Sceptre, alleges as follows:

1. By this Counterclaim, Sceptre seeks to end unlawful and anticompetitive practices acquired through the manipulation of the standard setting process for the Advanced Television Systems Committee ("ATSC") technology standard "for transmitting and receiving digital television ("DTV") in the United States," (Compl. ¶ 15) ("the ATSC Standard").  Plaintiffs—who are or were horizontal competitors of Sceptre in the market for digital televisions sold in the United States—own patents in the "pool" of purported "standard essential" patents that they claim comprise the ATSC Standard, which the Federal Communications Commission ("FCC") adopted and now requires for every television sold in the United States.

2. Plaintiffs knew or should have known that some of their patents would read on the ATSC Standard that was ultimately adopted.  In fact, several of the patents on which they have brought suit were pending at the time of the standard setting meetings, and issued after the ATSC Standard was formally adopted.

3. Plaintiffs, among others, expressly promised that they would license their patents that read on the ATSC Standard upon terms that are fair, reasonable and non-discriminatory.  By doing so, Plaintiffs induced the standard setting bodies and the FCC into granting them monopoly power on the standard essential

---

[1] This pleading, together with Sceptre, Inc.'s concurrently filed First Amended Answer, Affirmative Defenses, together replace Dkt. 51 pursuant to the Court's Civil Minute Order dated November 12, 2014 (Dkt. 58).

technology for the transmission and receipt of digital television in the United States.  Despite their promises, Plaintiffs have not licensed their standard essential patents on fair, reasonable and non-discriminatory terms; to the contrary, Plaintiffs and MPEG LA have colluded to artificially inflate prices on their patent licenses to excessive levels, and in so doing, have raised competitors' costs, reduced output, and restrained competition, including Sceptre.

## THE PARTIES

4.      Sceptre is a corporation organized under the laws of California with its principal place of business located in City of Industry, California.

5.      Upon information and belief, MPEG LA is a Delaware Limited Liability Company, having its principal place of business in Denver, Colorado.

6.      Upon information and belief based on the allegations in paragraph 1 of the Complaint, Zenith is a Delaware Limited Liability Company, having its principal place of business in Lincolnshire, Illinois.  Sceptre is informed and believes, and on that basis alleges, that Zenith is currently a wholly owned subsidiary of LG Electronics Inc. ("LG").  Sceptre is further informed and believes, and on that basis alleges, that LG currently sells televisions under the LG rather than the Zenith brand in the downstream product market, as described below.  For purposes of this Counterclaim, the term Zenith shall refer to the conduct of its parent, LG, with respect to allegations concerning sales of products in the downstream product market.

7.      Upon information and belief based on the allegations in paragraph 2 of the Complaint, Panasonic is a Japanese corporation, having its principal place of business in Osaka, Japan.  Sceptre is informed and believes, and on that basis alleges, that Panasonic was previously known as Matsushita Electric Corporation of America and/or Matsushita Electric Industrial Co., Ltd. (together, "Matsushita").  All references to Panasonic herein shall include Matsushita.

8.      Upon information and belief based on the allegations in paragraph 3 of

1   the Complaint, Philips is a Delaware corporation, having its principal place of

2   business in Briarcliff Manor, New York.  Sceptre is informed and believes, and on

3   that basis alleges, that Philips has licensed the right to sell DTVs under the Philips

4   brand to Funai Electric Co. Ltd. ("Funai").

5         9.    Upon information and belief, MPEG LA is a Delaware Limited

6   Liability Company, having its principal place of business in Denver, Colorado.

7   Sceptre is informed and believes, and on that basis alleges, that at all times relevant

8   hereto, MPEG LA was and is the Licensing Administrator acting on behalf of each

9   of the other Counter-Defendants, and all of the things alleged to have been done by

10   MPEG LA were done in the capacity, scope and course thereof.

11                   **JURISDICTION AND VENUE**

12         10.    This Court has exclusive original jurisdiction over the subject matter

13   of this action under 28 U.S.C. § 1331.  This action arises under the Patent Act of

14   1952, 35 U.S.C. §§ 1, et seq., as amended, the Declaratory Judgment Act, 28 U.S.C.

15   §§ 2201 et seq., and the Sherman Act, 15 U.S.C. § 1 et seq.  Exclusive jurisdiction

16   for any action arising under any Act of Congress relating to patents is conferred on

17   U.S. District Courts pursuant to 28 U.S.C. § 1338(a), and under the Sherman Act

18   pursuant to 28 U.S.C. § 1337.

19         11.    In addition, this Court has supplemental jurisdiction over the breach of

20   contract, promissory estoppel and unfair competition claims pursuant to 28 U.S.C.

21   § 1367 because these claims are so related to claims in the action within such

22   original jurisdiction that they form part of the same case or controversy under

23   Article III of the United States Constitution.

24         12.    This Court has personal jurisdiction over Zenith because, on

25   information and belief, Zenith conducts business in and maintains substantial

26   contacts with the State of California, Zenith has purposefully availed itself of

27   commercial activities in this forum and this Counterclaim arises out of those

28   activities.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                     4                SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

13.     This Court has personal jurisdiction over Panasonic because, on information and belief, Panasonic conducts business in and maintains substantial contacts with the State of California, Panasonic has purposefully availed itself of commercial activities in this forum and this Counterclaim arises out of those activities.

14.     This Court has personal jurisdiction over Philips because, on information and belief, Philips conducts business in and maintains substantial contacts with the State of California, Philips has purposefully availed itself of commercial activities in this forum and this Counterclaim arises out of those activities.

15.     This Court has personal jurisdiction over MPEG LA because, on information and belief, it conducts business in and maintains substantial contacts with the State of California, and because it has sought to license the ATSC patent pool to parties in this jurisdiction.

16.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and 1391(c), and (d) and § 1400(b) because a substantial part of the events giving rise to the Counterclaims occurred in this District and, on information and belief, Zenith, Panasonic and Philips conduct business in this District.

## GENERAL ALLEGATIONS

**Patents In Suit**

17.     Upon information and belief based on paragraph 10 of the Complaint, on or about September 1, 1998, United States Patent No. 5,802,107, entitled "Symbol Rotator," was issued ("the '107 patent").

18.     Upon information and belief based on paragraph 37 of the Complaint, Zenith purports to be the owner by assignment of the '107 patent.

19.     Upon information and belief based on paragraph 11 of the Complaint, on or about May 13, 1997, United States Patent No. 5,629,958, entitled "Data Frame Structure and Synchronization System for Digital Television Signal," was

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                               5                    SCEPTRE, INC.'S FIRST
                                                              AMENDED COUNTERCLAIMS

1    issued ("the '958 patent").

2         20.    Upon information and belief based on paragraph 43 of the Complaint,

3    Zenith purports to be the owner by assignment of the '958 patent, which expired on

4    July 7, 2014.

5         21.    Upon information and belief based on paragraph 12 of the Complaint,

6    on or about August 23, 2011, United States Patent No. Reissue 42,643, entitled

7    "Communication System," was reissued ("the '643 patent").

8         22.    Upon information and belief based solely on paragraph 49 of the

9    Complaint, Panasonic purports to the owner by assignment of the '643 patent,

10   which expired on February 3, 2014.

11        23.    Upon information and belief based solely on paragraph 13 of the

12   Complaint, on or about November 4, 1997, United States Patent No. 5,648,541,

13   entitled "Transmitter Station for Transmitting a Plurality of Television Programs,

14   and Receiver for Receiving the Programs," was issued ("the '541 patent").

15        24.    Upon information and belief based solely on paragraph 55 of the

16   Complaint, Philips purports to be the owner by assignment of the '541 patent,

17   which expired on May 11, 2014.

18        25.    On July 2, 2014, Plaintiffs filed the Complaint in this action alleging

19   infringement of the '107, '958, '643, and '541 patents by Sceptre (together, the

20   '107, '958, '643, and '541 are referred to as "the Patents In Suit").

21   **Background of Standard Setting Organizations**

22        26.    The development of uniform technical standards can often play an

23   important role in the development of new technology.  While standards

24   development can benefit certain technologies by encouraging innovation as

25   technical specifications for the standards become widely accepted, the standards

26   also can have disadvantages.  For instance, technical standardization creates a

27   "lock-in" effect and the risk of "patent hold-up."  When there are no standards, the

28   royalty a patentee can earn from a patent license for its technology is constrained by

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                                   6                    SCEPTRE, INC.'S FIRST
                                                                  AMENDED COUNTERCLAIMS

1    the availability of alternative technologies; however, once a standard requires a

2    manufacturer to employ patented technology, other technologies are no longer

3    available substitutes and no longer constrain a patentee's ability to demand royalties

4    far in excess of what is warranted by the intrinsic value of the technology.

5        27.    Once a standard is set manufacturers continue to develop new products

6    that also comply with the technical standard.  Since the costs and disruption

7    associated with using a different technology are often prohibitively expensive, the

8    manufacturer that implements, or is required to implement, a standard therefore

9    becomes "locked-in."  Owners of patents that cover aspects of the standard are in a

10   position to take advantage of lock-in and demand exorbitant royalties from

11   manufacturers, knowing that it would be less costly for the manufacturers to pay the

12   excessive royalty rather than incur the cost of litigation including the risk of an

13   injunction.

14       28.    For these reasons, timely disclosure of essential intellectual property

15   rights is critical to ensuring that those participating in standards development can

16   evaluate various proposals for the standard with knowledge of the associated

17   licensing costs for each proposed technology.

18       29.    To prevent patent hold-up, participants to the standard setting process

19   who may own essential patents must generally commit to license those rights on

20   fair, reasonable and nondiscriminatory ("FRAND") terms to any manufacturer who

21   uses the standard.  Participants in standards development rely on these contractual

22   undertakings to ensure that the widespread adoption of the standard will not be held

23   hostage by owners of standard essential patents who may seek to extract

24   unreasonable royalties from those implementing the standard.

25   **The Selection and Adoption of the ATSC Standard Technology**

26       30.    The ATSC Standard involved in this litigation concerns digital

27   television transmission.  Two fundamentally different methods exist for

28   transmitting television images: analog and digital.  Since approximately 1940, all

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                    7                     SCEPTRE, INC.'S FIRST
                                                                     AMENDED COUNTERCLAIMS

1  television transmissions in this State and throughout the United States used analog
2  transmission incorporating the FCC-approved NTSC Analog Television Standard
3  as amended.  At all relevant times up until the mid-to-late 2000's, television sets
4  and VCRs in the United States including in this State primarily used NTSC Analog
5  Television Standard technology.

6       31.    The Advanced Television Systems Committee ("ATSC"), is a
7  standard-setting body based in Washington, D.C. that is composed of
8  representatives from various entities involved in the creation and maintenance of
9  standards related to digital television in the United States.

10       32.    Sceptre is informed and believes, and on that basis alleges that, in
11  1987, the Federal Communications Commission ("FCC") initiated a rule making
12  proceeding to consider issues surrounding the use of advance television
13  technologies by television broadcast licensees.  In that same year, the FCC
14  established the Advisory Committee on Advanced Television Service (the
15  "Advisory Committee") to assist the FCC in gathering and processing necessary
16  information on, and ultimately in choosing, an advanced television system.  The
17  Advisory Committee created an evaluation, test and analysis process for the
18  submittal and evaluation of competing proposals. Sceptre is further informed and
19  believes, and on that basis alleges that the ATSC worked closely with the Advisory
20  Committee throughout this process.

21       33.    Sceptre is informed and believes, and on that basis alleges that,
22  pursuant to the process adopted by the Advisory Committee, the Advisory
23  Committed accepted 23 different systems from system proponents.  By about 1991,
24  the number of competing proposals had been reduced to six, including four all-
25  digital systems.  Upon information and belief, the competing all-digital systems
26  included: (i) the DigiCipher system, proposed by General Instrument Corporation
27  ("GI Corp."); (ii) the Advanced Digital HDTV system, proposed by Sarnoff,
28  Thomson, Philips and NBC; (iii) the Digital Spectrum Compatible Television

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

8

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

system, proposed by Zenith and AT&T; and (iv) the Channel Compatible DigiCipher system, proposed by GI Corp. and Massachusetts Institute of Technology ("MIT").  Around this time, the four all-digital systems were tested, but none were approved by the Advisory Committee. Upon information and belief, in or about February 1993, the Advisory Committee determined that an all-digital system was feasible and requested that certain improvements be made to each of the four all-digital systems and requested that each system proposal be re-submitted for further testing; but at the same time, the Advisory Committee also expressed a willingness to entertain a proposal by the remaining all-digital system proponents for a single system that incorporated the best elements of these systems.

34.     Sceptre is informed and believes, and on that basis alleges that, in May 1993, in response to the Advisory Committee's suggestion that it would entertain a proposal for a single system, an alliance was formed by the remaining all-digital system proponents, which was known as "the Grand Alliance."  Upon information and belief, the members of the Grand Alliance included Counter-Defendants Zenith and Philips (through a predecessor or other affiliate).  Upon information and belief, prior to the formation of the Grand Alliance, Grand Alliance members had worked competitively against one another in hopes that their system proposal would be chosen for the advanced television system standard.  Sceptre is informed and believes, and on that basis alleges that, after the formation of the Grand Alliance, Grand Alliance members worked closely together to develop a single all-digital system.

35.     Sceptre is informed and believes, and on that basis alleges that, ultimately, Grand Alliance members agreed to a Grand Alliance system which incorporated, among other competing technologies, Zenith's "VSB technology," and submitted their proposal to the Advisory Committee for testing.  Following this testing, in which the ATSC participated, the ATSC membership approved  the Grand Alliance system as the "ATSC Standard."

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

9

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

36.     Upon information and belief, Panasonic (then known as Matsushita) participated in the standard-setting process and provided commentary to the FCC on the proposed ATSC standard.

**The FCC Adopts the ATSC Standard and Requires FRAND Licensing by Patent Owners**

37.     Sceptre is informed and believes, and on that basis alleges that the Advisory Committee recommended to the FCC that the ATSC Standard be adopted as the standard for digital terrestrial television broadcasting in the United States. Upon information and belief, on December 24, 1996, the FCC adopted the major elements of the ATSC Standard, mandating its use for digital television broadcasts in the United States.  FCC rules require broadcasters to broadcast digital television signals in compliance with the ATSC Standard, and require digital television receivers to be equipped with digital television tuners for receiving, decoding, and presenting such digital television signals in compliance with the ATSC Standard.

38.     Sceptre is informed and believes, and on that basis alleges that, in 1996, the United States Congress required that all full power television stations in the United States, including those transmitting in and into this State, must transmit digital signals as of February 17, 2009, which date was later extended to June 12, 2009. This switch to digital signal transmission required consumers in this State and throughout the country either to replace their analog televisions with expensive digital televisions or instead buy a digital-to-analog converter box so that digital signals after June 13, 2009, could still be viewed on the consumers' analog televisions and VCRs.

39.     To protect against unscrupulous conduct by any member who seeks to benefit unfairly from, or to manipulate to its advantage, the advanced television standard-setting process, and to enable the ATSC and its members to develop standards free from potentially blocking patents, Sceptre is informed and believes, and on that basis alleges, that the ATSC instituted policies and rules regarding the

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

10

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

disclosure and licensing of patents.

40.   Sceptre is informed and believes, and on that basis alleges, that the ATSC's rules and policies require fairness and candor with respect to intellectual property including, for example, requiring members to disclose potential "standard essential" patents that read on the standards, and/or license them on FRAND terms.

41.   Moreover, when the FCC adopted portions of the ATSC standard it prepared a "Fourth Report and Order," in which it acknowledged that the proponents of the ATSC Standard—including, on information and belief, Zenith, Panasonic and Philips—agreed to make any relevant patents they owned available either free of charge or on a reasonable, nondiscriminatory basis; the FCC then expressly stated that its adoption of the ATSC standard was premised directly upon those assurances:

> 54. In earlier phases of this proceeding we indicated that, in order for DTV [digital television] to be successfully implemented, the patents on the technology would have to be licensed to other manufacturing companies *on reasonable and nondiscriminatory terms*. We noted that the system proponents that participated in the Advisory Committee's competitive testing process were required to submit a statement that they would comply with the ANSI patent policies. *The proponents agreed to make any relevant patents that they owned available either free of charge or on a reasonable, nondiscriminatory basis and we stated that we intended to condition selection of a DTV system on such commitments*. . . .
>
> 55. It appears that licensing of the patents for DTV technology will not be an impediment to the development and deployment of DTV products for broadcasters and consumers. *We reiterate that adoption of this standard is premised on reasonable and nondiscriminatory licensing of relevant patents*, but believe that greater regulatory involvement is not necessary at this time. We remain committed to this principle and if a future problem is brought to our attention, we will consider it

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

11

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

and take appropriate action.

Federal Communications Commission *"Fourth Report and Order"* In the Matter of Advanced Television Systems and Their Impact Upon the Existing Television Broadcast Service, MM Docket No. 87-268 (Dec. 24, 1996) (citations omitted) (emphasis added).

42.     Sceptre is informed and believes, and on that basis alleges that Zenith, Panasonic and Philips, among others, made promises and commitments to the ATSC and FCC to license their standard essential patents on FRAND terms, upon which the ATSC and FCC relied in setting the ATSC Standard.  For example:

(a)     On February 28, 1995, Zenith's Vice President Wayne C. Luplow sent a letter to Mr. Robert Hopkins of the ATSC in which he stated:

> "Zenith Electronics Corporation is a member of the 'Grand Alliance' of companies co-operating in the development of standards for definition television for the United States. In connection with that Grand Alliance development effort, Zenith has made inventions which it believes are required for compliance with the ATSC standard, as the standard is currently being developed by members of the Grand Alliance.  This is to confirm that in connection with the current high definition television standards selection proceedings before the ATSC, ***Zenith will make available to qualified applicants a license to practice such inventions in the field of HDTV under reasonable terms and conditions that are demonstrably free of any unfair discrimination [i.e., on FRAND terms].***" (Emphasis added)

(b)     On February 23, 1995, Michael E. Marion, Group Patent Counsel for Philips, sent a letter to Mr. Bob Hopkins of the ATSC in which he stated:

> "A license, under intellectual property owned by Philips Electronics North America Corporation and which is specific to the Grand Alliance HDTV System proposal, ***will be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.***" (Emphasis added)

(c)     On March 15, 2000, Osamu Yamazaki, Director, Intellectual Property Center of Matsushita Electric Industrial Co., Ltd. ("Matsushita") [Panasonic's prior corporate name], sent a letter to the "Intellectual Property

Director" of the ATSC which stated:

> "[Matsushita] hereby declares that it is prepared to license its freely licensable patents, if any, both granted and pending, which are essential to implementation of the proposed 'HAVi Level-2 User Interface'. [Matsushita] also declares that *it is aware of the rules described in the ATSC Patent Policy, and in particular that it is willing to grant a patent license to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination*...." (Emphasis added)

    (d)    On July 28, 2003, Zenith's Senior V.P. Research and Technology, Richard Lewis, sent a second letter to the ATSC in which he stated:

> "Zenith... has been granted the exclusive rights by LG Electronics, Inc. and ATI Technologies Inc., to license certain inventions which are believed required (i.e. essential) for compliance with ATSC Document T3-596... and the adopted ATSC standard to issue based on such document (the 'ATSC Standard'). This is to confirm that pursuant to the ATSC Patent Policy, to the extent any such inventions are approved as a part of the ATSC Standard, *Zenith will made available to applicants a license to practice such inventions for compliance with the ATSC Standard under reasonable terms and conditions that are demonstrably free of any unfair discrimination.*" (Emphasis Added)

43.    Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and others made these promises and commitments to the ATSC and/or the FCC and their members and affiliates in connection with the ATSC Standard setting process, that each of their essential patents would be available for licensing on FRAND terms.

44.    Sceptre is further informed and believes, and on that basis alleges, that had Plaintiffs and others failed to provide FRAND assurances, their patents would not have been incorporated into the ATSC Standard and/or the FCC would not have adopted the ATSC Standard using the chosen technology from among the alternatives available. Such FRAND assurances are for the protection of third-parties, like Sceptre, who rely on such FRAND commitments to ensure that the royalties later sought conform to the promises initially made, and do not result in patent hold up.

45.    Sceptre is informed and believes, and on that basis alleges, that in

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

13

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

providing FRAND assurances, Plaintiffs and others entered into an actual or implied contract for the benefit of any entity that implemented the ATSC Standard, and are now irrevocably bound by their commitments to offer licenses on FRAND terms until the ATSC Standard is withdrawn.

46.    In addition, Sceptre is informed and believes that Plaintiffs also agreed that they would license any of the patents they claimed to be essential to the standard on an individual basis, upon demand, and not only as part of a patent pool or package.

47.    Sceptre is informed and believes, and on that basis alleges that, over the years, the ATSC Standard has evolved and expanded since it was initially adopted by the FCC.  Upon information and belief, while some of the ATSC Standards are mandated by the FCC, others are not and are provided as "recommendations."

**Plaintiffs' Patents**

48.    Sceptre is informed and believes, and on that basis alleges that at the time of the ATSC standard setting process, Plaintiffs Zenith, Panasonic and Philips had patents and/or patent applications pending with claims that they would later assert read on the ATSC Standard, based upon the following:

(a)    Sceptre is informed and believes, and on that basis alleges, that the '541 patent owned by Philips has a priority date of May 12, 1994, and an issue date of November 4, 1997.

(b)    Sceptre is informed and believes, and on that basis alleges, that the '643 patent owned by Panasonic has a priority date of either May 10, 1994, or March 25, 1992, and was reissued on August 23, 2011.

(c)    Sceptre is informed and believes, and on that basis alleges, that the '958 patent owned by Zenith has a priority date of July 8, 1994, and was issued on May 13, 1997.

(d)    Sceptre is informed and believes, and on that basis alleges, that

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

14

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

the '107 patent owned by Zenith has a priority date of September 13, 1996, and was issued on September 1, 1998.

49.     Sceptre is informed and believes, and on that basis alleges, that the '541, '643, '958, and '107 patents all were pending at the time of the December 1996 adoption of the ATSC Standard, and all issued thereafter.

**Zenith's Early Attempts to License its VSB Patents**

50.     Sceptre is informed and believes, and on that basis alleges, that in the late 1990's or early 2000's, Zenith began to contact potential licensees about its digital vestigial sideband ("VSB") licensing program, which included several patents, including the '958 and '107 patents (together, "the VSB patents"). Upon information and belief, Zenith has claimed that the VSB technology incorporated into the ATSC Standard read on Zenith's VSB patents and are essential in connection with products designed to receive, demodulate and decode digital television signals in accordance with the ATSC Standard. Sceptre is informed and believes, and on that basis alleges that Zenith offered to license to potential licensees all of the VSB patents together at the rate of $5.00 per unit. Notably, upon information and belief, Zenith's VSB license royalty rate remained constant since the inception of its licensing program at $5.00 per unit, regardless of the retail price or type of the product sold and despite the fact that market conditions changed over time and certain of Zenith's VSB patents have expired.

51.     Sceptre is informed and believes, and on that basis alleges, that since the early 2000's, Zenith aggressively enforced its VSB patents, often instituting litigation against potential licensees who refused to license Zenith's VSB patents. Upon information and belief, over the years, Zenith contacted several television manufacturers to license its VSB patents, including Samsung, Panasonic, TTE Corporation ("TTE"), and Grand Alliance members Thomson Incorporated ("Thomson") and Philips.

52.     Sceptre is informed and believes, and on that basis alleges, that during

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

15

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

licensing negotiations with several television manufacturers, Zenith was told that the royalty rate of $5 per unit was unfair and unreasonable given the value of the technology, the manufacturing costs and profit margins of ATSC-compliant products, and the corresponding royalty rates for comparable technologies. For example:

(a)    Upon information and belief, on or about November 15, 2004, during negotiations with TACP, TACP (believed to be Toshiba America Consumer Products) complained that the royalty rate of $5 per unit was too high, and asked Zenith for a justification.  TACP indicated that it was aware of other licensors who demand significantly lower per unit royalties for *world-wide* licenses, and called Zenith's demand for a $5 per unit royalty for a primarily U.S. license "greatly inflated."

(b)    Upon information and belief, on or about August 2, 2005, in negotiations with Grand Alliance member and Counter-Defendant Philips, Philips complained that they royalty rate of $5 per unit was "much too high."

(c)    Upon information and belief, on or about November 15, 2004, during negotiations with Hitachi Home Electronics (America), Inc. ("Hitachi"), Hitachi complained that the royalty rate of $5 per unit was too high and not reasonable, indicating that a fair and reasonable royalty for the VSB patents could be as low as $0.25 per unit.

(d)    Upon information and belief, on or about March 31, 2005, during negotiations with Counter-Defendant Panasonic, Panasonic advised Zenith that the royalty rate of $5 per unit was too high and would cause some manufacturers, like Panasonic, to lose competitiveness.

(e)    Upon information and belief, on or about March 22, 2006, during negotiations with TTE, TTE advised Zenith that the royalty rate of $5 per unit was not reasonable, specifically noting that the impact of the $5 royalty on lower priced products is significant.  TTE requested that Zenith

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

16

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

consider a more sophisticated royalty structure to account for lower priced products.

(f)     Upon information and belief, on or about September 13, 2006, during negotiations with Funai, Funai advised Zenith that the royalty rate of $5 per unit was too high and argued that a "one royalty fits all" strategy does not work.

53.     Sceptre is informed and believes, and on that basis alleges that Zenith conducted lengthy negotiations with these and other potential licensees relating to the licensing of Zenith's VSB patents.  As a result of these negotiations, one of three events transpired, each of which is alleged on information and belief:

(a)     Some parties accused by Zenith of selling products that infringed its VSB patents were never sued by Zenith and did not sign a license.

(b)     Some parties, after negotiating with Zenith regarding a license for its VSB patents, agreed to sign a license without Zenith filing a lawsuit against them.

(c)     Some parties agreed to sign a license for Zenith's VSB patents only after they were sued by Zenith.

54.     Sceptre is informed and believes, and on that basis alleges that some of those who ultimately agreed to sign a license for Zenith's VSB patents did so only after being offered and accepting large "financial incentives" in the form of discounts, credits and/or forbearance of back royalties owed for sales of products accused of infringing the VSB patents, as an incentive to enter a license agreement.

55.     Sceptre is informed and believes, and on that basis alleges that the effect of the above is that Zenith effectively licensed its VSB patents for less than $5 per unit.  As a result, Zenith failed to license its VSB patents on FRAND terms, as it licensed its VSB patents for different rates, to different companies and thus engaged in price discrimination in connection with the licensing of its VSB patents.

56.     In addition, Sceptre is informed and believes, and on that basis alleges that some of the parties who agreed to sign a VSB license stopped manufacturing televisions for sale in the United States in the months or years that followed execution of these agreements.  For example, Sceptre is informed and believes that Philips has stopped manufacturing and selling televisions altogether.

**MPEG LA and the Formation of the ATSC Patent Pool**

57.     Sceptre is informed and believes, and on that basis alleges, that MPEG LA holds itself out as the world's leading packager of patent pools for standards in consumer electronics.  The "patent pool" of ATSC Standard patents (the "ATSC Pool") consists of an arrangement between MPEG LA, as "Licensing Administrator," and patent owners, including but not limited to Plaintiffs, whereby patent owners pool their patents and MPEG LA administers licenses of those patents to others who require access to the patents in order to sell devices that incorporate the ATSC Standard.

58.     Sceptre is informed and believes, and on that basis alleges, that in or about December 2004, MPEG LA called for submissions of patents from patent owners that believed their patents could be essential for implementing the ATSC Standard.  Sceptre is informed and believes, and on that basis alleges, that the initial patent evaluations were performed by the law firm of Proskauer Rose LLP ("Proskauer"), MPEG LA's counsel. Upon information and belief, an initial meeting was held in about June 2005, at which time Proskauer reported that ATSC essential patent holders interested in joining the ATSC Pool as of that time included LG Electronics, Samsung, Scientific-Atlanta, and Counter-Defendants Panasonic and Philips.  Upon information and belief, no specific royalty rate was proposed by MPEG LA at that time.  A number of subsequent meetings were held with MPEG LA and ATSC Standard essential patent holders to discuss formation of the ATSC Pool.

59.     Sceptre is informed and believes, and on that basis alleges that, in one

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

18

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

of those subsequent meetings in 2006, MPEG LA predicted that, between the years 2003 and 2009, the price of ATSC tuners would fall by roughly 80% and that the retail price of digital televisions would also substantially decrease.

60.     Sceptre is informed and believes, and on that basis alleges, that in or about late 2006 or early 2007, MPEG LA had discussions with Counter-Defendant Zenith about potentially joining the ATSC Pool.  Upon information and belief, Zenith was involved in settlement discussions with a number of manufacturers Zenith had sued in connection with its VSB patents and VSB licensing program, including Panasonic and Phillips, and as part of those discussions, was considering whether to join the ATSC Pool.

**Setting of the ATSC Pool Royalty at an Admittedly Anti-Competitive Rate**

61.     Sceptre is informed and believes, and on that basis alleges that, in or about April 2007,  MPEG LA, after discussions with Zenith, proposed a specific royalty rate to ATSC essential patent holders of $5 per unit, regardless of the device or its market price.

62.     Sceptre is informed and believes, and on that basis alleges, that current ATSC licensors Samsung and Panasonic, among potentially others, knew that the unreasonably high license fee was an antitrust violation as it would harm competition.  Specifically, they objected to the $5 per unit royalty and royalty split, claiming that the royalty rate was too high, was an antitrust violation, and the royalty fee "split" among the licensors unfairly favored Zenith over the other licensors.  For example, upon information and belief, on April 24, 2007, Samsung sent correspondence to Plaintiffs in which it argued (among other things) that:

(a)     The high royalty rate was potentially anticompetitive and a violation of the antitrust laws.  Specifically, Samsung stated:

/ / /

/ / /

/ / /

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

19

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

Thus the royalty burden on the manufactures [sic] will eventually become the cost burden on the US consumers through the price of DTVs – which seems to be against the US Government policy of lessening the burden on the customers.  On this point, we also question about *a **possible antitrust concern*** – can setting up a high royalty  and transferring the cost burden to consumers through a patent pool to favor one essential patent holder constitute a ***patent abuse***? (emphasis added)

(b)    The Zenith patents were not essential to the ATSC Standard, which could raise antitrust concerns and harm the market:

This is not a normative part but an informative part [of the ATSC Standard] – which is not considered mandatory. We are concerned that ***such scheme may raise anti-trust risk*** of tying of non-essential patents to essential patent ***and have negative impact on the market*** if 75% of the royalty is allocated to the essential patents of informative parts, all of which are owned by the same one patent holder. (emphasis added).

(c)    The royalty rate was too high when considering the royalty rates of other comparable technologies in other countries, such as the royalty rate for essential patents in the ARIB standard (Japanese DTV standard), which was about $0.85, and the royalty rate for essential patents in the European standard, which was about $0.67 to $1.00: "We do not understand what makes the ATSC standard is [sic] so expensive and valuable compared to ARIB and DVB-T." (emphasis added).

(d)    The royalty rate was too high given that "price for digital consumer products will experience a sharp drop shortly after their launch. DTV is not an exception for such case."  Specifically, Samsung noted,  in one example, that the ATSC royalty rate of $5 would result in a "royalty portion" of "8.3% of the price," which it stated was an "extremely high ratio – especially because the current royalty scheme fixes the royalty to $5 until

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

20

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

2016 ***without taking the inevitable drop of the product price into account***."

63.     Sceptre is informed and believes, and on that basis alleges, that Panasonic agreed with Samsung in correspondence that same date: "Please be advised that Panasonic can share Samsung concerns and agree to have a face-to-face meeting among all relevant holders."

64.     Upon information and belief, MPEG LA, in consultation with Zenith, and despite the objections of current ATSC licensors Panasonic and Samsung, refused to lower the royalty rate or modify the royalty split, but instead negotiated incentives for Samsung to join the ATSC Pool.  Sceptre is informed and believes, and on that basis alleges that Samsung ultimately agreed to join the ATSC Pool, but has continued to assert that the royalty rate is too high and has requested that the ATSC Licensors consider reducing the rate.

65.     Sceptre is informed and believes, and on that basis alleges, that in or about July 2007, MPEG LA and the ATSC Licensors (including Plaintiffs) came to agreement on the licensing terms of the ATSC Pool, and agreed to charge a royalty rate of $5 per unit for each television sold.  Upon information and belief, since inception of the ATSC Patent Pool, this rate has not changed.

66.     Sceptre is informed and believes, and on that basis alleges, that since the inception of the ATSC Pool, the retail price of digital televisions has dropped significantly, just as MPEG LA had predicted in 2006.  Notwithstanding this significant drop in the retail price of digital televisions, the royalty rate to license the patents in the ATSC Pool has remained constant, resulting in a significant royalty rate percentage increase in relation to retail price.  For example, the current retail price for a Sceptre 24" DTV is approximately $100.  In 2007, a 40" DTV sold for approximately $2,000.  Despite this significant drop in price, the ATSC royalty has remained constant at $5 per unit, regardless of size or sales price of each DTV.  Thus, whereas the ATSC royalty would have accounted for about .25% of the sales price for a DTV in 2007, that same royalty constitutes as much as 5% of the sales

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

21

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1   price for some televisions sold today.  Sceptre is informed and believes, and on that

2   basis alleges, that the excessive royalty rate is particularly problematic for lower

3   price-tier television sellers, like Sceptre, because these companies keep their prices

4   and costs lower to compete.

5   **MPEG LA and Plaintiffs Add Non-Essential Patents to the Pool and Fail to**

6   **Appoint An Independent Examiner**

7       67.    The U.S. Department of Justice ("DOJ"), in reviewing another patent

8   pool also administered by MPEG LA -- for the MPEG-2 audio and video

9   compression technology ("MPEG-2") – has noted that patent pools "can restrict

10  competition, whether among intellectual property rights within the pool or

11  downstream products incorporating the pooled patents," and expressed concern

12  regarding the "likelihood" that the patent licensors could use the license "as a

13  vehicle to disadvantage competitors in downstream product markets."  Letter from

14  Joel I. Klein, Acting Assistant Attorney General, Antitrust Division, Department of

15  Justice, to Gerrard R. Beeney, Esq. dated June 26, 1997 ("DOJ Business Review

16  Letter").  Notably, upon information and belief, Plaintiffs and/or MPEG LA have

17  not obtained DOJ Business Review of the ATSC Pool.

18      68.    In the DOJ Business Review Letter, the DOJ stressed the importance

19  of using an "independent expert" to ensure that only essential patents are included

20  in a patent pool: "The limitation of the Portfolio to technically essential patents and

21  the use of an independent expert to be the arbiter of that limitation reduces the risk

22  that the patent pool will be used to eliminate rivalry between potentially competing

23  technologies."

24      69.    Sceptre is informed and believes, and on that basis alleges, that MPEG

25  LA has retained Proskauer to conduct the review of some number of patents in the

26  ATSC Pool.  However, upon information and belief, Proskauer is not

27  "independent," as it also serves as trial counsel to Plaintiffs and MPEG LA in this

28  and other patent infringement actions brought on behalf of Plaintiffs and others, not

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                    22                  SCEPTRE, INC.'S FIRST
                                                   AMENDED COUNTERCLAIMS

only in connection with the ATSC Standard, but also with regard to the MPEG-2 standard.  In addition, as mentioned above, Sceptre is informed and believes, and on that basis alleges, that MPEG LA retains a litigation reserve from the royalties it collects from licensing ATSC patents, and that such reserve has been used to pay Proskauer for fees incurred in connection with this action and others.

70.     Sceptre is informed and believes, and on that basis alleges, that not every patent in the ATSC Pool is necessary to practice the ATSC Standard in the United States and/or essential to the practice of the mandatory portions of the ATSC Standard.  For example, the ATSC Pool presently includes thirty-five (35) Zenith patents, *only four (4) of which are U.S. patents* (U.S. 5,619,269, U.S. 5,677,911 (expired October 13, 2014), U.S. 5,802,107, and U.S. 5,987,070), *and the remainder of which are foreign patents.*[2]  Despite the fact that only approximately 10% of Zenith's patents in the ATSC Pool are U.S. patents, Sceptre is informed and believes, and on that basis alleges, that the royalty rate to license the patents in the ATSC Pool has not been adjusted and/or reduced.

In addition, upon information and belief, since the inception of the ATSC Pool, many patents that had been alleged to be essential to the ATSC Pool have expired.  For example, *three of the four Patents in Suit expired earlier this year,* including: Zenith's '958 patent (expired July 7, 2014, five days *after* this lawsuit was filed); Panasonic's '643 patent (expired February 3, 2014); and Philips' '541 patent (expired May 11, 2014).  Despite the expiration of these and more than 80 other patents since 2010 (and, upon information and belief, many others prior to that time), the royalty rate to license the patents in the ATSC Pool has not been adjusted and/or reduced.

**Plaintiffs and MPEG LA Fail to Abide by Their FRAND Obligations**

71.     Sceptre is informed and believes, and on that basis alleges, that from at

---

[2] *See* http://www.mpegla.com/main/programs/ATSC/Documents/atsc-att1.pdf for a full list of patents currently in the ATSC Pool.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

23

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

least 2007, Plaintiffs and/or their licensees have competed with Defendant in selling digital televisions throughout the United States, including in this State.

72.     MPEG LA has demanded that Sceptre enter into a license agreement for the ATSC Pool, which MPEG LA has claimed consists of patents that are all essential to the ATSC Standard, and which MPEG LA claims are embodied in products sold by Sceptre.

73.     Sceptre has attempted to negotiate license agreements with MPEG LA on FRAND terms.  During the negotiations, Sceptre informed MPEG LA that the royalty sought by MPEG LA was unfair and unreasonable, given Sceptre's size, market position, and practice of competing on lower prices.

74.     MPEG LA and Plaintiffs also demanded back royalties from Sceptre for products previously sold by Sceptre that allegedly utilized the ATSC Standard. Sceptre informed MPEG LA that it was not entitled to royalties from Sceptre as its vendors are authorized licensees of MPEG LA's ATSC program.  MPEG LA informed Sceptre that Sceptre was nevertheless required to pay royalties for the products sold under its "brand."

75.     Plaintiffs are responsible not only for their own breaches of their FRAND assurances, but for the actions of MPEG LA, which has failed to extend Sceptre a license for the ATSC patent pool on FRAND terms.

76.     MPEG LA and Plaintiffs have demanded royalty rates that exceed the rate that such patents should reasonably command given the following, each of which is stated on information and belief:

(a)     The expiration of three of the four Patents in Suit, and more than eighty (80) patents in the ATSC Pool since 2010;

(b)     The questionable essentiality of the Patents in Suit and/or the patents in the ATSC Pool;

(c)     The value of the patents relative to the price of the products at issue;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                              24                    SCEPTRE, INC.'S FIRST
                                                         AMENDED COUNTERCLAIMS

1          (d)     The declining market price for products alleged to be using the

2   patents.

3          77.    In addition, Sceptre is informed and believes, and on that basis alleges

4   that MPEG LA and/or Plaintiffs have demanded that Sceptre pay royalties on

5   products for which Plaintiffs either have already received a royalty, or are already

6   entitled to receive a royalty, in violation of the doctrine of patent exhaustion, and

7   have demanded royalties for a period of time that exceeds that which is allowed

8   under U.S. patent law.

9          78.    Moreover, Sceptre is informed and believes, and on that basis alleges,

10   that MPEG LA and Plaintiffs failed to take into consideration any of the following

11   factors when issuing their royalty demands:

12          (a)     The availability and royalty rates for similar patents and/or

13   patent pools, including the MPEG2 patent pool also administered by MPEG

14   LA, and others;

15          (b)     The profitability of the patented invention, including the

16   duration and term of the license, alternatives that could have been written

17   into the standard, and the customary selling price of the products.

18          79.    Sceptre is informed and believes, and on that basis alleges that by their

19   conduct, Plaintiffs and MPEG LA are attempting not only to receive a windfall in

20   profits, but to artificially inflate the price of digital televisions sold in the U.S. to

21   supra-competitive levels to restrain or eliminate competition for lower price-tier

22   televisions.  In so doing, Plaintiffs and MPEG LA are engaging in anti-competitive

23   conduct by attempting to eliminate competition in the U.S. market for digital

24   televisions by increasing the costs of Sceptre and certain other horizontal

25   competitors in order to reduce output and restrain or eliminate competition.

26   **Plaintiffs and MPEG LA Intentionally Injure Sceptre and, In So Doing,**

27   **Restrain and Eliminate Competition**

28          80.    In or about the Summer of 2012, MPEG LA and/ or Plaintiffs sent

letters to some of Sceptre's most important customers with the express, admitted intention of causing those customers to stop doing business with Sceptre.  Sceptre is informed and believes that Plaintiffs and/or MPEG LA sent letters to both Costco and Target, both of whom were active Sceptre customers at the time, immediately prior to the holiday season, to inform them that Sceptre had not taken a license for the ATSC Patent Pool and that such customers would be liable for patent infringement.

81.     Scepter is informed and believes, and on that basis alleges, that in its communications with Sceptre's customers MPEG LA failed to inform them that Sceptre's DTV suppliers did, in fact, have a license from MPEG LA to the ATSC Patent Pool.  Instead, MPEG LA expressly instructed Sceptre's customers to "insist" that Sceptre take out a license, despite knowing that the license terms were a FRAND violation, anti-competitive and intended to harm and eliminate competition.  MPEG LA also instructed Sceptre's customers to have Sceptre's products "***removed from its stores***."  (Emphasis added).  These letters were clearly intended to cause Sceptre's customers to stop doing business with Scepter, and in so doing, eliminate competition from Sceptre.

82.     The letters to Sceptre's customers had their desired effect.  Sceptre is informed and believes that after receiving the letters, neither Costco nor Target placed another order with Sceptre, and they have altogether stopped doing business with Sceptre.

83.     MPEG LA and Plaintiffs admittedly knew that by sending the letters to Sceptre's customers they would cause direct injury to Sceptre.  In an e-mail to Sceptre dated November 7, 2012, MPEG LA threatened that it would contact Sceptre's retail customers and stated: "In many cases, retailers have ceased doing business with unlicensed suppliers and have had the unlicensed products removed from the store's shelves.  With the holiday season rapidly approaching, we assume that this is something Sceptre would want to correct immediately in order to avoid

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                   26                   SCEPTRE, INC.'S FIRST
                                                                  AMENDED COUNTERCLAIMS

1   any interruption in sales."

2       84.   By threatening Sceptre that it would contact its largest customers,

3   MPEG LA intended to coerce it into taking a non-FRAND and anti-competitive

4   license, or face the loss of all business from its major customers.

5       85.   MPEG LA and Plaintiffs thus knowingly injured Sceptre, in the form

6   of lost customers and resulting lost sales.  The lost sales from Costco and Target are

7   presently unknown, but exceed $1 million.

8       86.   By refusing to extend license terms for the ATSC Patent Pool that

9   were fair, reasonable and non-discriminatory, MPEG LA and Plaintiffs prevented

10  Sceptre from obtaining a license to the ATSC technology.

11      87.   As purported owners of standard essential patents, Plaintiffs are

12  prohibited from seeking injunctive relief or otherwise engaging in "patent hold-up"

13  to prevent Sceptre or other competitors from selling products that compete with

14  their own products.  However, by sending letters to Sceptre's customers, MPEG LA

15  and Plaintiffs knowing and intentionally employed a competitive strategy by which

16  they effectively obtained injunctive-type relief, in that they knowingly and

17  intentionally eliminated competition from Sceptre, and harmed competition by

18  reducing output.

19  **The Relevant Technology Market**

20      88.   The relevant market is the market for the technology embodied in the

21  ATSC Standard (including the technology embodied in Plaintiffs' alleged standard

22  essential patents), which the FCC mandates must be utilized for every television

23  sold in the United States. (Hereafter, "the relevant technology market").

24  **Maintenance and Exercise of Monopoly Power in the Relevant Technology**

25  **Market**

26      89.   As stated above, once the FCC adopted the ATSC Standard, all

27  alternative technologies that had previously been considered were excluded from

28  use in connection with that standard and there are, by definition, no substitutes for

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                          27                    SCEPTRE, INC.'S FIRST
                                                          AMENDED COUNTERCLAIMS

the technology on which the ATSC Standard is based.  As owners of technology patents that are claimed to be essential to practice the ATSC Standard, Plaintiffs (and other owners of ATSC standard essential patents) are the sole suppliers of the technology needed to use the ATSC Standard.

90.     Plaintiffs each have the power to control prices and exclude competition in the relevant technology market by virtue of their ownership of patents they allege are essential to the ATSC Standard.  Plaintiffs have the ability to raise prices substantially above the competitive level for a significant period of time as their technology is a government mandate and there are no substitutes or alternatives.

91.     As a result, Plaintiffs each enjoy unquestioned monopoly power in the relevant technology market, as any one of their patents has the power to block or "hold up" the ability of another to use the ATSC Standard.

92.     Plaintiffs' monopoly in the ATSC Standard technology was constrained by their FRAND commitment, which, once repudiated by Plaintiffs, crossed from permissible monopoly power to illegal monopoly.

93.     Sceptre is informed and believes, and on that basis alleges, that Plaintiffs' monopoly power is not the result of superior business acumen or simple good fortune.  Rather, their monopoly power in the ATSC technology market has resulted from a continuing course of anticompetitive conduct, as set forth herein.

**The Downstream Product Market and the Effect of the Anticompetitive Conduct Upon It**

94.     The downstream product market is the market for all television sets which utilize the ATSC Standard that were sold or will be sold in the United States between the December 1996 adoption of the ATSC Standard and the expiration of the last of the ATSC standard essential patents.  (Hereafter, "the downstream product market").

95.     Sceptre is informed and believes, and on that basis alleges, that Sceptre

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

28

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

and Plaintiffs are or were horizontal competitors in the downstream product market. As Sceptre competes intensely on price, Sceptre is informed and believes, and on that basis alleges, that Plaintiffs have incentive to lessen the intensity of Sceptre's price competition and/or drive lower price-tier television sellers such as Sceptre from the market by imposing an unreasonably high royalty and thereby increasing lower price-tier television sellers' costs.

96.     Sceptre is informed and believes, and on that basis alleges that MPEG LA, acting as Licensing Administrator for the ATSC Pool, and Plaintiffs—all of whom are or were horizontal competitors of Sceptre in the downstream product market—have intentionally set their royalty rates at prices that are not only well above FRAND levels, but are intentionally so chosen to restrain or eliminate competition from Sceptre and others who sell their products at lower prices than those charged for comparable products sold by Plaintiffs.

97.     Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and MPEG LA, as Licensing Administrator for the ATSC Pool, have set royalty rates that in turn raise costs, and thus prices on products for which the royalties are paid.  Sceptre is informed and believes, and on that basis alleges, that this in turn restricts output and reduces or eliminates competition in the downstream product market.

98.     Sceptre is informed and believes, and on that basis alleges, that the anticompetitive conduct described above has harmed competition in the downstream product market in a number of ways since the ATSC patent pool was formed, including reduction in the number of companies manufacturing televisions, reduced competition to the detriment of consumers, and has increased market share for certain of the licensors in the ATSC patent pool.  For example, each of which is alleged on information and belief:

(a)     LG's (Zenith's parent) market share for digital televisions has increased from 4.9% in 2005, when the pool was formed, to 12.3% in 2012;

(b)     Philips has ceased manufacturing digital televisions, and now collects revenues from the ATSC patent pool, while it also collects royalties from licensing its brand to Funai.

99.    Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and other licensors are able to insulate themselves from the anticompetitive effects of the $5 royalty payment by entering into cross-licenses to help defray their costs.

100.    Sceptre is informed and believes, and on that basis alleges that the effect of this scheme is for licensors to reduce their own costs, while increasing the costs of rivals such as Sceptre, who do not share in the pool revenues and do not own their own patents with which to "horse trade" for offsetting royalties, a practice in which (Sceptre is informed and believes, and on that basis alleges), some ATSC licensees and licensors may be engaged.

101.    Sceptre is informed and believes, and on that basis alleges that by virtue of their anticompetitive conduct, as alleged herein, Plaintiffs enjoy windfall royalties at the expense of U.S. consumers and competition.

102.    Sceptre is informed and believes, and on that basis alleges that since the inception of the ATSC Pool, the current licensors have received excessive royalties, disproportionate to the value of their claimed inventions, which they have been able to extract given their strangle-hold over the ATSC technology.

103.    Sceptre is informed and believes, and on that basis alleges, that one company, Hitachi, estimated on or about November 15, 2004, that Zenith would eventually collect over $5 billion in royalties, which it characterized as "extraordinarily excessive," particularly "[a]gainst a $50 to $75 million investment."

104.    In addition, Sceptre is informed and believes, and on that basis alleges, that MPEG LA has received substantial fees to date in "licensing administration fees" for the ATSC Pool, and that it has a vested financial interest in facilitating and

1   perpetuating the collection of non-FRAND royalties for the ATSC Patent Pool in

2   order to maximize its own profits.

3   **Barriers to Entry**

4        105.   Sceptre is informed and believes, and on that basis alleges, that

5   significant entry barriers protect the relevant technology market.  Regulatory

6   requirements, including FCC mandated use of the ATSC Standard, prevent others

7   from adopting technology that competes with the ATSC Standard.

8   **Concerted Activity in Restraint of Trade**

9        106.   Sceptre is informed and believes, and on that basis alleges, that the

10  Plaintiffs and MPEG LA, as Licensing Administrator for the ATSC Pool, have

11  conspired in restraint of trade to affect, raise, fix, maintain, and stabilize prices in

12  the downstream product market by demanding an excessive, non-FRAND royalty

13  rate for the ATSC Standard. Such conduct, includes, without limitation, the

14  following, each of which is stated on information and belief:

15       (a)   MPEG LA, acting in concert with Plaintiffs and others, has

16  demanded an excessively high royalty for their alleged standard essential

17  patents which is intended to restrain or eliminate competition, and has in fact,

18  restrained and eliminated competition from Sceptre, as well as others in the

19  downstream product market; and

20       (b)   Plaintiffs, acting in concert with each other and MPEG LA, have

21  each demanded an artificially high royalty which is intended to restrain or

22  eliminate competition, and has in fact, restrained and eliminated competition

23  from Sceptre, as well as others in the downstream product market.

24       107.   Sceptre is informed and believes, and on that basis alleges, that the

25  effect of this unlawful conduct has been and will continue to be to restrain or

26  eliminate competition and reduce output, to the detriment of consumers.

27  **Antitrust Injury**

28       108.   Sceptre is informed and believes, and on that basis alleges, that

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                                    31                    SCEPTRE, INC.'S FIRST
                                                                    AMENDED COUNTERCLAIMS

1  Plaintiffs' conduct has and will harm competition and consumers of television sets
2  in the U.S.  Plaintiffs' conduct has and will increase the price and has and will
3  reduce the output of televisions that implement the ATSC Standard, thus raising
4  prices and reducing output of televisions available to consumers in the U.S.

5  109.  Sceptre is informed and believes, and on that basis alleges, that the
6  effect of the non-FRAND royalty rates charged by MPEG LA and Plaintiffs has
7  and will increase costs to television manufacturers and distributors, which in turn
8  have and will be passed through to consumers.

9  110.  Sceptre is informed and believes, and on that basis alleges, that the
10  non- FRAND royalties demanded by MPEG LA and Plaintiffs has resulted in a
11  reduction of competition, as it has decreased the production of products that
12  implement the ATSC Standard at lower prices.  For example, Sceptre has reduced
13  output and sales of products in the downstream product market in response to the
14  letters sent by MPEG LA and Plaintiffs to its customers and the filing of this action,
15  which has resulted in lost profits and lost opportunities.

16  111.  Sceptre is informed and believes, and on that basis alleges, that the
17  conduct of MPEG LA and Plaintiffs is subjecting Sceptre and other television
18  manufacturers to the threat of having to pay royalties that are overvalued.

19  112.  In addition, this conduct has forced Sceptre to incur substantial costs
20  associated with defending this action.  Moreover, because only three of the current
21  nine ATSC licensors have filed suit against Sceptre, and because each has filed suit
22  only on one or two of their ATSC patents—and there are more than one hundred
23  other patents in the ATSC Pool that are claimed to be essential to the ATSC
24  Standard—Sceptre faces the prospect of being forced to defend not only successive
25  lawsuits by these same Plaintiffs on any other ATSC patents they own, but
26  additional lawsuits by any of the other ATSC licensors on any of the ATSC patents
27  they own, as well.

28  / / /

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

32

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

# FIRST CLAIM FOR RELIEF

## VIOLATION OF SHERMAN ACT § 2—MONOPOLIZATION

### (Against All Plaintiffs)

113. Sceptre incorporates by reference the allegations contained in paragraphs 1 through 111 above, as though set forth in full.

114. Sceptre is informed and believes, and on that basis alleges, that the relevant technology market, as defined above, is a valid antitrust market.

115. Sceptre is informed and believes, and on that basis alleges, that Plaintiffs each possess monopoly power in the relevant technology market.

116. Sceptre is informed and believes, and on that basis alleges, that the conduct of Plaintiffs, as described above, occurred in or affected interstate commerce.

117. Sceptre is informed and believes, and on that basis alleges, that Plaintiffs each willfully acquired and maintain monopoly power in the relevant technology market by engaging in anticompetitive conduct.

118. Sceptre is informed and believes, and on that basis alleges, that as set forth above, Plaintiffs falsely represented to the ATSC and/or FCC that if their patented technology was included in the ATSC Standard, they would license any such patents to all applicants on FRAND terms.

119. Sceptre is informed and believes, and on that basis alleges, that the ATSC and FCC relied on these promises to license their standard essential patents on FRAND terms, as they would not have agreed to adopt a U.S. standard that would have given Plaintiffs "blocking patents."

120. Plaintiffs have failed, in good faith, to license their alleged standard essential patents on FRAND terms, and on information and belief, never intended to do so.

121. Sceptre is informed and believes, and on that basis alleges, that Plaintiffs have intentionally attempted to obtain, and have obtained monopoly

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

33

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

power and the ability to control prices in the relevant technology market. Specifically, having succeeded in using false promises in order to have their technology incorporated into the ATSC Standard, they now seek to utilize the patents allegedly covering that technology to raise prices and exclude competition in the downstream product market.

122.   Sceptre is informed and believes, and on that basis alleges, that the actions of Plaintiffs have had or will have the following effects: competition in the relevant market has and will be impaired and restrained, and they have and will have illegally obtained the power to control prices and/or restrain and exclude competition in the downstream product market, thereby affecting interstate commerce.

123.   Sceptre is informed and believes, and on that basis alleges, that unless the attempts of Plaintiffs to obtain an unfair, unreasonable, and discriminatory royalty are declared to be unlawful, and in view of their allegations that all of Sceptre's ATSC products are subject to their patents, Sceptre is and will continue to be injured in its business and property and will suffer substantial and irreparable harm.

**SECOND CLAIM FOR RELIEF**

**VIOLATION OF SHERMAN ACT § 2 - CONSPIRACY TO MONOPOLIZE**

**(Against All Plaintiffs and MPEG LA)**

124.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 122 above, as though set forth in full.

125.   Sceptre is informed and believes, and on that basis alleges, that the relevant technology market, as defined above, is a valid antitrust market.

126.   Sceptre is informed and believes, and on that basis alleges, that Zenith, Panasonic and Philips each possess monopoly power in the relevant technology market as each of their patents that is alleged to be essential to the ATSC Standard has the power to block implementation of the ATSC Standard, and thus the sale of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                34                                SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

digital televisions in the downstream product market.  In addition, by pooling their allegedly standard essential ATSC patents in the ATSC Patent Pool, Plaintiffs have monopoly power in the relevant technology market, as those such as Sceptre who wish to sell digital televisions in the U.S. must pay the non-FRAND license fee of $5 per unit.  Thus, through each of their individual ATSC patents and through the collective ATSC Patent Pool, Plaintiffs each individually possess, and also collectively possess, monopoly power in the relevant technology market.

127.   Sceptre is informed and believes, and on that basis alleges, that the conduct of Plaintiffs and MPEG LA, as described above, occurred in or affected interstate commerce.

128.   Sceptre is informed and believes, and on that basis alleges, that an agreement or mutual understanding exists between Plaintiffs, MPEG LA and others to acquire or maintain monopoly power and control prices in the relevant technology market.  Plaintiffs unlawfully acquired monopoly power in the relevant technology market by falsely promising to the FCC and/or ATSC that they would license their ATSC standard essential patents on FRAND terms (as stated in the Section 2 Monopolization claim above).  Plaintiffs and MPEG LA then expressly conspired and agreed, as set forth above, to pool and license their alleged standard essential patents on non-FRAND terms to unlawfully acquire or maintain monopoly power.

129.   Sceptre is informed and believes, and on that basis alleges, that Plaintiffs, MPEG LA and others knowingly, voluntarily, intentionally, and willfully entered into an agreement and mutual understanding to acquire or maintain monopoly power and control prices in the relevant technology market.

130.   Sceptre is informed and believes, and on that basis alleges, that Plaintiffs, MPEG LA and others committed the above-described overt acts of agreeing to license their alleged standard essential patents on non-FRAND terms in furtherance of the conspiracy to acquire or maintain monopoly power and control

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

35

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1  prices in the relevant technology market, with the conscious aim of using anti-

2  competitive conduct to acquire or maintain power in that market.

3      131.    Sceptre has been, and will continue to be injured in its business and

4  property because of the conspiracy to monopolize of Plaintiffs, MPEG LA and

5  others.

6  **THIRD CLAIM FOR RELIEF**

7  <u>**VIOLATION OF SHERMAN ACT § 1 - CONCERTED ACTION**</u>

8  <u>**UNREASONABLY RESTRAINING TRADE**</u>

9  **(Against All Plaintiffs and MPEG LA)**

10      132.    Sceptre incorporates by reference the allegations contained in

11  paragraphs 1 through  130 above, as though set forth in full.

12      133.    Sceptre is informed and believes, and on that basis alleges, that there

13  exists a contract, combination or conspiracy between or among Plaintiffs, MPEG

14  LA and others.

15      134.    Sceptre is informed and believes, and on that basis alleges, that the

16  contract, combination or conspiracy between or among Plaintiffs, MPEG LA and

17  others unreasonably restrains and/or eliminates trade.

18      135.    Sceptre is informed and believes, and on that basis alleges, that

19  Plaintiffs are engaged in interstate commerce in the United States, and the activities

20  alleged herein involve products in the flow of interstate commerce and will

21  substantially impact interstate commerce as television products complying with the

22  ATSC Standard are sold throughout the United States.

23      136.    Sceptre is informed and believes, and on that basis alleges, that the

24  restraint or elimination of trade, as alleged herein, has resulted in substantial harm

25  to competition in the downstream product market.

26      137.    Sceptre is informed and believes, and on that basis alleges, that

27  Plaintiffs are or were horizontal competitors of Sceptre in the downstream product

28  market that, upon information and belief, have conspired and agreed with MPEG

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

36

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1  LA to reduce or eliminate competition from lower price-tier television sellers such

2  as Sceptre by entering into the following agreements in restraint of trade: (a) an

3  agreement not to compete on pricing for the royalty rate for the ATSC patent pool;

4  and (b) an agreement to set a non-FRAND royalty rate for the pooled patents.

5      138.   Sceptre is informed and believes, and on that basis alleges, that MPEG

6  LA and Plaintiffs have used the cover of the ATSC Patent Pool to engage in

7  additional concerted action in unreasonable restraint of trade, including without

8  limitation: increasing the costs of rivals such as Sceptre, who do not share in the

9  ATSC Pool revenues and do not own their own patents with which to trade for

10 offsetting royalties; failing to offer licenses for their patents on FRAND terms;

11 engaging in patent hold up; demanding royalty rates that are excessive in light of

12 the fact that some patents in the ATSC Pool have or will soon expire; demanding a

13 royalty rate for products sold outside the statutory period of limitations for

14 infringement claims; demanding duplicative royalties for the same products on

15 which royalties have already been paid or are already due from third parties in

16 violation of the patent exhaustion doctrine; acting to restrain and eliminate trade as

17 to lower price-tier television sellers such as Sceptre by charging excessive rates

18 calculated to inflate costs and eliminate lower price-tier competition; demanding

19 royalties for non-U.S. patents; sending letters to Sceptre's customers in an effort to

20 eliminate competition and reduce output of DTVs; failing to demonstrate

21 essentiality of all patents; and having inadequate safeguards to ensure that the pool

22 is limited to patents actually essential to the ATSC Standard (together, "the

23 Anticompetitive Conduct").

24     139.   Sceptre is informed and believes, and on that basis alleges, that the

25 agreement to engage in the Anticompetitive Conduct between and among Plaintiffs,

26 or any of them, and/or between and among Plaintiffs, or any of them, and MPEG

27 LA, constitutes a contract, combination, or conspiracy in unreasonable restraint of

28 trade in violation of Section 1 of the Sherman Act.

140.   By engaging in the Anticompetitive Conduct, including but not limited to their practice of refusing licensing on FRAND terms, Plaintiffs and/or Plaintiffs and MPEG LA, are, upon information and belief, attempting to unreasonably restrain and suppress price competition in the downstream product market.

141.   Sceptre is informed and believes, and on that basis alleges, that the actions of Plaintiffs and/or Plaintiffs and MPEG LA have had or will have the following effects: competition in the downstream product market has been and will continue to be unreasonably impaired and restrained, thereby affecting interstate commerce; certain companies are no longer manufacturing televisions for sale in the U.S.; Plaintiffs and other licensors are able to reduce their own costs, while increasing the costs of rivals such as Sceptre.

142.   Sceptre is informed and believes, and on that basis alleges, that unless the conduct of Plaintiffs and/or Plaintiffs and MPEG LA to obtain an unfair, unreasonable, and discriminatory royalty, and other Anticompetitive Conduct are declared to be unlawful, and in view of Plaintiffs' and MPEG LA's assertions that all of Sceptre's ATSC Products are infringing all of Plaintiffs' patents in the ATSC Pool, Sceptre is and will continue to be injured in its business and property and will suffer substantial and irreparable harm.

**FOURTH CLAIM FOR RELIEF**

**BREACH OF CONTRACT**

**(Against All Plaintiffs)**

143.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 141 above, as though set forth in full.

144.   Sceptre is informed and believes, and on that basis alleges, that in express or implied statements to the FCC and/or ATSC,  and/or via their agreements with MPEG LA, Plaintiffs agreed to license any essential patents for the ATSC Standard on FRAND terms.

145.   Sceptre is informed and believes, and on that basis alleges, that for

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

38

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

consideration, including membership and participation in the FCC, ATSC, and/or the ATSC Pool, Plaintiffs entered into an express and/or implied contract with the FCC and/or ATSC,  to which others, including Sceptre, are third party beneficiaries.

146.   Sceptre is informed and believes, and on that basis alleges, that Plaintiffs, individually and through MPEG LA, breached their contractual obligations by failing to license their allegedly standard essential patents on FRAND terms.  Sceptre is informed and believes, and on that basis alleges, that Plaintiffs' demands for unreasonable royalties and/or failure to license their allegedly standard essential patents on FRAND terms failed to consider the following: licensors of the ATSC Patent Pool agreed that the royalty rate for the ATSC Patent Pool was anti-competitive and would harm competition; the costs of rivals, such as Sceptre, would be increased, as they do not share in the ATSC Patent Pool revenues and do not own their own patents with which to trade for offsetting royalties; by sending letters to Sceptre's customers, Plaintiffs would effectively enjoin and restrain Sceptre from selling DTVs and thus restrain competition and decrease output of DTVs; patents in the ATSC Pool have or will soon expire, and the royalty rates should decrease as patents in the pool expire; royalties had already been paid or were already due to be paid by third parties on products, and should not be demanded a second time in violation of the patent exhaustion doctrine;  the ATSC Patent Pool includes non-U.S. patents; and Plaintiffs have inadequate safeguards to ensure that the ATSC Pool is limited to patents actually essential to the ATSC standard.

147.   Sceptre is informed and believes, and on that basis alleges, that it has incurred damages and irreparable harm and will be further damaged in the future due to Plaintiffs' breach of their contractual obligations.  Such damages include, without limitation: lost profits and lost opportunities; a reduction in output; the ongoing threat of having to pay unreasonable royalties; the costs of having to

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                        39                      SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1   defend this lawsuit; and the threat of other lawsuits that may be brought by

2   Plaintiffs with regard to other ATSC patents they own, and/or by other ATSC

3   licensors with regard to their ATSC patents.

### FIFTH CLAIM FOR RELIEF

### PROMISSORY ESTOPPEL

**(Against All Plaintiffs)**

7       148.   Sceptre incorporates by reference the allegations contained in

8   paragraphs 1 through 146 above, as though set forth in full.

9       149.   Sceptre is informed and believes, and on that basis alleges, that

10  Plaintiffs made representations and engaged in other conduct, including

11  representations and/or omissions to the FCC and/or ATSC that obligated them to

12  license any patents they may own that they allege are required to operate in

13  accordance with the ATSC Standard, on FRAND terms.

14      150.   Sceptre is informed and believes, and on that basis alleges, that

15  Plaintiffs' conduct constituted promises to the FCC, ATSC, and/or third parties that

16  make, use, sell, offer to sell, or import into the United States products compliant

17  with the ATSC standard.  Sceptre is further informed and believes, and on that basis

18  alleges, that the intended purpose of Plaintiffs' promises was to induce reliance

19  thereon; by making such promises, Plaintiffs knew or reasonably should have

20  known they would be relied upon.

21      151.   Sceptre is informed and believes, and on that basis alleges, that the

22  FCC, ATSC, and/or third parties, including Sceptre, reasonably relied upon

23  Plaintiffs' promises, and invested substantial resources developing, marketing,

24  and/or selling products that are alleged to utilize the ATSC Standard, with the

25  expectation that Plaintiffs would comply with their promises and offer licenses to

26  any standard essential patents on FRAND terms.

27      152.   Plaintiffs are estopped from defaulting on these promises under the

28  doctrine of promissory estoppel.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                    40                    SCEPTRE, INC.'S FIRST
                                                    AMENDED COUNTERCLAIMS

153.   Sceptre is informed and believes, and on that basis alleges, that it has been damaged as a result of its reasonable reliance as set forth herein, and is threatened by the continuing loss of profits, customers, potential customers, goodwill, and product image such that injustice can only be avoided by enforcement of Plaintiffs' promises.  Such damages include, without limitation: lost profits and lost opportunities; reduction in output; the ongoing threat of having to pay unreasonable royalties; the costs of having to defend this lawsuit; and the threat of other lawsuits that may be brought by Plaintiffs with regard to other ATSC patents they own, and/or by other ATSC licensors with regard to their ATSC patents.

154.   Sceptre is informed and believes, and on that basis alleges, that it  will suffer irreparable injury by reason of the acts and conduct of Plaintiffs alleged above until and unless the court enjoins such acts, practices and conduct.

## SIXTH CLAIM FOR RELIEF

## <u>UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200 AND THE COMMON LAW</u>

### (Against All Plaintiffs and MPEG LA)

155.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 153 above, as though set forth in full.

156.   By the acts alleged, Plaintiffs and MPEG LA have engaged in unfair competition within the meaning of California Business & Professions Code § 17200, *et seq*. and the common law.

157.   Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and MPEG LA have engaged in unfair business practices, including, but not limited to: Plaintiffs' false representations to the ATSC and/or FCC that they would license their allegedly standard essential patents to all licensees on FRAND terms; and/or their conspiracy to monopolize and/or their conspiracy to reduce or eliminate competition from lower price-tier television sellers by agreeing not to

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

41

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1   compete on pricing for the royalty rate for the ATSC patent pool and agreeing to set

2   a non-FRAND royalty rate for the pooled patents.  Such conduct is unlawful,

3   unfair, and/or fraudulent and therefore violates California Business & Professions

4   Code § 17200, *et seq.* and the common law.

5        158.   The acts of Plaintiffs and MPEG LA violate and/or threaten to violate

6   the policy or spirit of the antitrust laws, and otherwise significantly threaten and/or

7   harm competition.  By the deceptive acts, practices, and conduct alleged above,

8   Plaintiffs and MPEG LA are violating Sections 1 and 2 of the Sherman Act, which

9   has injured competition as well as consumers in California and elsewhere.

10       159.   By reason of Plaintiffs' and MPEG LA's acts, Sceptre also has

11  suffered, and will continue to suffer, irreparable harm, for which Sceptre has no

12  adequate remedy at law.  Unless and until Plaintiffs' and MPEG LA's conduct is

13  enjoined, Plaintiffs and MPEG LA will continue to engage in the acts alleged

14  herein.

15       160.   Sceptre is entitled to relief, including an injunction and/or restitution.

16                        **SEVENTH CLAIM FOR RELIEF**

17       **DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

18                              **OF '107 PATENT**

19                            **(Against Zenith)**

20       161.   Sceptre incorporates by reference the allegations contained in

21  paragraphs 1 through 159 above, as though set forth in full.

22       162.   This is an action for a declaratory judgment of non-infringement by

23  Sceptre of the '107 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

24       163.   Plaintiffs have alleged that Sceptre directly infringes, indirectly

25  infringes by inducement, literally and/or under the doctrine of equivalents, the '107

26  Patent.

27       164.   The filing of this action by Plaintiffs, and Sceptre's First Affirmative

28  Defense, create an actual and justiciable controversy concerning the non-

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                           42                    SCEPTRE, INC.'S FIRST
                                                           AMENDED COUNTERCLAIMS

infringement of the '107 Patent.

165.   Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it does not infringe any claim of the '107 Patent.

## EIGHTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## OF '958 PATENT

### (Against Zenith)

166.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

167.   This is an action for a declaratory judgment of non-infringement by Sceptre of the '958 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

168.   Plaintiffs have alleged that Sceptre directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '958 Patent.

169.   The filing of this action by Plaintiffs, and Sceptre's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '958 Patent.

170.   Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it does not infringe any claim of the '958 Patent.

## NINTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF NON-INFRINGEMENT

## OF '643 PATENT

### (Against Panasonic)

171.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

172.   This is an action for a declaratory judgment of non-infringement by Sceptre of the '643 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

173.   Plaintiffs have alleged that Sceptre directly infringes, indirectly

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                        43                        SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1  infringes by inducement, literally and/or under the doctrine of equivalents, the '643

2  Patent.

3       174.   The filing of this action by Plaintiffs, and Sceptre's First Affirmative

4  Defense, create an actual and justiciable controversy concerning the non-

5  infringement of the '643 Patent.

6       175.   Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it

7  does not infringe any claim of the '643 Patent.

8                          **TENTH CLAIM FOR RELIEF**

9       **DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

10                            **OF '541 PATENT**

11                          **(Against Philips)**

12      176.   Sceptre incorporates by reference the allegations contained in

13  paragraphs 1 through 159 above, as though set forth in full.

14      177.   This is an action for a declaratory judgment of non-infringement by

15  Sceptre of the '541 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

16      178.   Plaintiffs have alleged that Sceptre directly infringes, indirectly

17  infringes by inducement, literally and/or under the doctrine of equivalents, the '541

18  Patent.

19      179.   The filing of this action by Plaintiffs, and Sceptre's First Affirmative

20  Defense, create an actual and justiciable controversy concerning the non-

21  infringement of the '541 Patent.

22      180.   Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it

23  does not infringe any claim of the '541 Patent.

24                      **ELEVENTH CLAIM FOR RELIEF**

25      **DECLARATORY JUDGMENT OF INVALIDITY OF '107 PATENT**

26                          **(Against Zenith)**

27      181.   Sceptre incorporates by reference the allegations contained in

28  paragraphs 1 through 159 above, as though set forth in full.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                              44                    SCEPTRE, INC.'S FIRST
                                                              AMENDED COUNTERCLAIMS

182.   Zenith purports to be the assignee and owner of the entire right, title and interest in the '107 patent.

183.   Zenith has sued Sceptre in the present action, alleging infringement of the '107 patent.  Thus, an immediate, real, and justiciable controversy exists between Zenith and Sceptre with respect to the alleged infringement, validity, and enforceability of the '107 patent.

184.   The claims of the '107 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

185.   Sceptre seeks a judgment declaring that the asserted claims of the '107 patent are invalid.

## TWELFTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF INVALIDITY OF '958 PATENT
### (Against Zenith)

186.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

187.   Zenith purports to be the assignee and owner of the entire right, title and interest in the '958 patent.

188.   Zenith has sued Sceptre in the present action, alleging infringement of the '958 patent.  Thus, an immediate, real, and justiciable controversy exists between Zenith and Sceptre with respect to the alleged infringement, validity, and enforceability of the '958 patent.

189.   The claims of the '958 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

190.   Sceptre seeks a judgment declaring that the asserted claims of the '958 patent are invalid.

/ / /

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

45

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

## THIRTEENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF '643 PATENT

### (Against Panasonic)

191.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

192.   Panasonic purports to be the assignee and owner of the entire right, title and interest in the '643 patent.

193.   Panasonic has sued Sceptre in the present action, alleging infringement of the '643 patent.  Thus, an immediate, real, and justiciable controversy exists between Panasonic and Sceptre with respect to the alleged infringement, validity, and enforceability of the '643 patent.

194.   The claims of the '643 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

195.   Sceptre seeks a judgment declaring that the asserted claims of the '643 patent are invalid.

## FOURTEENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF '541 PATENT

### (Against Philips)

196.   Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

197.   Philips purports to be the assignee and owner of the entire right, title and interest in the '541 patent.

198.   Philips has sued Sceptre in the present action, alleging infringement of the '541 patent.  Thus, an immediate, real, and justiciable controversy exists between Philips and Sceptre with respect to the alleged infringement, validity, and enforceability of the '541 patent.

199.   The claims of the '541 patent are invalid under one or more sections of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

46

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1    Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101,

2    102, 103, and/or 112.

3        200.    Sceptre seeks a judgment declaring that the asserted claims of the '541

4    patent are invalid.

5                              **PRAYER FOR RELIEF**

6        WHEREFORE, Sceptre denies that Plaintiffs are entitled to any relief,

7    including the relief requested in their Prayer for Relief, Sceptre respectfully

8    requests that this Court enter a judgment against Plaintiffs and in favor of Sceptre:

9        A.    Finding that Sceptre has not infringed the '107 patent;

10       B.    Finding that Sceptre has not infringed the '958 patent;

11       C.    Finding that Sceptre has not infringed the '643 patent;

12       D.    Finding that Sceptre has not infringed the '541 patent;

13       E.    Finding that the '107, '958, '643, and '541 patents are invalid;

14       F.    Declaring that the '107, '958, '643, and '541 patents are

15   unenforceable;

16       G.    Awarding to Sceptre damages in an amount to be proven at trial on

17   account of Plaintiffs' breach of contract;

18       H.    Compelling Plaintiffs to offer licenses to the Patents in Suit and ATSC

19   Pool on FRAND terms;

20       I.    Awarding to Sceptre damages, as well as treble damages, in an amount

21   to be proven at trial on account of acts of the Plaintiffs in violation of Section 1 of

22   the Sherman Act (15 U.S.C. § 1);

23       J.    Awarding to Sceptre damages, as well as treble damages, in an amount

24   to be proven at trial on account of the acts of Plaintiffs in violation of Section 2 of

25   the Sherman Act (15 U.S.C. § 2) and for Conspiracy to Monopolize in violation of

26   Section 2 of the Sherman Act;

27       K.    Finding that Sceptre is entitled to injunctive relief and restitution for

28   Plaintiffs' unfair competition;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                    47                    SCEPTRE, INC.'S FIRST
                                                                     AMENDED COUNTERCLAIMS

1  L.     Awarding to Sceptre attorneys' fees and costs pursuant to 15 U.S.C. §

2  15;

3  M.     Entering a judgment declaring that Sceptre is the prevailing party and

4  that this is an exceptional case pursuant to 35 U.S.C. § 285, and awarding Sceptre

5  its reasonable costs and expenses of litigation, including attorneys' and experts'

6  fees;

7  N.     Dismissing Plaintiffs' Complaint with prejudice;

8  O.     Denying any damages or injunctive relief to Plaintiffs; and

9  P.     Awarding to Sceptre such other and further relief as the Court may

10  deem just and proper.

11

12  Dated:  November 13, 2014      By:     /s/ Shari Mulrooney Wollman

13  Shari Mulrooney Wollman
    MANATT, PHELPS & PHILLIPS, LLP

14  Shari Mulrooney Wollman
    Matthew P. Kanny

15  Jessamyn Vedro

16  Christine Yang
    LAW OFFICES OF S.J. CHRISTINE YANG

17  *Attorneys for Defendant and Counterclaimant*

18  SCEPTRE, INC.

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

48

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## JURY DEMAND

Sceptre demands a trial by jury as to all claims, defenses, counterclaims, and issues properly triable thereby.


Dated:    November 13, 2014    By:     /s/ Shari Mulrooney Wollman
                                        Shari Mulrooney Wollman
                                        MANATT, PHELPS & PHILLIPS, LLP
                                        Shari Mulrooney Wollman
                                        Matthew P. Kanny
                                        Jessamyn Vedro

                                        Christine Yang
                                        LAW OFFICES OF S.J. CHRISTINE YANG

                                        *Attorneys for Defendant and Counterclaimant*
                                        SCEPTRE, INC.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

49

SCEPTRE, INC.'S FIRST
AMENDED COUNTERCLAIMS

# APPENDIX PURSUANT TO JUDGE KRONSTADT'S INITIAL STANDING ORDER FOR CIVIL CASES NO. 13

1  Shari Mulrooney Wollman (Bar No. CA 137142)
   E-mail:  swollman@manatt.com
2  Matthew P. Kanny (Bar No. CA 167118)
   E-mail:  mkanny@manatt.com
3  Jessamyn Vedro (Bar No. CA 280209)
   E-mail:  jvedro@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:  (310) 312-4224

7  Christine Yang (Bar No. CA 102048)
   Email:  cyang@sjclawpc.com
8  LAW OFFICES OF S.J. CHRISTINE YANG
   17220 Newhope Street, Suites 101-102
9  Fountain Valley, CA 92708
   Telephone:  (714) 641-4022
10 Facsimile:  (714) 641-2082

11 *Attorneys for Defendant and Counterclaimant*
   SCEPTRE, INC.

12

13              UNITED STATES DISTRICT COURT

14             CENTRAL DISTRICT OF CALIFORNIA

15

16 ZENITH ELECTRONICS LLC,              No.  2:14-cv-5150-GW (JEMx)
   PANASONIC CORPORATION, AND
17 U.S. PHILIPS CORPORATION,            No.  2:14-cv-05150-JAK (AJWx)

18        Plaintiffs,                   **Honorable ~~George H~~John A.
                                        ~~Wu~~Kronstadt**
19        vs.
                                        **SCEPTRE, INC.'S FIRST
20 SCEPTRE, INC.,                       AMENDED ~~ANSWER,
                                        AFFIRMATIVE DEFENSES, AND~~
21        Defendant.                    COUNTERCLAIMS**

22                                      **[JURY TRIAL DEMANDED]**

23 SCEPTRE, INC.,

24        Counterclaimant,

25        vs.

26 ZENITH ELECTRONICS LLC,
   PANASONIC CORPORATION, U.S.
27 PHILIPS CORPORATION, and MPEG
   LA, LLC,

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

SCEPTRE, INC.'S FIRST
AMENDED ~~ANSWER, AFFIRMATIVE
DEFENSES, AND~~ COUNTERCLAIMS

1 | Counter-Defendants.

2     Defendant Sceptre, Inc. ("Sceptre"), by and through undersigned counsel,

3 hereby submits this Answer and Affirmative Defenses to the Complaint

4 ("Complaint") filed by Plaintiffs Zenith Electronics LLC ("Zenith"), Panasonic

5 Corporation ("Panasonic"), and U.S. Philips Corporation ("Philips") (collectively,

6 "Plaintiffs"), as follows:

7                    **ANSWER TO THE COMPLAINT**

8                              **PARTIES**

9     1.    Sceptre is without knowledge or information sufficient to form a belief

10 as to the truth of the allegations in paragraph 1 of the Complaint and therefore

11 denies them.

12    2.    Sceptre is without knowledge or information sufficient to form a belief

13 as to the truth of the allegations in paragraph 2 of the Complaint and therefore

14 denies them.

15    3.    Sceptre is without knowledge or information sufficient to form a belief

16 as to the truth of the allegations in paragraph 3 of the Complaint and therefore

17 denies them.

18    4.    Sceptre admits that it is a California corporation and is headquartered

19 in City of Industry, California.  Sceptre denies the remaining allegations in

20 paragraph 4 of the Complaint.

21    5.    Sceptre admits that it does business as E-Sceptre, Inc.  Sceptre denies

22 the remaining allegations in paragraph 5 of the Complaint.

23                    **JURISDICTION AND VENUE**

24    6.    Paragraph 6 of the Complaint states legal conclusions to which no

25 response is required.

26    7.    Paragraph 7 of the Complaint states legal conclusions to which no

27 response is required.

28    8.    Paragraph 8 of the Complaint states legal conclusions to which no

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                2                SCEPTRE-, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1   response is required.

2   9.   Sceptre admits that it conducts business, is registered to do business,

3   and has appointed an agent for service of process in the State of California.  Sceptre

4   further admits that it sells products in California and elsewhere in the United States.

5   The remainder of Paragraph 9 of the Complaint states legal conclusions to which no

6   response is required, and is otherwise denied.

7   **PATENTS-IN-SUIT**

8   10.   Sceptre admits that United States Patent No. 5,802,107 ("the '107

9   patent"), as attached to the Complaint as Exhibit 1 is titled "Symbol Rotator" and

10   indicates on its face that it was issued on September 1, 1998.  Sceptre is without

11   knowledge or information sufficient to form a belief as to the truth of the remaining

12   allegations contained in paragraph 10 of the Complaint and therefore denies them.

13   11.   Sceptre admits that United States Patent No. 5,629,958 ("the '958

14   patent"), as attached to the Complaint as Exhibit 2 is titled "Data Frame Structure

15   and Synchronization System for Digital Television Signal" and indicates on its face

16   that it was issued on May 13, 1997.  Sceptre is without knowledge or information

17   sufficient to form a belief as to the truth of the remaining allegations contained in

18   paragraph 11 of the Complaint and therefore denies them.

19   12.   Sceptre admits that United States Patent No. Reissue 42,643 ("the '643

20   patent"), as attached to the Complaint as Exhibit 3 is titled "Communication

21   System" and indicates on its face that it was issued on August 23, 2011.  Sceptre is

22   without knowledge or information sufficient to form a belief as to the truth of the

23   remaining allegations contained in paragraph 12 of the Complaint and therefore

24   denies them.

25   13.   Sceptre admits that United States Patent No. 5,684,541 ("the '541

26   patent'"), as attached to the Complaint as Exhibit 4 is titled "Transmitter Station for

27   Transmitting a Plurality of Television Programs, and Receiver for Receiving the

28   Programs" and indicates on its face that it was issued on November 4, 1997.

1   Sceptre is without knowledge or information sufficient to form a belief as to the

2   truth of the remaining allegations contained in paragraph 13 of the Complaint and

3   therefore denies them.

4   **THE ATSC STANDARD**

5   14.   Sceptre admits that the Advanced Television Systems Committee, Inc.

6   ("ATSC") developed standards for the transmission and reception of digital

7   television in the 1990's.  Sceptre is without knowledge or information sufficient to

8   form a belief as to the truth of the allegations in paragraph 14 of the Complaint and

9   therefore denies them.

10   15.   Sceptre admits that the Federal Communications Commission ("FCC")

11   has adopted certain ATSC standards for transmitting and receiving digital television

12   ("DTV") in the United States.  Sceptre is without knowledge or information

13   sufficient to form a belief as to the truth of the allegations in paragraph 15 of the

14   Complaint and therefore denies them.

15   **SCEPTRE'S PURPORTED INFRINGEMENT**

16   16.   Paragraph 16 of the Complaint states legal conclusions to which no

17   response is required.  Sceptre denies that it has committed any acts of patent

18   infringement.  Sceptre is without knowledge or information sufficient to form a

19   belief as to the truth of the allegations in paragraph 16 of the Complaint and

20   therefore denies them.

21   17.   Sceptre admits that it offers to sell, sells, and imports some products

22   that comply with ATSC standards.  Sceptre denies the remaining allegations in

23   paragraph 17 of the Complaint.

24   18.   Sceptre admits that some of its products, including television sets,

25   comply with some of the ATSC standards.  Sceptre denies the remaining

26   allegations in paragraph 18 of the Complaint.

27   ///

28   ///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                         4                SCEPTRE, INC.'S FIRST
                                                     AMENDED ANSWER, AFFIRMATIVE
                                                     DEFENSES, AND COUNTERCLAIMS

1    ///

2        19.    Sceptre admits that it has sold television sets with the following model

3    numbers:

| | | | |
|---|---|---|---|
| E165BV-HD | SQ3200 HDTV | X195BV-HD HDTV | CE2401 |
| E195BD-SHDC HDTV/DVD | SQ3200* HDTV | X320BV-ECO HDTV | CE3200 |
| E195BV-SHD | | X320BV-HD | CE3200V |
| E195BV-SHDE HDTV | | X322BV-HD | CE3201 |
| E240BC-FHD HDTV | | X322BV-HDR | CE3230 |
| E240LC-FHD HDTV | | X322PV-HDR | CE3230V |
| E240PC-FHD HDTV | | X322UV-HDR | CE4001 |
| E240WC-FHD HDTV | | X322WV-HDR | CE4031 |
| E243BD-FHD | | X325BV-FHD | |
| E243BV-FHD | | X325BV-FHDU HDTV | |
| E243CV-FHD | | X325BV-FMDR | |
| E243LV-FHD | | X328BV-FHD HDTV | |
| E243RV-FHD | | X370BV-FHD HDTV | |
| E243WV-FHD | | X370BV-HD HDTV | |
| E245BD-FHDU HDTV/DVD | | X372BV-FHD HDTV | |
| E245BV-FHD | | X400BV-FHD HDTV | |
| E245BV-FHD* | | X402BV-FHD HDTV | |
| E245PD-FHDR | | X405BV-FHD HDTV | |
| E245PV-FHDR | | X405BV-FHD3 | |
| E245RD-FHDR | | X405BV-FHDR | |
| E245RV-FHDR | | X405BV-FMD HDTV | |
| E245WD-FHDR | | X405BV-FMDU HDTV | |
| E245WV-FHDR | | X408BV-FHD | |
| E248BD-FHD HDTV | | X408BV-FHDU HDTV | |
| E320BV-HD HDTV | | X409BV-FHD | |
| E325BD-HD | | X409BV-FHDR HDTV | |
| E325BV-FHDD 3D HDTV | | X409BV-FHDU HDTV | |
| E325BV-HDC | | X420BV-FHD HDTV | |
| E325LD-HDR | | X4258V-FHD | |
| E325PD-HDR | | X425BV-FHD3 HDTV | |
| E325UD-HDR | | X460BV-F120 HDTV | |
| E325WD-HDR | | X460BV-FHD HDTV | |
| E328BD-HDC HDTV | | X460EV-F120 HDTV | |
| E328BV-HDC HDTV | | X460PV-F120 HDTV | |
| E328BV-HDH HDTV | | X505BV-FHD | |
| E328BV-MDC-HDTV | | X505BV-FHDU HDTV | |
| E420BV-F120 | | X505BV-FMDR HDTV | |
| E425BV-FHDD | | X508BV-FHD | |
| E425BV-FHDD | | X5088V-FHDU HDTV | |
| E465BV-FHDD | | | |
| E465BV-FHDD | | | |
| E475BV-FMDU | | | |
| E478BV-FMDU HDTV | | | |
| E165BD-HD | | | |

23    Sceptre denies the remaining allegations in paragraph 19 of the Complaint.

24        20.    Sceptre denies the allegations contained in paragraph 20 of the

25    Complaint.

26        21.    Sceptre admits that it has sold and sells some products to third parties

27    that are compliant with ATSC standards.  Sceptre denies the remaining allegations

28    in paragraph 21 of the Complaint.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                    5                          SCEPTRE, INC.'S FIRST
                                                                    AMENDED ANSWER, AFFIRMATIVE
                                                                    DEFENSES AND COUNTERCLAIMS

22.   Sceptre denies the allegations contained in paragraph 22 of the Complaint.

23.   Sceptre is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 23 of the Complaint and therefore denies them.

24.   Sceptre is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 24 of the Complaint and therefore denies them.

25.   Sceptre is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25 of the Complaint and therefore denies them.

26.   Sceptre is without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 26 of the Complaint and therefore denies them.

27.   Sceptre admits that MPEG LA has offered an ATSC "pool license" to Sceptre and that it has not entered into a license with MPEG LA.

28.   Sceptre denies that it received any notice of infringement from Plaintiffs at any time prior to the date it was served with the Complaint.  Scepter denies the remaining allegations in paragraph 28 of the Complaint.

29.   Sceptre admits that it has not entered into a license under the '107, '958, '643 or '541 patents with any of the Plaintiffs.

30.   Sceptre denies the allegations in paragraph 30 of the Complaint.

31.   Sceptre denies the allegations in paragraph 31 of the Complaint.

32.   Sceptre denies the allegations in paragraph 32 of the Complaint.

33.   Sceptre denies the allegations in paragraph 33 of the Complaint.

34.   Sceptre denies the allegations in paragraph 34 of the Complaint.

35.   Sceptre denies the allegations in paragraph 35 of the Complaint.

///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

6

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    ///

2    **COUNT I:  PURPORTED INFRINGEMENT OF**

3    **U.S. PATENT NO. 5,802,107**

4    36.    Sceptre incorporates by reference its answers to the averments of

5    paragraphs 1 through 35 as if fully set forth herein.

6    37.    Sceptre is without knowledge or information sufficient to form a belief

7    as to the truth of the allegations in paragraph 37 of the Complaint and therefore

8    denies them.

9    38.    Sceptre denies the allegations in paragraph 38 of the Complaint.

10    39.    Sceptre denies the allegations in paragraph 39 of the Complaint.

11    40.    Sceptre denies the allegations in paragraph 40 of the Complaint.

12    41.    Sceptre denies the allegations in paragraph 41 of the Complaint.

13    **COUNT II:  PURPORTED INFRINGEMENT OF**

14    **U.S. PATENT NO. 5,629,958**

15    42.    Sceptre incorporates by reference its answers to the averments of

16    paragraphs 1 through 35 as if fully set forth herein.

17    43.    Sceptre is without knowledge or information sufficient to form a belief

18    as to the truth of the allegations in paragraph 43 of the Complaint and therefore

19    denies them.

20    44.    Sceptre denies the allegations in paragraph 44 of the Complaint.

21    45.    Sceptre denies the allegations in paragraph 45 of the Complaint.

22    46.    Sceptre denies the allegations in paragraph 46 of the Complaint.

23    47.    Sceptre denies the allegations in paragraph 47 of the Complaint.

24    **COUNT III:  PURPORTED INFRINGEMENT OF**

25    **U.S. PATENT NO. REISSUE 42,643**

26    48.    Sceptre incorporates by reference its answers to the averments of

27    paragraphs 1 through 35 as if fully set forth herein.

28    49.    Sceptre is without knowledge or information sufficient to form a belief

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

7

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    as to the truth of the allegations in paragraph 49 of the Complaint and therefore

2    denies them.

3         50.    Sceptre denies the allegations in paragraph 50 of the Complaint.

4         51.    Sceptre denies the allegations in paragraph 51 of the Complaint.

5         52.    Sceptre denies the allegations in paragraph 52 of the Complaint.

6         53.    Sceptre denies the allegations in paragraph 53 of the Complaint.

7              **COUNT IV:  PURPORTED INFRINGEMENT OF**

8              **U.S. PATENT NO. 5,684,541**

9         54.    Sceptre incorporates by reference its answers to the averments of

10   paragraphs 1 through 35 as if fully set forth herein.

11        55.    Sceptre is without knowledge or information sufficient to form a belief

12   as to the truth of the allegations in paragraph 55 of the Complaint and therefore

13   denies them.

14        56.    Sceptre denies the allegations in paragraph 56 of the Complaint.

15        57.    Sceptre denies the allegations in paragraph 57 of the Complaint.

16        58.    Sceptre denies the allegations in paragraph 58 of the Complaint.

17        59.    Sceptre denies the allegations in paragraph 59 of the Complaint.

18                    **EXCEPTIONAL CASE**

19        60.    Sceptre incorporates by reference its answers to the averments of

20   paragraphs 1 through 59 as if fully set forth herein.

21        61.    Sceptre denies the allegations in paragraph 61 of the Complaint.

22               **PLAINTIFFS' REQUEST FOR RELIEF**

23        Sceptre states that Plaintiffs' prayer for relief does not require a response.

24        Sceptre denies that Plaintiffs are entitled to any relief whatsoever as prayed

25   or otherwise.

26        Sceptre denies each and every allegation of the Complaint not already

27   admitted or denied and further denies that Plaintiffs are entitled to any relief

28   whatsoever from Sceptre on the basis of any of the purported claims for relief

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                    8          SCEPTRE, INC.'S FIRST
                                          AMENDED ANSWER, AFFIRMATIVE
                                          DEFENSES AND COUNTERCLAIMS

1   contained in the Complaint.

2   **AFFIRMATIVE DEFENSES**

3   For further answer by way of affirmative defenses, each of which pertains to

4   each claim of infringement in the Complaint, Sceptre respectfully states as follows:

5   **FIRST AFFIRMATIVE DEFENSE**

6   **(Failure to State a Claim)**

7   Plaintiffs' Complaint fails to state a claim upon which relief can be granted.

8   **SECOND AFFIRMATIVE DEFENSE**

9   **(Non-Infringement)**

10   Sceptre has not infringed and does not infringe, either literally or under the

11   doctrine of equivalents, nor contributed to infringement by others, nor actively

12   induced others to infringe, any purportedly valid claim of the '107, '958, '643, and

13   '541 Patents (the "Asserted Patents").

14   **THIRD AFFIRMATIVE DEFENSE**

15   **(Invalidity)**

16   On information and belief, the Asserted Patents, and each and every claim

17   thereof, are invalid for failure to comply with one or more requirements of Title 35,

18   United States Code, including without limitation the provisions of 35 U.S.C.

19   §§ 101, 102, 103, 112, and 132, and the rules, regulations, and laws pertaining

20   thereto.

21   **FOURTH AFFIRMATIVE DEFENSE**

22   **(No Injunctive Relief)**

23   Plaintiffs are not entitled to injunctive relief because Sceptre has not

24   infringed and is not infringing any valid and enforceable claim of the Asserted

25   Patents and because any purported injury to Plaintiffs is not immediate or

26   irreparable.  To the extent Plaintiffs prove that they would be entitled to any relief,

27   they would have an adequate remedy at law.  Moreover, the public interest and

28   balance of hardships weigh against an injunction under the circumstances of this

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

9

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    case.

2                    **FIFTH AFFIRMATIVE DEFENSE**

3                      **(Prosecution History Estoppel)**

4            Upon information and belief, by reason of prior art and the proceedings in the

5    U.S. Patent and Trademark Office during the prosecution of the applications that

6    led to the issuance of the Asserted Patents, including, without limitation,

7    amendments, representations, concessions, and admissions made by or on behalf of

8    the applicant, Plaintiffs are estopped from asserting that at least some of the

9    Asserted Patents cover and include any Sceptre products alleged to infringe the

10   Asserted Patents under the doctrine of equivalents.

11                    **SIXTH AFFIRMATIVE DEFENSE**

12                 **(Waiver, Laches, Estoppel and Acquiescence)**

13           Plaintiffs' claims are barred, in whole or in part, by the equitable doctrines of

14   waiver, laches, estoppel, and/or acquiescence, and/or other equitable doctrines.

15                   **SEVENTH AFFIRMATIVE DEFENSE**

16                      **(Limitation on Damages)**

17           Plaintiffs' claims for recovery are barred, in whole or in part, by 35 U.S.C.

18   § 287.

19                   **EIGHTH AFFIRMATIVE DEFENSE**

20                      **(Limitation on Damages)**

21           Under the provisions of 35 U.S.C. § 286, Plaintiffs are precluded from

22   seeking recovery for any of Sceptre's alleged infringing acts occurring more than

23   six years before the filing of the Complaint.

24                    **NINTH AFFIRMATIVE DEFENSE**

25                  **(Action Including an Invalid Claim)**

26           Plaintiffs' prayer for costs is barred, in whole or in part, by Plaintiffs' failure

27   to disclaim any invalid claims under 35 U.S.C. § 288.

28   ///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                         10                     SCEPTRE, INC.'S FIRST
                                                          AMENDED ANSWER, AFFIRMATIVE
                                                          DEFENSES AND COUNTERCLAIMS

1    ///

2                    **TENTH AFFIRMATIVE DEFENSE**

3                       **(License and/or Exhaustion)**

4          Plaintiffs' claims are precluded, in whole or in part, to the extent any

5    allegedly infringing products are licensed either expressly or impliedly and/or under

6    the doctrine of patent exhaustion or first sale.

7                  **ELEVENTH AFFIRMATIVE DEFENSE**

8                          **(Reissue Patents)**

9          On information and belief, Plaintiffs' recovery is barred, in whole or in part,

10   with respect to any reissued patents asserted against Sceptre, by 35 U.S.C. § 252.

11                  **TWELFTH AFFIRMATIVE DEFENSE**

12                         **(Implied License)**

13         On information and belief, Plaintiffs' claims for recovery are barred, in

14   whole or in part, by the doctrine of express license and/or implied license for

15   reasons including, without limitation, that Plaintiffs are barred from asserting

16   claims of infringement of one or more of the Asserted Patents against Sceptre under

17   the MPEG LA ATSC Patent Portfolio License and the MPEG LA Agreement

18   Among Licensors.

19                 **THIRTEENTH AFFIRMATIVE DEFENSE**

20                        **(Absence of Damages)**

21         Plaintiffs have not suffered and will not suffer any injury or damages by way

22   of the acts and conduct of Sceptre as alleged in its Complaint.

23                **FOURTEENTH AFFIRMATIVE DEFENSE**

24                 **(Unavailability of Equitable Remedies)**

25         Plaintiffs are not entitled to equitable relief because they have an adequate

26   remedy at law.

27   ///

28   ///

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                              11                    SCEPTRE, INC.'S FIRST
                                                     AMENDED ANSWER, AFFIRMATIVE
                                                     DEFENSES, AND COUNTERCLAIMS

1   ///

2   **FIFTEENTH AFFIRMATIVE DEFENSE**

3   **(Causation)**

4   On information and belief, Plaintiffs' alleged damages or injuries, if any,

5   were not caused by any acts or omissions of Sceptre.

6   **SIXTEENTH AFFIRMATIVE DEFENSE**

7   **(Violenti Non Fit Injuria)**

8   On information and belief, Plaintiffs are not entitled to recovery based on

9   *violenti non fit injuria*, or that "he who suffers damage through his own fault has no

10  right to complain of it."

11  **SEVENTEENTH AFFIRMATIVE DEFENSE**

12  **(Non-Essential Patents)**

13  On information and belief, one or more of the Asserted Patents is not

14  essential to the ATSC standard.

15  **EIGHTEENTH AFFIRMATIVE DEFENSE**

16  **(Violation of FRAND)**

17  Plaintiffs do not offer licenses to the Asserted Patents on fair, reasonable and

18  nondiscriminatory terms and therefore the Plaintiffs are not entitled to any

19  recovery.

20  **NINETEENTH AFFIRMATIVE DEFENSE**

21  **(Claim Construction)**

22  On information and belief, Sceptre does not infringe any claim of the

23  Patents-in-Suit and Plaintiffs are estopped from asserting any infringement thereof

24  by virtue of the fact that during the respective proceedings relating to the issuance

25  of the Patents-in-Suit or their respective predecessors in the U.S. Patent Office, the

26  admissions, representations, and amendments made by the alleged patentee(s)

27  and/or their attorneys prevent a construction of the claims of the Patents-in-Suit

28  broad enough to encompass any product allegedly made, used, sold, offered for

sale, or imported by Sceptre.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiffs have failed to mitigate any injury or damages they may have suffered.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Essential Parties)

Plaintiffs have failed to join one or more necessary, essential and/or required parties to the action, and/or real parties in interest to the action.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of unclean hands.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Patent Misuse)

Plaintiffs' claims are barred, in whole or in part, by the equitable doctrine of patent misuse.

## OTHER AFFIRMATIVE DEFENSES

Sceptre's investigation of the claims and its defenses is continuing.  In addition to the affirmative defenses set forth herein, Sceptre expressly reserves the right to allege and assert any additional affirmative defenses under Rule 8 of the Federal Rules of Civil Procedure.

///

///

///

///

///

///

1    / / /

2    Dated:  November 3, 2014

3                                      By:       /s/ Shari Mulrooney Wollman

4                                          Shari Mulrooney Wollman
                                           MANATT, PHELPS & PHILLIPS, LLP
                                           Shari Mulrooney Wollman
5                                          Matthew P. Kanny
                                           Jessamyn Vedro
6

7                                          Christine Yang
                                           LAW OFFICES OF S.J. CHRISTINE YANG

8                                          *Attorneys for Defendant and Counterclaimant*
                                           SCEPTRE, INC.
9

10

11                              **JURY DEMAND**

12          Sceptre demands a trial by jury as to all claims, defenses, counterclaims, and

13   issues properly triable thereby.

14

15   Dated:     November 3, 2014

16

17                                      By:       /s/ Shari Mulrooney Wollman

18                                          Shari Mulrooney Wollman
                                           MANATT, PHELPS & PHILLIPS, LLP
                                           Shari Mulrooney Wollman
19                                          Matthew P. Kanny
                                           Jessamyn Vedro
20

21                                          Christine Yang
                                           LAW OFFICES OF S.J. CHRISTINE YANG

22                                          *Attorneys for Defendant and Counterclaimant*
                                           SCEPTRE, INC.

23

24

25   [Remainder of page intentionally left blank]

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                              14                    SCEPTRE, INC.'S FIRST
                                                              AMENDED ANSWER, AFFIRMATIVE
                                                              DEFENSES, AND COUNTERCLAIMS

# COUNTERCLAIMS[1]

Sceptre, Inc. ("Sceptre") hereby submits its Counterclaims against Plaintiffs Zenith Electronics LLC ("Zenith"), Panasonic Corporation ("Panasonic"), and U.S. Philips Corporation ("Philips") (collectively, "Plaintiffs")  and MPEG LA, LLC ("MPEG LA") (together with Plaintiffs, "Counter-Defendants" or "the co-conspirators"), and upon information and belief as to the actions of all persons or entities other than Sceptre, alleges as follows:

1.     By this Counterclaim, Sceptre seeks to end unlawful and anticompetitive practices acquired through the manipulation of the standard setting process for ~~the ATSC technology standard.  Plaintiffs—who are or were horizontal competitors of Sceptre in the market for digital televisions sold in the United States—own patents in the "pool" of purported "standard essential" patents which they claim comprise the ATSC~~ the Advanced Television Systems Committee ("ATSC") technology standard "for transmitting and receiving digital television ("DTV") in the United States," (Compl. ¶ 15) ("the ATSC Standard").  Plaintiffs—who are or were horizontal competitors of Sceptre in the market for digital televisions sold in the United States—own patents in the "pool" of purported "standard essential" patents that they claim comprise the ATSC Standard, which the Federal Communications Commission ("FCC") adopted ~~in December 1996~~and now requires for every television sold in the United States.

2.     Plaintiffs knew or should have known that some of their patents would read on the ATSC Standard that was ultimately adopted.  In fact, several of the patents on which they have brought suit were pending at the time of the standard setting meetings, and issued after the ATSC Standard was formally adopted.

3.     Plaintiffs, among others, expressly promised that they would license

---

[1] This pleading, together with Sceptre, Inc.'s concurrently filed First Amended Answer, Affirmative Defenses, together replace Dkt. 51 pursuant to the Court's Civil Minute Order dated November 12, 2014 (Dkt. 58).

1   their patents that read on the ATSC Standard upon terms that are fair, reasonable

2   and non-discriminatory.  By doing so, Plaintiffs induced the standard setting bodies

3   and the FCC into granting them monopoly power on the standard essential

4   technology for the transmission and receipt of digital television in the United

5   States.  Despite their promises, Plaintiffs have not licensed their standard essential

6   patents on fair, reasonable and non-discriminatory terms; to the contrary, Plaintiffs

7   and MPEG LA have colluded to artificially inflate prices on their patent licenses to

8   excessive levels, and in so doing, have raised competitors' costs, reduced output,

9   and restrained competition, including Sceptre.

10                              **THE PARTIES**

11          4.      Sceptre is a corporation organized under the laws of California with its

12   principal place of business located in City of Industry, California.

13          5.      Upon information and belief, MPEG LA is a Delaware Limited

14   Liability Company, having its principal place of business in Denver, Colorado.

15          6.      Upon information and belief based on the allegations in paragraph 1 of

16   the Complaint, Zenith is a Delaware Limited Liability Company, having its

17   principal place of business in Lincolnshire, Illinois.  Sceptre is informed and

18   believes, and on that basis alleges, that Zenith is currently a wholly owned

19   subsidiary of LG Electronics Inc. ("LG").  Sceptre is further informed and believes,

20   and on that basis alleges, that LG currently sells televisions under the LG rather

21   than the Zenith brand in the downstream product market, as described below.  For

22   purposes of this Counterclaim, the term Zenith shall refer to the conduct of its

23   parent, LG, with respect to allegations concerning sales of products in the

24   downstream product market.

25          7.      Upon information and belief based on the allegations in paragraph 2 of

26   the Complaint, Panasonic is a Japanese corporation, having its principal place of

27   business in Osaka, Japan.  Sceptre is informed and believes, and on that basis

28   alleges, that Panasonic was previously known as Matsushita Electric Corporation of

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                   16                    SCEPTRE, INC.'S FIRST
                                                                   AMENDED ANSWER, AFFIRMATIVE
                                                                   DEFENSES AND COUNTERCLAIMS

America and/or Matsushita Electric Industrial Co., Ltd. (together, "Matsushita").
All references to Panasonic herein shall include Matsushita.

8.   Upon information and belief based on the allegations in paragraph 3 of the Complaint, Philips is a Delaware corporation, having its principal place of business in Briarcliff Manor, New York.  Sceptre is informed and believes, and on that basis alleges, that Philips has licensed the right to sell DTVs under the Philips brand to Funai Electric Co. Ltd. ("Funai").

9.   Upon information and belief, MPEG LA is a Delaware Limited Liability Company, having its principal place of business in Denver, Colorado. Sceptre is informed and believes, and on that basis alleges, that at all times relevant hereto, MPEG LA was and is the Licensing Administrator acting on behalf of each of the other Counter-Defendants, and all of the things alleged to have been done by MPEG LA were done in the capacity, scope and course thereof.

## JURISDICTION AND VENUE

10.   This Court has exclusive original jurisdiction over the subject matter of this action under 28 U.S.C. § 1331.  This action arises under the Patent Act of 1952, 35 U.S.C. §§ 1, et seq., as amended, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., and the Sherman Act, 15 U.S.C. § 1 et seq.  Exclusive jurisdiction for any action arising under any Act of Congress relating to patents is conferred on U.S. District Courts pursuant to 28 U.S.C. § 1338(a), and under the Sherman Act pursuant to 28 U.S.C. § 1337.

11.   In addition, this Court has supplemental jurisdiction over the breach of contract, promissory estoppel and unfair competition claims pursuant to 28 U.S.C. § 1367 because these claims are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

12.   This Court has personal jurisdiction over Zenith because, on information and belief, Zenith conducts business in and maintains substantial

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                    17                    SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

1    contacts with the State of California, Zenith has purposefully availed itself of

2    commercial activities in this forum and this Counterclaim arises out of those

3    activities.

4         13.    This Court has personal jurisdiction over Panasonic because, on

5    information and belief, Panasonic conducts business in and maintains substantial

6    contacts with the State of California, Panasonic has purposefully availed itself of

7    commercial activities in this forum and this Counterclaim arises out of those

8    activities.

9         14.    This Court has personal jurisdiction over Philips because, on

10   information and belief, Philips conducts business in and maintains substantial

11   contacts with the State of California, Philips has purposefully availed itself of

12   commercial activities in this forum and this Counterclaim arises out of those

13   activities.

14        15.    This Court has personal jurisdiction over MPEG LA because, on

15   information and belief, it conducts business in and maintains substantial contacts

16   with the State of California, and because it has sought to license the ATSC patent

17   pool to parties in this jurisdiction.

18        16.    ~~15.~~Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)

19   and 1391(c), and (d) and § 1400(b) because a substantial part of the events giving

20   rise to the Counterclaims occurred in this District and, on information and belief,

21   Zenith, Panasonic and Philips conduct business in this District.

### GENERAL ALLEGATIONS

23   **Patents In Suit**

24        17.    ~~16.~~Upon information and belief based on paragraph 10 of the

25   Complaint, on or about September 1, 1998, United States Patent No. 5,802,107,

26   entitled "Symbol Rotator," was issued ("the '107 patent").

27        18.    ~~17.~~Upon information and belief based on paragraph  37 of the

28   Complaint, Zenith purports to be the owner by assignment of the '107 patent.

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

18

SCEPTRE, INC.'S FIRST
AMENDED ~~ANSWER, AFFIRMATIVE
DEFENSES  AND~~ COUNTERCLAIMS

19. 18.Upon information and belief based on paragraph 11 of the Complaint, on or about May 13, 1997, United States Patent No. 5,629,958, entitled "Data Frame Structure and Synchronization System for Digital Television Signal," was issued ("the '958 patent").

20. 19.Upon information and belief based on paragraph 43 of the Complaint, Zenith purports to be the owner by assignment of the '958 patent, which expired on July 7, 2014.

21. 20.Upon information and belief based on paragraph 12 of the Complaint, on or about August 23, 2011, United States Patent No. Reissue 42,643, entitled "Communication System," was reissued ("the '643 patent").

22. 21.Upon information and belief based solely on paragraph 49 of the Complaint, Panasonic purports to the owner by assignment of the '643 patent, which expired on February 3, 2014.

23. 22.Upon information and belief based solely on paragraph 13 of the Complaint, on or about November 4, 1997, United States Patent No. 5,648,541, entitled "Transmitter Station for Transmitting a Plurality of Television Programs, and Receiver for Receiving the Programs," was issued ("the '541 patent").

24. 23.Upon information and belief based solely on paragraph 55 of the Complaint, Philips purports to be the owner by assignment of the '541 patent, which expired on May 11, 2014.

25. 24.On July 2, 2014, Plaintiffs filed the Complaint in this action alleging infringement of the '107, '958, '643, and '541 patents by Sceptre (together, the '107, '958, '643, and '541 patents are referred to as "the Patents In Suit").

**Background of Standard Setting Organizations**

26. 25.The development of uniform technical standards can often play an important role in the development of new technology.  While standards development can benefit certain technologies by encouraging innovation as technical specifications for the standards become widely accepted, the standards

also can have disadvantages.  For instance, technical standardization creates a "lock-in" effect and the risk of "patent hold-up."  When there are no standards, the royalty a patentee can earn from a patent license for its technology is constrained by the availability of alternative technologies; however, once a standard requires a manufacturer to employ patented technology, other technologies are no longer available substitutes and no longer constrain a patentee's ability to demand royalties far in excess of what is warranted by the intrinsic value of the technology.

27.    26.Once a standard is set manufacturers continue to develop new products that also comply with the technical standard.  Since the costs and disruption associated with using a different technology are often prohibitively expensive, the manufacturer that implements, or is required to implement, a standard therefore becomes "locked-in."  Owners of patents that cover aspects of the standard are in a position to take advantage of lock-in and demand exorbitant royalties from manufacturers, knowing that it would be less costly for the manufacturers to pay the excessive royalty rather than incur the cost of litigation including the risk of an injunction.

28.    27.For these reasons, timely disclosure of essential intellectual property rights is critical to ensuring that those participating in standards development can evaluate various proposals for the standard with knowledge of the associated licensing costs for each proposed technology.

29.    28.To prevent patent hold-up, participants to the standard setting process who may own essential patents must generally commit to license those rights on fair, reasonable and nondiscriminatory ("FRAND") terms to any manufacturer who uses the standard.  Participants in standards development rely on these contractual undertakings to ensure that the widespread adoption of the standard will not be held hostage by owners of standard essential patents who may seek to extract unreasonable royalties from those implementing the standard.

**The Selection and Adoption of the ATSC Standard Technology**

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

20

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

30.   29.The ATSC Standard involved in this litigation concerns digital television transmission.  Two fundamentally different methods exist for transmitting television images: analog and digital.  Since approximately 1940, all television transmissions in this State and throughout the United States used analog transmission incorporating the FCC-approved NTSC Analog Television Standard as amended.  At all relevant times up until the mid-to-late 2000's, television sets and VCRs in the United States including in this State primarily used NTSC Analog Television Standard technology.

31.   30.The Advanced Television Systems Committee ("ATSC"), is a standard-setting body based in Washington, D.C. that is composed of representatives from various entities involved in the creation and maintenance of standards related to digital television in the United States.

32.   31.Sceptre is informed and believes, and on that basis alleges that, in 1987, the Federal Communications Commission ("FCC") initiated a rule making proceeding to consider issues surrounding the use of advance television technologies by television broadcast licensees.  In that same year, the FCC established the Advisory Committee on Advanced Television Service (the "Advisory Committee") to assist the FCC in gathering and processing necessary information on, and ultimately in choosing, an advanced television system.  The Advisory Committee created an evaluation, test and analysis process for the submittal and evaluation of competing proposals. Sceptre is further informed and believes, and on that basis alleges that the ATSC worked closely with the Advisory Committee throughout this process.

33.   32.Sceptre is informed and believes, and on that basis alleges that, pursuant to the process adopted by the Advisory Committee, the Advisory Committed accepted 23 different systems from system proponents.  By about 1991, the number of competing proposals had been reduced to six, including four all-digital systems.  Upon information and belief, the competing all-digital systems

included: (i) the DigiCipher system, proposed by General Instrument Corporation ("GI Corp."); (ii) the Advanced Digital HDTV system, proposed by Sarnoff, Thomson, Philips and NBC; (iii) the Digital Spectrum Compatible Television system, proposed by Zenith and AT&T; and (iv) the Channel Compatible DigiCipher system, proposed by GI Corp. and Massachusetts Institute of Technology ("MIT").  Around this time, the four all-digital systems were tested, but none were approved by the Advisory Committee. Upon information and belief, in or about February 1993, the Advisory Committee determined that an all-digital system was feasible and requested that certain improvements be made to each of the four all-digital systems and requested that each system proposal be re-submitted for further testing; but at the same time, the Advisory Committee also expressed a willingness to entertain a proposal by the remaining all-digital system proponents for a single system that incorporated the best elements of these systems.

34.   33.Sceptre is informed and believes, and on that basis alleges that, in May 1993, in response to the Advisory Committee's suggestion that it would entertain a proposal for a single system, an alliance was formed by the remaining all-digital system proponents, which was known as "the Grand Alliance."  Upon information and belief, the members of the Grand Alliance included Counter-Defendants Zenith and Philips (through a predecessor or other affiliate).  Upon information and belief, prior to the formation of the Grand Alliance, Grand Alliance members had worked competitively against one another in hopes that their system proposal would be chosen for the advanced television system standard.  Sceptre is informed and believes, and on that basis alleges that, after the formation of the Grand Alliance, Grand Alliance members worked closely together to develop a single all-digital system.

35.   34.Sceptre is informed and believes, and on that basis alleges that, ultimately, Grand Alliance members agreed to a Grand Alliance system which incorporated, among other competing technologies, Zenith's "VSB technology,"

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

22

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

1    and submitted their proposal to the Advisory Committee for testing.  Following this

2    testing, in which the ATSC participated, the ATSC membership approved  the

3    Grand Alliance system as the "ATSC Standard."

4        36.    35.Upon information and belief, Panasonic (then known as

5    Matsushita) participated in the standard-setting process and provided commentary

6    to the FCC on the proposed ATSC standard.

7    **The FCC Adopts the ATSC Standard and Requires FRAND Licensing by**

8    **Patent Owners**

9        37.    36.Sceptre is informed and believes, and on that basis alleges that the

10   Advisory Committee recommended to the FCC that the ATSC Standard be adopted

11   as the standard for digital terrestrial television broadcasting in the United States.

12   Upon information and belief, on December 24, 1996, the FCC adopted the major

13   elements of the ATSC Standard, mandating its use for digital television broadcasts

14   in the United States.  FCC rules require broadcasters to broadcast digital television

15   signals in compliance with the ATSC Standard, and require digital television

16   receivers to be equipped with digital television tuners for receiving, decoding, and

17   presenting such digital television signals in compliance with the ATSC Standard.

18       38.    37.Sceptre is informed and believes, and on that basis alleges that, in

19   1996, the United States Congress required that all full power television stations in

20   the United States, including those transmitting in and into this State, must transmit

21   digital signals as of February 17, 2009, which date was later extended to June 12,

22   2009. This switch to digital signal transmission required consumers in this State

23   and throughout the country either to replace their analog televisions with expensive

24   digital televisions or instead buy a digital-to-analog converter box so that digital

25   signals after June 13, 2009, could still be viewed on the consumers' analog

26   televisions and VCRs.

27       39.    38.To protect against unscrupulous conduct by any member who seeks

28   to benefit unfairly from, or to manipulate to its advantage, the advanced television

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

23

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

standard-setting process, and to enable the ATSC and its members to develop standards free from potentially blocking patents, Sceptre is informed and believes, and on that basis alleges, that the ATSC instituted policies and rules regarding the disclosure and licensing of patents.

40.   39.Sceptre is informed and believes, and on that basis alleges, that the ATSC's rules and policies require fairness and candor with respect to intellectual property including, for example, requiring members to disclose potential "standard essential" patents that read on the standards, and/or license them on FRAND terms.

41.   40.Moreover, when the FCC adopted portions of the ATSC standard it prepared a "Fourth Report and Order," in which it acknowledged that the proponents of the ATSC Standard—including, on information and belief, Zenith, Panasonic and Philips—agreed to make any relevant patents they owned available either free of charge or on a reasonable, nondiscriminatory basis; the FCC then expressly stated that its adoption of the ATSC standard was premised directly upon those assurances:

> 54. In earlier phases of this proceeding we indicated that, in order for DTV [digital television] to be successfully implemented, the patents on the technology would have to be licensed to other manufacturing companies **on reasonable and nondiscriminatory terms**. We noted that the system proponents that participated in the Advisory Committee's competitive testing process were required to submit a statement that they would comply with the ANSI patent policies. **The proponents agreed to make any relevant patents that they owned available either free of charge or on a reasonable, nondiscriminatory basis and we stated that we intended to condition selection of a DTV system on such commitments**. . . .

> 55. It appears that licensing of the patents for DTV technology will not be an impediment to the development and deployment of DTV products for broadcasters and consumers. **We reiterate that adoption of this standard is**

*premised on reasonable and nondiscriminatory licensing of relevant patents*, but believe that greater regulatory involvement is not necessary at this time. We remain committed to this principle and if a future problem is brought to our attention, we will consider it and take appropriate action.

Federal Communications Commission *"Fourth Report and Order"* In the Matter of Advanced Television Systems and Their Impact Upon the Existing Television Broadcast Service, MM Docket No. 87-268 (Dec. 24, 1996) (citations omitted) (emphasis added).

42.    41. Sceptre is informed and believes, and on that basis alleges that Zenith, Panasonic and Philips, among others, made promises and commitments to the ATSC and FCC to license their standard essential patents on FRAND terms, upon which the ATSC and FCC relied in setting the ATSC Standard.  For example:

(a)    On February 28, 1995, Zenith's Vice President Wayne C. Luplow sent a letter to Mr. Robert Hopkins of the ATSC in which he stated:

"Zenith Electronics Corporation is a member of the 'Grand Alliance' of companies co-operating in the development of standards for definition television for the United States.  In connection with that Grand Alliance development effort, Zenith has made inventions which it believes are required for compliance with the ATSC standard, as the standard is currently being developed by members of the Grand Alliance.  This is to confirm that in connection with the current high definition television standards selection proceedings before the ATSC, ***Zenith will make available to qualified applicants a license to practice such inventions in the field of HDTV under reasonable terms and conditions that are demonstrably free of any unfair discrimination [i.e., on FRAND terms].***" (Emphasis added)

(b)    On February 23, 1995, Michael E. Marion, Group Patent Counsel for Philips, sent a letter to Mr. Bob Hopkins of the ATSC in which he stated:

"A license, under intellectual property owned by Philips Electronics North America Corporation and which is specific to the Grand Alliance HDTV System proposal, ***will be made available to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination.***" (Emphasis added)

(c)     On March 15, 2000, Osamu Yamazaki, Director, Intellectual Property Center of Matsushita Electric Industrial Co., Ltd. ("Matsushita") [Panasonic's prior corporate name], sent a letter to the "Intellectual Property Director" of the ATSC which stated:

> "[Matsushita] hereby declares that it is prepared to license its freely licensable patents, if any, both granted and pending, which are essential to implementation of the proposed 'HAVi Level-2 User Interface'. [Matsushita] also declares that *it is aware of the rules described in the ATSC Patent Policy, and in particular that it is willing to grant a patent license to applicants under reasonable terms and conditions that are demonstrably free of any unfair discrimination*...." (Emphasis added)

(d)     On July 28, 2003, Zenith's Senior V.P. Research and Technology, Richard Lewis, sent a second letter to the ATSC in which he stated:

> "Zenith... has been granted the exclusive rights by LG Electronics, Inc. and ATI Technologies Inc., to license certain inventions which are believed required (i.e. essential) for compliance with ATSC Document T3-596... and the adopted ATSC standard to issue based on such document (the 'ATSC Standard'). This is to confirm that pursuant to the ATSC Patent Policy, to the extent any such inventions are approved as a part of the ATSC Standard, *Zenith will made available to applicants a license to practice such inventions for compliance with the ATSC Standard under reasonable terms and conditions that are demonstrably free of any unfair discrimination."* (Emphasis Added)

43.     ~~42.~~Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and others made these promises and commitments to the ATSC and/or the FCC and their members and affiliates in connection with the ATSC Standard setting process, that each of their essential patents would be available for licensing on FRAND terms.

44.     ~~43.~~Sceptre is further informed and believes, and on that basis alleges, that had Plaintiffs and others failed to provide FRAND assurances, their patents would not have been incorporated into the ATSC Standard and/or the FCC would not have adopted the ATSC Standard using the chosen technology from among the alternatives available.  Such FRAND assurances are for the protection of third-

1    parties, like Sceptre, who rely on such FRAND commitments to ensure that the

2    royalties later sought conform to the promises initially made, and do not result in

3    patent hold up.

4        **45.**   ~~44.~~Sceptre is informed and believes, and on that basis alleges, that in

5    providing FRAND assurances, Plaintiffs and others entered into an actual or

6    implied contract for the benefit of any entity that implemented the ATSC Standard,

7    and are now irrevocably bound by their commitments to offer licenses on FRAND

8    terms until the ATSC Standard is withdrawn.

9        **46.**   ~~45.~~In addition, Sceptre is informed and believes that Plaintiffs also

10   agreed that they would license any of the patents they claimed to be essential to the

11   standard on an individual basis, upon demand, and not only as part of a patent pool

12   or package.

13       **47.**   ~~46.~~Sceptre is informed and believes, and on that basis alleges that,

14   over the years, the ATSC Standard has evolved and expanded since it was initially

15   adopted by the FCC.  Upon information and belief, while some of the ATSC

16   Standards are mandated by the FCC, others are not and are provided as

17   "recommendations."

18   **Plaintiffs' Patents**

19       **48.**   ~~47.~~Sceptre is informed and believes, and on that basis alleges that at

20   the time of the ATSC standard setting process, Plaintiffs Zenith, Panasonic and

21   Philips had patents and/or patent applications pending with claims that they would

22   later assert read on the ATSC Standard, based upon the following:

23           (a)    Sceptre is informed and believes, and on that basis alleges, that

24       the '541 patent owned by Philips has a priority date of May 12, 1994, and an

25       issue date of November 4, 1997.

26           (b)    Sceptre is informed and believes, and on that basis alleges, that

27       the '643 patent owned by Panasonic has a priority date of either May 10,

28       1994, or March 25, 1992, and was reissued on August 23, 2011.

(c)      Sceptre is informed and believes, and on that basis alleges, that the '958 patent owned by Zenith has a priority date of July 8, 1994, and was issued on May 13, 1997.

(d)      Sceptre is informed and believes, and on that basis alleges, that the '107 patent owned by Zenith has a priority date of September 13, 1996, and was issued on September 1, 1998.

49. 48. Sceptre is informed and believes, and on that basis alleges, that the '541,'643,'958, and '107 patents all were pending at the time of the December 1996 adoption of the ATSC Standard, and all issued thereafter.

**Zenith's Early Attempts to License its VSB Patents**

50. 49. Sceptre is informed and believes, and on that basis alleges, that in the late 1990's or early 2000's, Zenith began to contact potential licensees about its digital vestigial sideband ("VSB") licensing program, which included several patents, including the '958 and '107 patents (together, "the VSB patents"). Upon information and belief, Zenith has claimed that the VSB technology incorporated into the ATSC Standard read on Zenith's VSB patents and are essential in connection with products designed to receive, demodulate and decode digital television signals in accordance with the ATSC Standard. Sceptre is informed and believes, and on that basis alleges that Zenith offered to license to potential licensees all of the VSB patents together at the rate of $5.00 per unit. Notably, upon information and belief, Zenith's VSB license royalty rate remained constant since the inception of its licensing program at $5.00 per unit, regardless of the retail price or type of the product sold and despite the fact that market conditions changed over time and certain of Zenith's VSB patents have expired.

51. 50. Sceptre is informed and believes, and on that basis alleges, that since the early 2000's, Zenith aggressively enforced its VSB patents, often instituting litigation against potential licensees who refused to license Zenith's VSB patents. Upon information and belief, over the years, Zenith contacted several

television manufacturers to license its VSB patents, including Samsung, Panasonic, TTE Corporation ("TTE"), and Grand Alliance members Thomson Incorporated ("Thomson") and Philips.

52.   51.Sceptre is informed and believes, and on that basis alleges, that during licensing negotiations with several television manufacturers, Zenith was told that the royalty rate of $5 per unit was unfair and unreasonable given the value of the technology, the manufacturing costs and profit margins of ATSC-compliant products, and the corresponding royalty rates for comparable technologies. For example:

(a)   Upon information and belief, on or about November 15, 2004, during negotiations with TACP, TACP (believed to be Toshiba America Consumer Products) complained that the royalty rate of $5 per unit was too high, and asked Zenith for a justification.  TACP indicated that it was aware of other licensors who demand significantly lower per unit royalties for *world-wide* licenses, and called Zenith's demand for a $5 per unit royalty for a primarily U.S. license "greatly inflated."

(b)   Upon information and belief, on or about August 2, 2005, in negotiations with Grand Alliance member and Counter-Defendant Philips, Philips complained that they royalty rate of $5 per unit was "much too high."

(c)   Upon information and belief, on or about November 15, 2004, during negotiations with Hitachi Home Electronics (America), Inc. ("Hitachi"), Hitachi complained that the royalty rate of $5 per unit was too high and not reasonable, indicating that a fair and reasonable royalty for the VSB patents could be as low as $0.25 per unit.

(d)   Upon information and belief, on or about March 31, 2005, during negotiations with Counter-Defendant Panasonic, Panasonic advised Zenith that the royalty rate of $5 per unit was too high and would cause some manufacturers, like Panasonic, to lose competitiveness.

1         (e)    Upon information and belief, on or about March 22, 2006,

2   during negotiations with TTE, TTE advised Zenith that the royalty rate of $5

3   per unit was not reasonable, specifically noting that the impact of the $5

4   royalty on lower priced products is significant.  TTE requested that Zenith

5   consider a more sophisticated royalty structure to account for lower priced

6   products.

7         (f)    Upon information and belief, on or about September 13, 2006,

8   during negotiations with Funai, Funai advised Zenith that the royalty rate of

9   $5 per unit was too high and argued that a "one royalty fits all" strategy does

10  not work.

11      53.    52. Sceptre is informed and believes, and on that basis alleges that

12  Zenith conducted lengthy negotiations with these and other potential licensees

13  relating to the licensing of Zenith's VSB patents.  As a result of these negotiations,

14  one of three events transpired, each of which is alleged on information and belief:

15        (a)    Some parties accused by Zenith of selling products that

16  infringed its VSB patents were never sued by Zenith and did not sign a

17  license.

18        (b)    Some parties, after negotiating with Zenith regarding a license

19  for its VSB patents, agreed to sign a license without Zenith filing a lawsuit

20  against them.

21        (c)    Some parties agreed to sign a license for Zenith's VSB patents

22  only after they were sued by Zenith.

23      54.    53. Sceptre is informed and believes, and on that basis alleges that

24  some of those who ultimately agreed to sign a license for Zenith's VSB patents did

25  so only after being offered and accepting large "financial incentives" in the form of

26  discounts, credits and/or forbearance of back royalties owed for sales of products

27  accused of infringing the VSB patents, as an incentive to enter a license agreement.

28      55.    54. Sceptre is informed and believes, and on that basis alleges that the

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

30

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

1   effect of the above is that Zenith effectively licensed its VSB patents for less than

2   $5 per unit.  As a result, Zenith failed to license its VSB patents on FRAND terms,

3   as it licensed its VSB patents for different rates, to different companies and thus

4   engaged in price discrimination in connection with the licensing of its VSB patents.

5          56. 55. In addition, Sceptre is informed and believes, and on that basis

6   alleges that some of the parties who agreed to sign a VSB license stopped

7   manufacturing televisions for sale in the United States in the months or years that

8   followed execution of these agreements.  For example, Sceptre is informed and

9   believes that Philips has stopped manufacturing and selling televisions altogether.

10  **MPEG LA and the Formation of the ATSC Patent Pool**

11         57. 56. Sceptre is informed and believes, and on that basis alleges, that

12  MPEG LA holds itself out as the world's leading packager of patent pools for

13  standards in consumer electronics.  The "patent pool" of ATSC Standard patents

14  (the "ATSC Pool") consists of an arrangement between MPEG LA, as "Licensing

15  Administrator," and patent owners, including but not limited to Plaintiffs, whereby

16  patent owners pool their patents and MPEG LA administers licenses of those

17  patents to others who require access to the patents in order to sell devices that

18  incorporate the ATSC Standard.

19         58. 57. Sceptre is informed and believes, and on that basis alleges, that in

20  or about December 2004, MPEG LA called for submissions of patents from patent

21  owners that believed their patents could be essential for implementing the ATSC

22  Standard.  Sceptre is informed and believes, and on that basis alleges, that the initial

23  patent evaluations were performed by the law firm of Proskauer Rose LLP

24  ("Proskauer"), MPEG LA's counsel. Upon information and belief, an initial

25  meeting was held in about June 2005, at which time Proskauer reported that ATSC

26  essential patent holders interested in joining the ATSC Pool as of that time included

27  LG Electronics, Samsung, Scientific-Atlanta, and Counter-Defendants Panasonic

28  and Philips.  Upon information and belief, no specific royalty rate was proposed by

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

31

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

1   MPEG LA at that time.  A number of subsequent meetings were held with MPEG

2   LA and ATSC Standard essential patent holders to discuss formation of the ATSC

3   Pool.

4   59.   58.Sceptre is informed and believes, and on that basis alleges that, in

5   one of those subsequent meetings in 2006, MPEG LA predicted that, between the

6   years 2003 and 2009, the price of ATSC tuners would fall by roughly 80% and that

7   the retail price of digital televisions would also substantially decrease.

8   60.   59.Sceptre is informed and believes, and on that basis alleges, that in

9   or about late 2006 or early 2007, MPEG LA had discussions with Counter-

10   Defendant Zenith about potentially joining the ATSC Pool.  Upon information and

11   belief, Zenith was involved in settlement discussions with a number of

12   manufacturers Zenith had sued in connection with its VSB patents and VSB

13   licensing program, including Panasonic and Phillips, and as part of those

14   discussions, was considering whether to join the ATSC Pool.

15   **Setting of the ATSC Pool Royalty at an Admittedly Anti-Competitive Rate**

16   61.   60.Sceptre is informed and believes, and on that basis alleges that, in

17   or about April 2007,  MPEG LA, after discussions with Zenith, proposed a specific

18   royalty rate to ATSC essential patent holders of $5 per unit, regardless of the device

19   or its market price.

20   62.   61.Sceptre is informed and believes, and on that basis alleges, that

21   current ATSC licensors Samsung and Panasonic, among potentially others, knew

22   that the unreasonably high license fee was an antitrust violation as it would harm

23   competition.  Specifically, they objected to the $5 per unit royalty and royalty split,

24   claiming that the royalty rate was too high, was an antitrust violation, and the

25   royalty fee "split" among the licensors unfairly favored Zenith over the other

26   licensors.  For example, upon information and belief, on April 24, 2007, Samsung

27   sent correspondence to Plaintiffs in which it argued (among other things) that:

28   (a)   The high royalty rate was potentially anticompetitive and a

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                                    32                    SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

violation of the antitrust laws.  Specifically, Samsung stated:

/ / /

/ / /

/ / /

> Thus the royalty burden on the manufactures [sic] will eventually become the cost burden on the US consumers through the price of DTVs – which seems to be against the US Government policy of lessening the burden on the customers.  On this point, we also question  about ***a possible antitrust concern*** – can setting up a high royalty  and transferring the cost burden to consumers through a patent pool to favor one essential patent holder constitute a ***patent abuse***? (emphasis added)

(b)     The Zenith patents were not essential to the ATSC Standard, which could raise antitrust concerns and harm the market:

> This is not a normative part but an informative part [of the ATSC Standard] – which is not considered mandatory. We are concerned that ***such scheme may raise anti-trust risk*** of tying of non-essential patents to essential patent ***and have negative impact on the market*** if 75% of the royalty is allocated to the essential patents of informative parts, all of which are owned by the same one patent holder. (emphasis added).

(c)     The royalty rate was too high when considering the royalty rates of other comparable technologies in other countries, such as the royalty rate for essential patents in the ARIB standard (Japanese DTV standard), which was about $0.85, and the royalty rate for essential patents in the European standard, which was about $0.67 to $1.00: "We do not understand what makes the ATSC standard is [sic] so expensive and valuable compared to ARIB and DVB-T." (emphasis added).

(d)     The royalty rate was too high given that "price for digital consumer products will experience a sharp drop shortly after their launch.

1    DTV is not an exception for such a case."  Specifically, Samsung noted,  in

2    one example, that the ATSC royalty rate of $5 would result in a "royalty

3    portion" of "8.3% of the price," which it stated was an "extremely high ratio

4    – especially because the current royalty scheme fixes the royalty to $5 until

5    2016 *without taking the inevitable drop of the product price into account*."

6        63.   62.Sceptre is informed and believes, and on that basis alleges, that

7    Panasonic agreed with Samsung in correspondence that same date: "Please be

8    advised that Panasonic can share Samsung concerns and agree to have a face-to-

9    face meeting among all relevant holders."

10       64.   63.Upon information and belief, MPEG LA, in consultation with

11   Zenith, and despite the objections of current ATSC licensors Panasonic and

12   Samsung, refused to lower the royalty rate or modify the royalty split, but instead

13   negotiated incentives for Samsung to join the ATSC Pool.  Sceptre is informed and

14   believes, and on that basis alleges that Samsung ultimately agreed to join the ATSC

15   Pool, but has continued to assert that the royalty rate is too high and has requested

16   that the ATSC Licensors consider reducing the rate.

17       65.   64.Sceptre is informed and believes, and on that basis alleges, that in

18   or about July 2007, MPEG LA and the ATSC Licensors (including Plaintiffs) came

19   to agreement on the licensing terms of the ATSC Pool, and agreed to charge a

20   royalty rate of $5 per unit for each television sold.  Upon information and belief,

21   since inception of the ATSC Patent Pool, this rate has not changed.

22       66.   65.Sceptre is informed and believes, and on that basis alleges, that

23   since the inception of the ATSC Pool, the retail price of digital televisions has

24   dropped significantly, just as MPEG LA had predicted in 2006.  Notwithstanding

25   this significant drop in the retail price of digital televisions, the royalty rate to

26   license the patents in the ATSC Pool has remained constant, resulting in a

27   significant royalty rate percentage increase in relation to retail price.  For example,

28   the current retail price for a Sceptre 24" DTV is approximately $100.  In 2007, a

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                          34                    SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

40" DTV sold for approximately $2,000. Despite this significant drop in price, the ATSC royalty has remained constant at $5 per unit, regardless of size or sales price of each DTV. Thus, whereas the ATSC royalty would have accounted for about .25% of the sales price for a DTV in 2007, that same royalty constitutes as much as 5% of the sales price for some televisions sold today. Sceptre is informed and believes, and on that basis alleges, that the excessive royalty rate is particularly problematic for lower price-tier television sellers, like Sceptre, because these companies keep their prices and costs lower to compete.

**MPEG LA and Plaintiffs Add Non-Essential Patents to the Pool and Fail to Appoint An Independent Examiner**

67. 66. The U.S. Department of Justice ("DOJ"), in reviewing another patent pool also administered by MPEG LA -- for the MPEG-2 audio and video compression technology ("MPEG-2") – has noted that patent pools "can restrict competition, whether among intellectual property rights within the pool or downstream products incorporating the pooled patents," and expressed concern regarding the "likelihood" that the patent licensors could use the license "as a vehicle to disadvantage competitors in downstream product markets." Letter from Joel I. Klein, Acting Assistant Attorney General, Antitrust Division, Department of Justice, to Gerrard R. Beeney, Esq. dated June 26, 1997 ("DOJ Business Review Letter"). Notably, upon information and belief, Plaintiffs and/or MPEG LA have not obtained DOJ Business Review of the ATSC Pool.

68. 67. In the DOJ Business Review Letter, the DOJ stressed the importance of using an "independent expert" to ensure that only essential patents are included in a patent pool: "The limitation of the Portfolio to technically essential patents and the use of an independent expert to be the arbiter of that limitation reduces the risk that the patent pool will be used to eliminate rivalry between potentially competing technologies."

69. 68. Sceptre is informed and believes, and on that basis alleges, that

1   MPEG LA has retained Proskauer to conduct the review of some number of patents
2   in the ATSC Pool.  However, upon information and belief, Proskauer is not
3   "independent," as it also serves as trial counsel to Plaintiffs and MPEG LA in this
4   and other patent infringement actions brought on behalf of Plaintiffs and others, not
5   only in connection with the ATSC Standard, but also with regard to the MPEG-2
6   standard.  In addition, as mentioned above, Sceptre is informed and believes, and on
7   that basis alleges, that MPEG LA retains a litigation reserve from the royalties it
8   collects from licensing ATSC patents, and that such reserve has been used to pay
9   Proskauer for fees incurred in connection with this action and others.

10       70.   69. Sceptre is informed and believes, and on that basis alleges, that not
11   every patent in the ATSC Pool is necessary to practice the ATSC Standard in the
12   United States and/or essential to the practice of the mandatory portions of the
13   ATSC Standard.  For example, the ATSC Pool presently includes thirty-five (35)
14   Zenith patents, *only four (4) of which are U.S. patents* (U.S. 5,619,269, U.S.
15   5,677,911 (expired October 13, 2014), U.S. 5,802,107, and U.S. 5,987,070), *and
16   the remainder of which are foreign patents.*[1][2]  Despite the fact that only
17   approximately 10% of Zenith's patents in the ATSC Pool are U.S. patents, Sceptre
18   is informed and believes, and on that basis alleges, that the royalty rate to license
19   the patents in the ATSC Pool has not been adjusted and/or reduced.

20       In addition, upon information and belief, since the inception of the ATSC
21   Pool, many patents that had been alleged to be essential to the ATSC Pool have
22   expired.  For example, *three of the four Patents in Suit expired earlier this year,*
23   including: Zenith's '958 patent (expired July 7, 2014, five days *after* this lawsuit
24   was filed); Panasonic's '643 patent (expired February 3, 2014); and Philips' '541
25   patent (expired May 11, 2014).  Despite the expiration of these and more than 80
26   other patents since 2010 (and, upon information and ~~believe~~belief, many others

27
28   [1][2] *See* http://www.mpegla.com/main/programs/ATSC/Documents/atsc-att1.pdf for a full list of patents currently in the ATSC Pool.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                    36        SCEPTRE, INC.'S FIRST
                                         AMENDED ~~ANSWER, AFFIRMATIVE
                                         DEFENSES, AND~~ COUNTERCLAIMS

1  prior to that time), the royalty rate to license the patents in the ATSC Pool has not

2  been adjusted and/or reduced.

3  **Plaintiffs and MPEG LA Fail to Abide by Their FRAND Obligations**

4      71.   70.Sceptre is informed and believes, and on that basis alleges, that

5  from at least 2007, Plaintiffs and/or their licensees have competed with Defendant

6  in selling digital televisions throughout the United States, including in this State.

7      72.   71.MPEG LA has demanded that Sceptre enter into a license

8  agreement for the ATSC Pool, which MPEG LA has claimed consists of patents

9  that are all essential to the ATSC Standard, and which MPEG LA claims are

10  embodied in products sold by Sceptre.

11     73.   72.Sceptre has attempted to negotiate license agreements with MPEG

12  LA on FRAND terms.  During the negotiations, Sceptre informed MPEG LA that

13  the royalty sought by MPEG LA was unfair and unreasonable, given Sceptre's size,

14  market position, and practice of competing on lower prices.

15     74.   73.MPEG LA and Plaintiffs also demanded back royalties from

16  Sceptre for products previously sold by Sceptre that allegedly utilized the ATSC

17  Standard.  Sceptre informed MPEG LA that it was not entitled to royalties from

18  Sceptre as its vendors are authorized licensees of MPEG LA's ATSC program.

19  MPEG LA informed Sceptre that Sceptre was nevertheless required to pay royalties

20  for the products sold under its "brand."

21     75.   74.Plaintiffs are responsible not only for their own breaches of their

22  FRAND assurances, but for the actions of MPEG LA, which has failed to extend

23  Sceptre a license for the ATSC patent pool on FRAND terms.

24     76.   75.MPEG LA and Plaintiffs have demanded royalty rates that exceed

25  the rate that such patents should reasonably command given the following, each of

26  which is stated on information and belief:

27         (a)   The expiration of three of the four Patents in Suit, and more than

28     eighty (80) patents in the ATSC Pool since 2010;

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                      37                SCEPTRE, INC.'S FIRST
                                                   AMENDED ANSWER, AFFIRMATIVE
                                                   DEFENSES AND COUNTERCLAIMS

(b)     The questionable essentiality of the Patents in Suit and/or the patents in the ATSC Pool;

(c)     The value of the patents relative to the price of the products at issue;

(d)     The declining market price for products alleged to be using the patents.

77. 76. In addition, Sceptre is informed and believes, and on that basis alleges that MPEG LA and/or Plaintiffs have demanded that Sceptre pay royalties on products for which Plaintiffs either have already received a royalty, or are already entitled to receive a royalty, in violation of the doctrine of patent exhaustion, and have demanded royalties for a period of time that exceeds that which is allowed under U.S. patent law.

78. 77. Moreover, Sceptre is informed and believes, and on that basis alleges, that MPEG LA and Plaintiffs failed to take into consideration any of the following factors when issuing their royalty demands:

(a)     The availability and royalty rates for similar patents and/or patent pools, including the MPEG2 patent pool also administered by MPEG LA, and others;

(b)     The profitability of the patented invention, including the duration and term of the license, alternatives that could have been written into the standard, and the customary selling price of the products.

79. 78. Sceptre is informed and believes, and on that basis alleges that by their conduct, Plaintiffs and MPEG LA are attempting not only to receive a windfall in profits, but to artificially inflate the price of digital televisions sold in the U.S. to supra-competitive levels to restrain or eliminate competition for lower price-tier televisions.  In so doing, Plaintiffs and MPEG LA are engaging in anti-competitive conduct by attempting to eliminate competition in the U.S. market for digital televisions by increasing the costs of Sceptre and certain other horizontal

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

38

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

competitors in order to reduce output and restrain or eliminate competition.

**Plaintiffs and MPEG LA Intentionally Injure Sceptre and, In So Doing, Restrain and Eliminate Competition**

80. ~~79.~~In or about the Summer of 2012, MPEG LA and/ or Plaintiffs sent letters to some of Sceptre's most important customers with the express, admitted intention of causing those customers to stop doing business with Sceptre.  Sceptre is informed and believes that Plaintiffs and/or MPEG LA sent letters to both Costco and Target, both of whom were active Sceptre customers at the time, immediately prior to the holiday season, to inform them that Sceptre had not taken a license for the ATSC Patent Pool and that such customers would be liable for patent infringement.

81. ~~80.~~Scepter is informed and believes, and on that basis alleges, that in its communications with Sceptre's customers MPEG LA failed to inform them that Sceptre's DTV suppliers did, in fact, have a license from MPEG LA to the ATSC Patent Pool.  Instead, MPEG LA expressly instructed Sceptre's customers to "insist" that Sceptre take out a license, despite knowing that the license terms were a FRAND violation, anti-competitive and intended to harm and eliminate competition.  MPEG LA also instructed Sceptre's customers to have Sceptre's products "***removed from its stores***."  (Emphasis added).  These letters were clearly intended to cause Sceptre's customers to stop doing business with Scepter, and in so doing, eliminate competition from Sceptre.

82. ~~81.~~The letters to Sceptre's customers had their desired effect.  Sceptre is informed and believes that after receiving the letters, neither Costco nor Target placed another order with Sceptre, and they have altogether stopped doing business with Sceptre.

83. ~~82.~~MPEG LA and Plaintiffs admittedly knew that by sending the letters to Sceptre's customers they would cause direct injury to Sceptre.  In an e-mail to Sceptre dated November 7, 2012, MPEG LA threatened that it would

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

39

SCEPTRE~, ~ INC.'S FIRST
AMENDED ~ANSWER, AFFIRMATIVE
DEFENSES  AND~ COUNTERCLAIMS

1   contact Sceptre's retail customers and stated: "In many cases, retailers have ceased

2   doing business with unlicensed suppliers and have had the unlicensed products

3   removed from the store's shelves.  With the holiday season rapidly approaching, we

4   assume that this is something Sceptre would want to correct immediately in order to

5   avoid any interruption in sales."

6   84.   83.By threatening Sceptre that it would contact its largest customers,

7   MPEG LA intended to coerce it into taking a non-FRAND and anti-competitive

8   license, or face the loss of all business from its major customers.

9   85.   84.MPEG LA and Plaintiffs thus knowingly injured Sceptre, in the

10   form of lost customers and resulting lost sales.  The lost sales from Costco and

11   Target are presently unknown, but exceed $1 million.

12   86.   85.By refusing to extend license terms for the ATSC Patent Pool that

13   were fair, reasonable and non-discriminatory, MPEG LA and Plaintiffs prevented

14   Sceptre from obtaining a license to the ATSC technology.

15   87.   86.As purported owners of standard essential patents, Plaintiffs are

16   prohibited from seeking injunctive relief or otherwise engaging in "patent hold-up"

17   to prevent Sceptre or other competitors from selling products that compete with

18   their own products.  However, by sending letters to Sceptre's customers, MPEG LA

19   and Plaintiffs knowing and intentionally employed a competitive strategy by which

20   they effectively obtained injunctive-type relief, in that they knowingly and

21   intentionally eliminated competition from Sceptre, and harmed competition by

22   reducing output.

23   **The Relevant Technology Market**

24   88.   87.The relevant market is the market for the technology embodied in

25   the ATSC Standard (including the technology embodied in Plaintiffs' alleged

26   standard essential patents), which the FCC mandates must be utilized for every

27   television sold in the United States. (Hereafter, "the relevant technology market").

28   **Maintenance and Exercise of Monopoly Power in the Relevant Technology**

**Market**

89. ~~88.~~As stated above, once the FCC adopted the ATSC Standard, all alternative technologies that had previously been considered were excluded from use in connection with that standard and there are, by definition, no substitutes for the technology on which the ATSC Standard is based.  As owners of technology patents that are claimed to be essential to practice the ATSC Standard, Plaintiffs (and other owners of ATSC standard essential patents) are the sole suppliers of the technology needed to use the ATSC Standard.

90. ~~89.~~Plaintiffs each have the power to control prices and exclude competition in the relevant technology market by virtue of their ownership of patents they allege are essential to the ATSC Standard.  Plaintiffs have the ability to raise prices substantially above the competitive level for a significant period of time as their technology is a government mandate and there are no substitutes or alternatives.

91. ~~90.~~As a result, Plaintiffs each enjoy unquestioned monopoly power in the relevant technology market, as any one of their patents has the power to block or "hold up" the ability of another to use the ATSC Standard.

92. ~~91.~~Plaintiffs' monopoly in the ATSC Standard technology was constrained by their FRAND commitment, which, once repudiated by Plaintiffs, crossed from permissible monopoly power to illegal monopoly.

93. ~~92.~~Sceptre is informed and believes, and on that basis alleges, that Plaintiffs' monopoly power is not the result of superior business acumen or simple good fortune.  Rather, their monopoly power in the ATSC technology market has resulted from a continuing course of anticompetitive conduct, as set forth herein.

**The Downstream Product Market and the Effect of the Anticompetitive Conduct Upon It**

94. ~~93.~~The downstream product market is the market for all television sets which utilize the ATSC Standard that were sold or will be sold in the United States

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

41

SCEPTRE, INC.'S FIRST
AMENDED ~~ANSWER, AFFIRMATIVE
DEFENSES  AND~~ COUNTERCLAIMS

1    between the December 1996 adoption of the ATSC Standard and the expiration of

2    the last of the ATSC standard essential patents.  (Hereafter, "the downstream

3    product market").

4    95.    94.Sceptre is informed and believes, and on that basis alleges, that

5    Sceptre and Plaintiffs are or were horizontal competitors in the downstream product

6    market.  As Sceptre competes intensely on price, Sceptre is informed and believes,

7    and on that basis alleges, that Plaintiffs have incentive to lessen the intensity of

8    Sceptre's price competition and/or drive lower price-tier television sellers such as

9    Sceptre from the market by imposing an unreasonably high royalty and thereby

10   increasing lower price-tier television sellers' costs.

11   96.    95.Sceptre is informed and believes, and on that basis alleges that

12   MPEG LA, acting as Licensing Administrator for the ATSC Pool, and Plaintiffs—

13   all of whom are or were horizontal competitors of Sceptre in the downstream

14   product market—have intentionally set their royalty rates at prices that are not only

15   well above FRAND levels, but are intentionally so chosen to restrain or eliminate

16   competition from Sceptre and others who sell their products at lower prices than

17   those charged for comparable products sold by Plaintiffs.

18   97.    96.Sceptre is informed and believes, and on that basis alleges, that

19   Plaintiffs and MPEG LA, as Licensing Administrator for the ATSC Pool, have set

20   royalty rates that in turn raise costs, and thus prices on products for which the

21   royalties are paid.  Sceptre is informed and believes, and on that basis alleges, that

22   this in turn restricts output and reduces or eliminates competition in the downstream

23   product market.

24   98.    97.Sceptre is informed and believes, and on that basis alleges, that the

25   anticompetitive conduct described above has harmed competition in the

26   downstream product market in a number of ways since the ATSC patent pool was

27   formed, including reduction in the number of companies manufacturing televisions,

28   reduced competition to the detriment of consumers, and has increased market share

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

42

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

for certain of the licensors in the ATSC patent pool.  For example, each of which is alleged on information and belief:

      (a)     LG's (Zenith's parent) market share for digital televisions has increased from 4.9% in 2005, when the pool was formed, to 12.3% in 2012;

      (b)     Philips has ceased manufacturing digital televisions, and now collects revenues from the ATSC patent pool, while it also collects royalties from licensing its brand to Funai.

99.  ~~98.~~Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and other licensors are able to insulate themselves from the anticompetitive effects of the $5 royalty payment by entering into cross-licenses to help defray their costs.

100.  ~~99.~~Sceptre is informed and believes, and on that basis alleges that the effect of this scheme is for licensors to reduce their own costs, while increasing the costs of rivals such as Sceptre, who do not share in the pool revenues and do not own their own patents with which to "horse trade" for offsetting royalties, a practice in which (Sceptre is informed and believes, and on that basis alleges), some ATSC licensees and licensors may be engaged.

101.  ~~100.~~Sceptre is informed and believes, and on that basis alleges that by virtue of their anticompetitive conduct, as alleged herein, Plaintiffs enjoy windfall royalties at the expense of U.S. consumers and competition.

102.  ~~101.~~Sceptre is informed and believes, and on that basis alleges that since the inception of the ATSC Pool, the current licensors have received excessive royalties, disproportionate to the value of their claimed inventions, which they have been able to extract given their strangle-hold over the ATSC technology.

103.  ~~102.~~Sceptre is informed and believes, and on that basis alleges, that one company, Hitachi, estimated on or about November 15, 2004, that Zenith would eventually collect over $5 billion in royalties, which it characterized as "extraordinarily excessive," particularly "[a]gainst a $50 to $75 million

1    investment."

2        104.   ~~103.~~In addition, Sceptre is informed and believes, and on that basis

3    alleges, that MPEG LA has received substantial fees to date in "licensing

4    administration fees" for the ATSC Pool, and that it has a vested financial interest in

5    facilitating and perpetuating the collection of non-FRAND royalties for the ATSC

6    Patent Pool in order to maximize its own profits.

7    **Barriers to Entry**

8        105.   ~~104.~~Sceptre is informed and believes, and on that basis alleges, that

9    significant entry barriers protect the relevant technology market.  Regulatory

10   requirements, including FCC mandated use of the ATSC Standard, prevent others

11   from adopting technology that competes with the ATSC Standard.

12   **Concerted Activity in Restraint of Trade**

13       106.   ~~105.~~Sceptre is informed and believes, and on that basis alleges, that the

14   Plaintiffs and MPEG LA, as Licensing Administrator for the ATSC Pool, have

15   conspired in restraint of trade to affect, raise, fix, maintain, and stabilize prices in

16   the downstream product market by demanding an excessive, non-FRAND royalty

17   rate for the ATSC Standard. Such conduct, includes, without limitation, the

18   following, each of which is stated on information and belief:

19           (a)    MPEG LA, acting in concert with Plaintiffs and others, has

20       demanded an excessively high royalty for their alleged standard essential

21       patents which is intended to restrain or eliminate competition, and has in fact,

22       restrained and eliminated competition from Sceptre, as well as others in the

23       downstream product market; and

24           (b)    Plaintiffs, acting in concert with each other and MPEG LA, have

25       each demanded an artificially high royalty which is intended to restrain or

26       eliminate competition, and has in fact, restrained and eliminated competition

27       from Sceptre, as well as others in the downstream product market.

28       107.   ~~106.~~Sceptre is informed and believes, and on that basis alleges, that the

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

44

SCEPTRE, INC.'S FIRST
AMENDED ~~ANSWER, AFFIRMATIVE DEFENSES, AND~~ COUNTERCLAIMS

1   effect of this unlawful conduct has been and will continue to be to restrain or

2   eliminate competition and reduce output, to the detriment of consumers.

3   **Antitrust Injury**

4       108.   107. Sceptre is informed and believes, and on that basis alleges, that

5   Plaintiffs' conduct has and will harm competition and consumers of television sets

6   in the U.S.  Plaintiffs' conduct has and will increase the price and has and will

7   reduce the output of televisions that implement the ATSC Standard, thus raising

8   prices and reducing output of televisions available to consumers in the U.S.

9       109.   108. Sceptre is informed and believes, and on that basis alleges, that the

10  effect of the non-FRAND royalty rates charged by MPEG LA and Plaintiffs has

11  and will increase costs to television manufacturers and distributors, which in turn

12  have and will be passed through to consumers.

13      110.   109. Sceptre is informed and believes, and on that basis alleges, that the

14  non- FRAND royalties demanded by MPEG LA and Plaintiffs has resulted in a

15  reduction of competition, as it has decreased the production of products that

16  implement the ATSC Standard at lower prices.  For example, Sceptre has reduced

17  output and sales of products in the downstream product market in response to the

18  letters sent by MPEG LA and Plaintiffs to its customers and the filing of this action,

19  which has resulted in lost profits and lost opportunities.

20      111.   110. Sceptre is informed and believes, and on that basis alleges, that the

21  conduct of MPEG LA and Plaintiffs is subjecting Sceptre and other television

22  manufacturers to the threat of having to pay royalties that are overvalued.

23      112.   111. In addition, this conduct has forced Sceptre to incur substantial

24  costs associated with defending this action.  Moreover, because only three of the

25  current nine ATSC licensors have filed suit against Sceptre, and because each has

26  filed suit only on one or two of their ATSC patents—and there are more than one

27  hundred other patents in the ATSC Pool that are claimed to be essential to the

28  ATSC Standard—Sceptre faces the prospect of being forced to defend not only

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1                                    45                    SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1  successive lawsuits by these same Plaintiffs on any other ATSC patents they own,

2  but additional lawsuits by any of the other ATSC licensors on any of the ATSC

3  patents they own, as well.

4  / / /

5  ### FIRST CLAIM FOR RELIEF

6  ### VIOLATION OF SHERMAN ACT § 2—MONOPOLIZATION

7  ### (Against All Plaintiffs)

8  113.   112.Sceptre incorporates by reference the allegations contained in

9  paragraphs 1 through 111  above, as though set forth in full.

10  114.   113.Sceptre is informed and believes, and on that basis alleges, that the

11  relevant technology market, as defined above, is a valid antitrust market.

12  115.   114.Sceptre is informed and believes, and on that basis alleges, that

13  Plaintiffs each possess monopoly power in the relevant technology market.

14  116.   115.Sceptre is informed and believes, and on that basis alleges, that the

15  conduct of Plaintiffs, as described above, occurred in or affected interstate

16  commerce.

17  117.   116.Sceptre is informed and believes, and on that basis alleges, that

18  Plaintiffs each willfully acquired and maintain monopoly power in the relevant

19  technology market by engaging in anticompetitive conduct.

20  118.   117.Sceptre is informed and believes, and on that basis alleges, that as

21  set forth above, Plaintiffs falsely represented to the ATSC and/or FCC that if their

22  patented technology was included in the ATSC Standard, they would license any

23  such patents to all applicants on FRAND terms.

24  119.   118.Sceptre is informed and believes, and on that basis alleges, that the

25  ATSC and FCC relied on these promises to license their standard essential patents

26  on FRAND terms, as they would not have agreed to adopt a U.S. standard that

27  would have given Plaintiffs "blocking patents."

28  120.   119.Plaintiffs have failed, in good faith, to license their alleged

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

46

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1    standard essential patents on FRAND terms, and on information and belief, never

2    intended to do so.

3    121.   ~~120.~~Sceptre is informed and believes, and on that basis alleges, that

4    Plaintiffs have intentionally attempted to obtain, and have obtained monopoly

5    power and the ability to control prices in the relevant technology market.

6    Specifically, having succeeded in using false promises in order to have their

7    technology incorporated into the ATSC Standard, they now seek to utilize the

8    patents allegedly covering that technology to raise prices and exclude competition

9    in the downstream product market.

10   122.   ~~121.~~Sceptre is informed and believes, and on that basis alleges, that the

11   actions of Plaintiffs have had or will have the following effects: competition in the

12   relevant market has and will be impaired and restrained, and they have and will

13   have illegally obtained the power to control prices and/or restrain and exclude

14   competition in the downstream product market, thereby affecting interstate

15   commerce.

16   123.   ~~122.~~Sceptre is informed and believes, and on that basis alleges, that

17   unless the attempts of Plaintiffs to obtain an unfair, unreasonable, and

18   discriminatory royalty are declared to be unlawful, and in view of their allegations

19   that all of Sceptre's ATSC products are subject to their patents, Sceptre is and will

20   continue to be injured in its business and property and will suffer substantial and

21   irreparable harm.

22                          **SECOND CLAIM FOR RELIEF**

23   **VIOLATION OF SHERMAN ACT § 2 - CONSPIRACY TO MONOPOLIZE**

24                   **(Against All Plaintiffs and MPEG LA)**

25   124.   ~~123.~~Sceptre incorporates by reference the allegations contained in

26   paragraphs 1 through 122 above, as though set forth in full.

27   125.   ~~124.~~Sceptre is informed and believes, and on that basis alleges, that the

28   relevant technology market, as defined above, is a valid antitrust market.

Manatt, Phelps & Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

47

SCEPTRE, INC.'S FIRST
AMENDED ~~ANSWER, AFFIRMATIVE DEFENSES, AND~~ COUNTERCLAIMS

126. 125. Sceptre is informed and believes, and on that basis alleges, that Zenith, Panasonic and Philips each possess monopoly power in the relevant technology market as each of their patents that is alleged to be essential to the ATSC Standard has the power to block implementation of the ATSC Standard, and thus the sale of digital televisions in the downstream product market.  In addition, by pooling their allegedly standard essential ATSC patents in the ATSC Patent Pool, Plaintiffs have monopoly power in the relevant technology market, as those such as Sceptre who wish to sell digital televisions in the U.S. must pay the non-FRAND license fee of $5 per unit.  Thus, through each of their individual ATSC patents and through the collective ATSC Patent Pool, Plaintiffs each individually possess, and also collectively possess, monopoly power in the relevant technology market.

127. 126. Sceptre is informed and believes, and on that basis alleges, that the conduct of Plaintiffs and MPEG LA, as described above, occurred in or affected interstate commerce.

128. 127. Sceptre is informed and believes, and on that basis alleges, that an agreement or mutual understanding exists between Plaintiffs, MPEG LA and others to acquire or maintain monopoly power and control prices in the relevant technology market.  Plaintiffs unlawfully acquired monopoly power in the relevant technology market by falsely promising to the FCC and/or ATSC that they would license their ATSC standard essential patents on FRAND terms (as stated in the Section 2 Monopolization claim above).  Plaintiffs and MPEG LA then expressly conspired and agreed, as set forth above, to pool and license their alleged standard essential patents on non-FRAND terms to unlawfully acquire or maintain monopoly power.

129. 128. Sceptre is informed and believes, and on that basis alleges, that Plaintiffs, MPEG LA and others knowingly, voluntarily, intentionally, and willfully entered into an agreement and mutual understanding to acquire or maintain

1    monopoly power and control prices in the relevant technology market.

2        130.   ~~129.~~ Sceptre is informed and believes, and on that basis alleges, that

3    Plaintiffs, MPEG LA and others committed the above-described overt acts of

4    agreeing to license their alleged standard essential patents on non-FRAND terms in

5    furtherance of the conspiracy to acquire or maintain monopoly power and control

6    prices in the relevant technology market, with the conscious aim of using anti-

7    competitive conduct to acquire or maintain power in that market.

8        131.   ~~130.~~ Sceptre has been, and will continue to be injured in its business

9    and property because of the conspiracy to monopolize of Plaintiffs, MPEG LA and

10   others.

**THIRD CLAIM FOR RELIEF**

**<u>VIOLATION OF SHERMAN ACT § 1 - CONCERTED ACTION</u>**

**<u>UNREASONABLY RESTRAINING TRADE</u>**

**(Against All Plaintiffs and MPEG LA)**

15       132.   ~~131.~~ Sceptre incorporates by reference the allegations contained in

16   paragraphs 1 through  130 above, as though set forth in full.

17       133.   ~~132.~~Sceptre is informed and believes, and on that basis alleges, that

18   there exists a contract, combination or conspiracy between or among Plaintiffs,

19   MPEG LA and others.

20       134.   ~~133.~~Sceptre is informed and believes, and on that basis alleges, that the

21   contract, combination or conspiracy between or among Plaintiffs, MPEG LA and

22   others unreasonably restrains and/or eliminates trade.

23       135.   ~~134.~~Sceptre is informed and believes, and on that basis alleges, that

24   Plaintiffs are engaged in interstate commerce in the United States, and the activities

25   alleged herein involve products in the flow of interstate commerce and will

26   substantially impact interstate commerce as television products complying with the

27   ATSC Standard are sold throughout the United States.

28       136.   ~~135.~~Sceptre is informed and believes, and on that basis alleges, that the

1   restraint or elimination of trade, as alleged herein, has resulted in substantial harm
2   to competition in the downstream product market.

3   137.   136. Sceptre is informed and believes, and on that basis alleges, that
4   Plaintiffs are or were horizontal competitors of Sceptre in the downstream product
5   market that, upon information and belief, have conspired and agreed with MPEG
6   LA to reduce or eliminate competition from lower price-tier television sellers such
7   as Sceptre by entering into the following agreements in restraint of trade: (a) an
8   agreement not to compete on pricing for the royalty rate for the ATSC patent pool;
9   and (b) an agreement to set a non-FRAND royalty rate for the pooled patents.

10   138.   137. Sceptre is informed and believes, and on that basis alleges, that
11   MPEG LA and Plaintiffs have used the cover of the ATSC Patent Pool to engage in
12   additional concerted action in unreasonable restraint of trade, including without
13   limitation: increasing the costs of rivals such as Sceptre, who do not share in the
14   ATSC Pool revenues and do not own their own patents with which to trade for
15   offsetting royalties; failing to offer licenses for their patents on FRAND terms;
16   engaging in patent hold up; demanding royalty rates that are excessive in light of
17   the fact that some patents in the ATSC Pool have or will soon expire; demanding a
18   royalty rate for products sold outside the statutory period of limitations for
19   infringement claims; demanding duplicative royalties for the same products on
20   which royalties have already been paid or are already due from third parties in
21   violation of the patent exhaustion doctrine; acting to restrain and eliminate trade as
22   to lower price-tier television sellers such as Sceptre by charging excessive rates
23   calculated to inflate costs and eliminate lower price-tier competition; demanding
24   royalties for non-U.S. patents; sending letters to Sceptre's customers in an effort to
25   eliminate competition and reduce output of DTVs; failing to demonstrate
26   essentiality of all patents; and having inadequate safeguards to ensure that the pool
27   is limited to patents actually essential to the ATSC Standard (together, "the
28   Anticompetitive Conduct").

139. 138.Sceptre is informed and believes, and on that basis alleges, that the agreement to engage in the Anticompetitive Conduct between and among Plaintiffs, or any of them, and/or between and among Plaintiffs, or any of them, and MPEG LA, constitutes a contract, combination, or conspiracy in unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

140. 139.By engaging in the Anticompetitive Conduct, including but not limited to their practice of refusing licensing on FRAND terms, Plaintiffs and/or Plaintiffs and MPEG LA, are, upon information and belief, attempting to unreasonably restrain and suppress price competition in the downstream product market.

141. 140.Sceptre is informed and believes, and on that basis alleges, that the actions of Plaintiffs and/or Plaintiffs and MPEG LA have had or will have the following effects: competition in the downstream product market has been and will continue to be unreasonably impaired and restrained, thereby affecting interstate commerce; certain companies are no longer manufacturing televisions for sale in the U.S.; Plaintiffs and other licensors are able to reduce their own costs, while increasing the costs of rivals such as Sceptre.

142. 141.Sceptre is informed and believes, and on that basis alleges, that unless the conduct of Plaintiffs and/or Plaintiffs and MPEG LA to obtain an unfair, unreasonable, and discriminatory royalty, and other Anticompetitive Conduct are declared to be unlawful, and in view of Plaintiffs' and MPEG LA's assertions that all of Sceptre's ATSC Products are infringing all of Plaintiffs' patents in the ATSC Pool, Sceptre is and will continue to be injured in its business and property and will suffer substantial and irreparable harm.

## FOURTH CLAIM FOR RELIEF
## BREACH OF CONTRACT
### (Against All Plaintiffs)

143. 142. Sceptre incorporates by reference the allegations contained in

1    paragraphs 1 through 141 above, as though set forth in full.

2        144.   143. Sceptre is informed and believes, and on that basis alleges, that in

3    express or implied statements to the FCC and/or ATSC,  and/or via their

4    agreements with MPEG LA, Plaintiffs agreed to license any essential patents for the

5    ATSC Standard on FRAND terms.

6        145.   144. Sceptre is informed and believes, and on that basis alleges, that for

7    consideration, including membership and participation in the FCC, ATSC, and/or

8    the ATSC Pool, Plaintiffs entered into an express and/or implied contract with the

9    FCC and/or ATSC,  to which others, including Sceptre, are third party

10   beneficiaries.

11       146.   145. Sceptre is informed and believes, and on that basis alleges, that

12   Plaintiffs, individually and through MPEG LA, breached their contractual

13   obligations by failing to license their allegedly standard essential patents on

14   FRAND terms.  Sceptre is informed and believes, and on that basis alleges, that

15   Plaintiffs' demands for unreasonable royalties and/or failure to license their

16   allegedly standard essential patents on FRAND terms failed to consider the

17   following: licensors of the ATSC Patent Pool agreed that the royalty rate for the

18   ATSC Patent Pool was anti-competitive and would harm competition; the costs of

19   rivals, such as Sceptre, would be increased, as they do not share in the ATSC Patent

20   Pool revenues and do not own their own patents with which to trade for offsetting

21   royalties; by sending letters to Sceptre's customers, Plaintiffs would effectively

22   enjoin and restrain Sceptre from selling DTVs and thus restrain competition and

23   decrease output of DTVs; patents in the ATSC Pool have or will soon expire, and

24   the royalty rates should decrease as patents in the pool expire; royalties had already

25   been paid or were already due to be paid by third parties on products, and should

26   not be demanded a second time in violation of the patent exhaustion doctrine;  the

27   ATSC Patent Pool includes non-U.S. patents; and Plaintiffs have inadequate

28   safeguards to ensure that the ATSC Pool is limited to patents actually essential to

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

313274187.1

52

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

1    the ATSC standard.

2         147.   146.Sceptre is informed and believes, and on that basis alleges, that it

3    has incurred damages and irreparable harm and will be further damaged in the

4    future due to Plaintiffs' breach of their contractual obligations.  Such damages

5    include, without limitation: lost profits and lost opportunities; a reduction in output;

6    the ongoing threat of having to pay unreasonable royalties; the costs of having to

7    defend this lawsuit; and the threat of other lawsuits that may be brought by

8    Plaintiffs with regard to other ATSC patents they own, and/or by other ATSC

9    licensors with regard to their ATSC patents.

10                        **FIFTH CLAIM FOR RELIEF**

11                        **PROMISSORY ESTOPPEL**

12                         **(Against All Plaintiffs)**

13        148.   147.Sceptre incorporates by reference the allegations contained in

14   paragraphs 1 through 146 above, as though set forth in full.

15        149.   148.Sceptre is informed and believes, and on that basis alleges, that

16   Plaintiffs made representations and engaged in other conduct, including

17   representations and/or omissions to the FCC and/or ATSC that obligated them to

18   license any patents they may own that they allege are required to operate in

19   accordance with the ATSC Standard, on FRAND terms.

20        150.   149.Sceptre is informed and believes, and on that basis alleges, that

21   Plaintiffs' conduct constituted promises to the FCC, ATSC, and/or third parties that

22   make, use, sell, offer to sell, or import into the United States products compliant

23   with the ATSC standard.  Sceptre is further informed and believes, and on that basis

24   alleges, that the intended purpose of Plaintiffs' promises was to induce reliance

25   thereon; by making such promises, Plaintiffs knew or reasonably should have

26   known they would be relied upon.

27        151.   150.Sceptre is informed and believes, and on that basis alleges, that the

28   FCC, ATSC, and/or third parties, including Sceptre, reasonably relied upon

1   Plaintiffs' promises, and invested substantial resources developing, marketing,
2   and/or selling products that are alleged to utilize the ATSC Standard, with the
3   expectation that Plaintiffs would comply with their promises and offer licenses to
4   any standard essential patents on FRAND terms.

5   152.   151. Plaintiffs are estopped from defaulting on these promises under
6   the doctrine of promissory estoppel.

7   153.   152. Sceptre is informed and believes, and on that basis alleges, that it
8   has been damaged as a result of its reasonable reliance as set forth herein, and is
9   threatened by the continuing loss of profits, customers, potential customers,
10  goodwill, and product image such that injustice can only be avoided by
11  enforcement of Plaintiffs' promises.  Such damages include, without limitation: lost
12  profits and lost opportunities; reduction in output; the ongoing threat of having to
13  pay unreasonable royalties; the costs of having to defend this lawsuit; and the threat
14  of other lawsuits that may be brought by Plaintiffs with regard to other ATSC
15  patents they own, and/or by other ATSC licensors with regard to their ATSC
16  patents.

17  154.   153. Sceptre is informed and believes, and on that basis alleges, that it
18  will suffer irreparable injury by reason of the acts and conduct of Plaintiffs alleged
19  above until and unless the court enjoins such acts, practices and conduct.

20  **SIXTH CLAIM FOR RELIEF**

21  **UNFAIR COMPETITION UNDER CALIFORNIA BUSINESS &**
22  **PROFESSIONS CODE § 17200 AND THE COMMON LAW**

23  **(Against All Plaintiffs and MPEG LA)**

24  155.   154. Sceptre incorporates by reference the allegations contained in
25  paragraphs 1 through 153 above, as though set forth in full.

26  156.   155. By the acts alleged, Plaintiffs and MPEG LA have engaged in
27  unfair competition within the meaning of California Business & Professions Code §
28  17200, *et seq.* and the common law.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

54

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES AND COUNTERCLAIMS

157.   156. Sceptre is informed and believes, and on that basis alleges, that Plaintiffs and MPEG LA have engaged in unfair business practices, including, but not limited to: Plaintiffs' their false representations to the ATSC and/or FCC that they would license their allegedly standard essential patents to all licensees on FRAND terms; and/or their conspiracy to monopolize and/or their conspiracy to reduce or eliminate competition from lower price-tier television sellers by agreeing not to compete on pricing for the royalty rate for the ATSC patent pool and agreeing to set a non-FRAND royalty rate for the pooled patents.  Such conduct is unlawful, unfair, and/or fraudulent and therefore violates California Business & Professions Code § 17200, *et seq.* and the common law.

158.   157. The acts of Plaintiffs and MPEG LA violate and/or threaten to violate the policy or spirit of the antitrust laws, and otherwise significantly threaten and/or harm competition.  By the deceptive acts, practices, and conduct alleged above, Plaintiffs and MPEG LA are violating Sections 1 and 2 of the Sherman Act, which has injured competition as well as consumers in California and elsewhere.

159.   158. By reason of Plaintiffs' and MPEG LA's acts, Sceptre also has suffered, and will continue to suffer, irreparable harm, for which Sceptre has no adequate remedy at law.  Unless and until Plaintiffs' and MPEG LA's conduct is enjoined, Plaintiffs and MPEG LA will continue to engage in the acts alleged herein.

160.   159. Sceptre is entitled to relief, including an injunction and/or restitution.

## SEVENTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF NON-INFRINGEMENT
## OF '107 PATENT
### (Against Zenith)

161.   160. Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

162.   ~~161.~~ This is an action for a declaratory judgment of non-infringement by Sceptre of the '107 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

163.   ~~162.~~ Plaintiffs have alleged that Sceptre directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '107 Patent.

164.   ~~163.~~ The filing of this action by Plaintiffs, and Sceptre's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '107 Patent.

165.   ~~164.~~ Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it does not infringe any claim of the '107 Patent.

**EIGHTH CLAIM FOR RELIEF**

**<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT</u>**

**<u>OF '958 PATENT</u>**

**(Against Zenith)**

166.   ~~165.~~ Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

167.   ~~166.~~ This is an action for a declaratory judgment of non-infringement by Sceptre of the '958 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

168.   ~~167.~~ Plaintiffs have alleged that Sceptre directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '958 Patent.

169.   ~~168.~~ The filing of this action by Plaintiffs, and Sceptre's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '958 Patent.

170.   ~~169.~~ Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq*. that it does not infringe any claim of the '958 Patent.

**NINTH CLAIM FOR RELIEF**

**<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT</u>**

**OF '643 PATENT**

**(Against Panasonic)**

171. ~~170.~~Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

172. ~~171.~~This is an action for a declaratory judgment of non-infringement by Sceptre of the '643 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

173. ~~172.~~Plaintiffs have alleged that Sceptre directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '643 Patent.

174. ~~173.~~The filing of this action by Plaintiffs, and Sceptre's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '643 Patent.

175. ~~174.~~Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq.* that it does not infringe any claim of the '643 Patent.

~~//~~

~~//~~

~~//~~

**TENTH CLAIM FOR RELIEF**

**DECLARATORY JUDGMENT OF NON-INFRINGEMENT**

**OF '541 PATENT**

**(Against Philips)**

176. ~~175.~~Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

177. ~~176.~~This is an action for a declaratory judgment of non-infringement by Sceptre of the '541 Patent pursuant to 28 U.S.C. §§ 2201 and 2202.

178. ~~177.~~Plaintiffs have alleged that Sceptre directly infringes, indirectly infringes by inducement, literally and/or under the doctrine of equivalents, the '541 Patent.

179. ~~178.~~The filing of this action by Plaintiffs, and Sceptre's First Affirmative Defense, create an actual and justiciable controversy concerning the non-infringement of the '541 Patent.

180. ~~179.~~Sceptre seeks a declaration under 28 U.S.C. §§ 2201, *et seq.* that it does not infringe any claim of the '541 Patent.

## ELEVENTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF '107 PATENT

### (Against Zenith)

181. ~~180.~~Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

182. ~~181.~~Zenith purports to be the assignee and owner of the entire right, title and interest in the '107 patent.

183. ~~182.~~Zenith has sued Sceptre in the present action, alleging infringement of the '107 patent.  Thus, an immediate, real, and justiciable controversy exists between Zenith and Sceptre with respect to the alleged infringement, validity, and enforceability of the '107 patent.

184. ~~183.~~The claims of the '107 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

185. ~~184.~~Sceptre seeks a judgment declaring that the asserted claims of the '107 patent are invalid.

## TWELFTH CLAIM FOR RELIEF

## DECLARATORY JUDGMENT OF INVALIDITY OF '958 PATENT

### (Against Zenith)

186. ~~185.~~Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

187. ~~186.~~Zenith purports to be the assignee and owner of the entire right, title and interest in the '958 patent.

188. 187.Zenith has sued Sceptre in the present action, alleging infringement of the '958 patent.  Thus, an immediate, real, and justiciable controversy exists between Zenith and Sceptre with respect to the alleged infringement, validity, and enforceability of the '958 patent.

189. 188.The claims of the '958 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

190. 189.Sceptre seeks a judgment declaring that the asserted claims of the '958 patent are invalid.

/ / /

## THIRTEENTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF INVALIDITY OF '643 PATENT
### (Against Panasonic)

191. 190.Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

192. 191.Panasonic purports to be the assignee and owner of the entire right, title and interest in the '643 patent.

193. 192.Panasonic has sued Sceptre in the present action, alleging infringement of the '643 patent.  Thus, an immediate, real, and justiciable controversy exists between Panasonic and Sceptre with respect to the alleged infringement, validity, and enforceability of the '643 patent.

194. 193.The claims of the '643 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

195. 194.Sceptre seeks a judgment declaring that the asserted claims of the '643 patent are invalid.

## FOURTEENTH CLAIM FOR RELIEF
## DECLARATORY JUDGMENT OF INVALIDITY OF '541 PATENT

**(Against Philips)**

196. ~~195.~~Sceptre incorporates by reference the allegations contained in paragraphs 1 through 159 above, as though set forth in full.

197. ~~196.~~Philips purports to be the assignee and owner of the entire right, title and interest in the '541 patent.

198. ~~197.~~Philips has sued Sceptre in the present action, alleging infringement of the '541 patent.  Thus, an immediate, real, and justiciable controversy exists between Philips and Sceptre with respect to the alleged infringement, validity, and enforceability of the '541 patent.

199. ~~198.~~The claims of the '541 patent are invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 101, 102, 103, and/or 112.

200. ~~199.~~Sceptre seeks a judgment declaring that the asserted claims of the '541 patent are invalid.

**PRAYER FOR RELIEF**

WHEREFORE, Sceptre denies that Plaintiffs are entitled to any relief, including the relief requested in their Prayer for Relief, Sceptre respectfully requests that this Court enter a judgment against Plaintiffs and in favor of Sceptre:

A.    Finding that Sceptre has not infringed the '107 patent;

B.    Finding that Sceptre has not infringed the '958 patent;

C.    Finding that Sceptre has not infringed the '643 patent;

D.    Finding that Sceptre has not infringed the '541 patent;

E.    Finding that the '107, '958, '643, and '541 patents are invalid;

F.    Declaring that the '107, '958, '643, and '541 patents are unenforceable;

G.    Awarding to Sceptre damages in an amount to be proven at trial on account of Plaintiffs' breach of contract;

H.    Compelling Plaintiffs to offer licenses to the Patents in Suit and ATSC

Pool on FRAND terms;

     I.     Awarding to Sceptre damages, as well as treble damages, in an amount to be proven at trial on account of acts of the Plaintiffs in violation of Section 1 of the Sherman Act (15 U.S.C. § 1);

     J.     Awarding to Sceptre damages, as well as treble damages, in an amount to be proven at trial on account of the acts of Plaintiffs in violation of Section 2 of the Sherman Act (15 U.S.C. § 2) and for Conspiracy to Monopolize in violation of Section 2 of the Sherman Act;

     K.     Finding that Sceptre is entitled to injunctive relief and restitution for Plaintiffs' unfair competition;

     L.     Awarding to Sceptre attorneys' fees and costs pursuant to 15 U.S.C. § 15;

     M.     Entering a judgment declaring that Sceptre is the prevailing party and that this is an exceptional case pursuant to 35 U.S.C. § 285, and awarding Sceptre its reasonable costs and expenses of litigation, including attorneys' and experts' fees;

     N.     Dismissing Plaintiffs' Complaint with prejudice;

     O.     Denying any damages or injunctive relief to Plaintiffs; and

     P.     Awarding to Sceptre such other and further relief as the Court may deem just and proper.

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1

61

SCEPTRE, INC.'S FIRST
AMENDED ANSWER, AFFIRMATIVE
DEFENSES, AND COUNTERCLAIMS

1

2

Dated:  November 3̶13, 2014     By:_____/s/ Shari Mulrooney Wollman_____

3
         Shari Mulrooney Wollman
         MANATT, PHELPS & PHILLIPS, LLP

4
         Shari Mulrooney Wollman
         Matthew P. Kanny

5
         Jessamyn Vedro

6
         Christine Yang

7
         LAW OFFICES OF S.J. CHRISTINE YANG

8
         *Attorneys for Defendant and Counterclaimant*
         SCEPTRE, INC.

9

10  / / /

11  / / /

12  / / /

13  / / /

14  / / /

15  / / /

16  / / /

17  / / /

18  / / /

19          **JURY DEMAND**

20   Sceptre demands a trial by jury as to all claims, defenses, counterclaims, and

21 issues properly triable thereby.

313274187.1

SCEPTRE, INC.'S FIRST AMENDED ~~ANSWER, AFFIRMATIVE DEFENSES, AND~~ COUNTERCLAIMS

1

2

Dated:     November 3̶13,     By:____/s/ Shari Mulrooney Wollman_____
2014                              Shari Mulrooney Wollman
3                                 MANATT, PHELPS & PHILLIPS, LLP
                                  Shari Mulrooney Wollman
4                                 Matthew P. Kanny
                                  Jessamyn Vedro
5

6                                 Christine Yang
                                  LAW OFFICES OF S.J. CHRISTINE YANG
7
                                  *Attorneys for Defendant and Counterclaimant*
8                                 SCEPTRE, INC.

9

10

11

12
313199649.1
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

313274187.1                          63          SCEPTRE, INC.'S FIRST
                                                 AMENDED A̶N̶S̶W̶E̶R̶,̶ ̶A̶F̶F̶I̶R̶M̶A̶T̶I̶V̶E̶
                                                 D̶E̶F̶E̶N̶S̶E̶S̶,̶ ̶A̶N̶D̶ COUNTERCLAIMS

| Comparison Details | |
|---|---|
| Title | **pdfDocs compareDocs Comparison Results** |
| Date & Time | 11/13/2014 4:56:02 PM |
| Comparison Time | 4.02 seconds |
| compareDocs version | v3.4.15.4 |

| Sources | |
|---|---|
| Original Document | C:\Users\ARiberdy\AppData\Local\Temp\DocsCorp\pdfDocs compareDocs\Document\OutlookAddin\313199649_1.docxDMS Information |
| Modified Document | C:\Users\ARiberdy\AppData\Local\Temp\DocsCorp\pdfDocs compareDocs\Document\OutlookAddin\FINAL 1st Amended Counterclaims.DOCXDMS information |

| Comparison Statistics | |
|---|---|
| Insertions | 14 |
| Deletions | 15 |
| Changes | 196 |
| Moves | 6 |
| TOTAL CHANGES | 231 |
| | |
| | |
| | |
| | |
| | |

| Word Rendering Set Markup Options | |
|---|---|
| Name | Standard |
| Insertions | |
| Deletions | |
| Moves / Moves | |
| Inserted cells | |
| Deleted cells | |
| Merged cells | |
| Formatting | Color only. |
| Changed lines | Mark left border. |
| Comments color | ByAuthorcolor options] |
| Balloons | False |

| compareDocs Settings Used | Category | Option Selected |
|---|---|---|
| Open Comparison Report after Saving | General | Always |
| Report Type | Word | Formatting |
| Character Level | Word | False |
| Include Headers / Footers | Word | True |
| Include Footnotes / Endnotes | Word | True |
| Include List Numbers | Word | True |
| Include Tables | Word | True |
| Include Field Codes | Word | True |
| Include Moves | Word | True |
| Show Track Changes Toolbar | Word | True |
| Show Reviewing Pane | Word | False |
| Update Automatic Links at Open | Word | False |
| Summary Report | Word | End |
| Include Change Detail Report | Word | Separate |
| Document View | Word | Print |
| Remove Personal Information | Word | False |