1  Shari Mulrooney Wollman (Bar No. CA 137142)
   E-mail:  swollman@manatt.com
2  Matthew P. Kanny (Bar No. CA 167118)
   E-mail:  MKanny@manatt.com
3  Jessamyn E. Vedro (Bar No. CA 280209)
   E-mail: jvedro@manatt.com
4  MANATT, PHELPS & PHILLIPS, LLP
   11355 West Olympic Boulevard
5  Los Angeles, CA  90064-1614
   Telephone:  (310) 312-4000
6  Facsimile:  (310) 312-4224

7  Christine Yang (Bar No. CA 102048)
   Email:  cyang@sjclawpc.com
8  LAW OFFICE OF S.J. CHRISTINE YANG
   17220 Newhope Street, Suites 101-102
9  Fountain Valley, CA 92708
   Telephone:  (714) 641-4022
10 Facsimile:  (714) 641-2082

11 *Attorneys for Defendant and Counterclaimant* SCEPTRE,
   INC.
12

13              UNITED STATES DISTRICT COURT

14              CENTRAL DISTRICT OF CALIFORNIA

15

16 ZENITH ELECTRONICS LLC, PANASONIC      No.  2:14-cv-5150 JAK (AJWx)
   CORPORATION,
17 AND U.S. PHILIPS CORPORATION,          **Honorable John A. Kronstadt**

18          Plaintiffs,                   **DEFENDANT SCEPTRE, INC.'S
                                          OPPOSITION TO PLAINTIFFS' AND
19     vs.                                COUNTER-DEFENDANT'S MOTION TO
                                          DISMISS SCEPTRE, INC.'S FIRST
20 SCEPTRE, INC.,                         THROUGH SIXTH AMENDED
                                          COUNTERCLAIMS**
21          Defendant.
                                          Date:      December 15, 2014
22                                        Time:       8:30 a.m.
                                          Courtroom: 750 of the Honorable
23 And Related Counterclaims                         John A. Kronstadt
24

25

26

27

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION................................................................................1

II.    STATEMENT OF FACTS..................................................................3

    A.   The FCC Adopted the ATSC Standard and Required FRAND Licensing Commitments From Counter-Defendants.....................3

    B.   ATSC Patent Pool Formation, and The Non-FRAND Royalty Rate ................4

    C.   Counter-Defendants Fail to Implement Safeguards Required by the DOJ to Ensure Patent Pools Do Not Violate the Antitrust Laws......................5

    D.   Plaintiffs and MPEG LA Fail to Abide by Their FRAND Obligations and Intentionally Injure Sceptre ..........................5

    E.   Monopoly Power in the Upstream Technology Market ...................................6

    F.   The Effect of the Anticompetitive Conduct Upon the Downstream Product Market.........................6

III.   THE COUNTERCLAIMS ASSERT WELL ESTABLISHED LEGAL THEORIES.........7

    A.   Dismissals Are Routinely Denied in Standard Essential Patent Cases Involving FRAND Violations........................7

    B.   Non-FRAND Verdicts Have Been Entered With Increasing Frequency Against Patent Owners ...........................9

IV.    SCEPTRE HAS STANDING TO ASSERT ITS CLAIMS..............................9

    A.   Sceptre Has Article III Standing As To All Claims .....................................9

    B.   Sceptre Has Antitrust Standing As To Its Section 1 and Section 2 Claims ...............11

V.     THE STATUTE OF LIMITATIONS HAS NOT EXPIRED ON THE COUNTERCLAIMS ..........................15

    A.   Sceptre's Antitrust and Section 17200 Claims Are Not Time-Barred ........... 15

    B.   Sceptre's State Claims Are Not Time-Bared ................................ 16

VI.    SCEPTRE HAS STATED VALID CLAIMS FOR RELIEF............................ 16

    A.   The Sherman Act §2 Monopolization Claim States a Valid Claim for Relief....................... 16

    B.   The Sherman Act §2 Conspiracy to Monopolize Claim States a Valid Claim for Relief .......................... 19

    C.   The Sherman Act §1 Claim States a Valid Claim for Relief.......................... 20

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

i

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

**TABLE OF CONTENTS**
(continued)

**Page**

D.   The Breach of Contract and Promissory Estoppel Claims State Valid Claims for Relief........................................................................... 21

E.   The Section 17200 Claim States a Valid Claim for Relief............................ 22

VII.   SCEPTRE'S ANTITRUST AND STATE LAW COUNTERCLAIMS MEET THE TWOMBLY STANDARD ........................................................... 22

A.   Sceptre's Section 1 Claim Meets the Twombly Standard.............................. 22

B.   Sceptre's Section 2 Counterclaims Meets the Twombly Standard ............... 23

C.   Sceptre's State Law Claims Meets the Twombly Standard .......................... 24

VIII.   CONCLUSION ......................................................................................... 24

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

ii                    ANSWER AND AFFIRMATIVE DEFENSES, AND
                     COUNTERCLAIMS AND THIRD-PARTY CLAIM

# TABLE OF AUTHORITIES

**Page**

## CASES

*Actividentity Corp. v. Intercede Group PLC*,
  2009 WL 8674284 (N.D.Cal. September 11, 2009).....................................................19, 24

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
  948 F.2d 536 (9th Cir. 1991).........................................................................................16, 17

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
  486 U.S. 492 (1988) ........................................................................................2, 3, 19, 20

*Already, LLC v. Nike, Inc.*,
  __ U.S. __, 133 S. Ct. 721 (2013) ...........................................................................9

*Aluminium v. Hunter Eng'g Co., Inc.*,
  655 F.2d 938 (9th Cir. 1981)...........................................................................................10

*Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*,
  190 F.3d 1051 (9th Cir. 1055).........................................................................................11, 12

*Am. Title Ins. Co. v. Lacelaw Corp.*,
  861 F.2d 224 226 (9th Cir. 1988)....................................................................................10

*American Tobacco Co. v. United States*,
  328 U.S. 781 (1946) .......................................................................................................19, 20

*Apple, Inc. v. Motorola Mobility, Inc.*,
  No. 11-178, 2011 WL 7324582 (W.D. Wisc. June 7, 2011)....................................9, 14, 22

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
  No. 11-01846, 2012 WL 1672493 (N.D. Cal. May 14, 2012)................................... passim

*Apple v. Samsung Electronics Co., Ltd.*,
  2011 WL 4948567...........................................................................................................11

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937 (2009) ..........................................................................22

*Associated General Contractors of California, Inc. v. California State Council
  of Carpenters*,
  459 U.S. 519 (1983) .......................................................................................................13

*Atl. Richfield Co. v. USA Petroleum Co.*,
  495 U.S. 328 (1990) .......................................................................................................12

*Barnes & Noble, Inc. v. LSI Corp.*,
  849 F. Supp. 2d 925 (N.D. Cal. 2012) ..........................................................................8

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

iii

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

4

*Barroso v. Ocwen Loan Servicing, LLC,*
 208 Cal. App. 4th 1001 (2012) ............................................................16

5

*Bell Atlantic Corp. v. Twombly,*
 550 U.S. 554 (2007) ...........................................................22, 23, 24

6

7

*Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic,*
 152 F.3d 588 (7th Cir. 1988) ...............................................................14

8

*Broadcast Music, Inc. v. Columbia Broad Sys., Inc.,*
 441 U.S. 1 (1979)................................................................................18

9

10

*Broadcom Corp. v. Qualcomm, Inc.,*
 501 F.3d 297 (3rd Cir. 2007) ..................................................... passim

11

12

*C&K Eng. Contractors v. Amber Steel Co.,*
 23 Cal. 3d 1 (1978) .............................................................................16

13

*Caceres v. Bank of Am., N.A.,*
 2013 U.S. Dist. LEXIS 184605 (C.D. Cal., Oct. 28, 2013).................16

14

15

*Cahill v. Liberty Mutual Ins. Co.,*
 80 F.3d 336 (9th Cir. 1996).................................................................10

16

17

*Carter v. Variflex,*
 101 F. Supp. 2d 1261 (C.D. Cal. 2000) ..............................................14

18

*City of Moundridge v. Exxon Mobil Corp.,*
 471 F. Supp. 2d 20 (D.D.C. 2007) ......................................................12

19

20

*Coalition for Icann Transparency Inc. v. Verisign, Inc.,*
 464 F. Supp. 2d 948 (N.D. Cal. 2006) ................................................12

21

*Donovan v. Royal Logging Co.,*
 645 F.2d 822 (9th Cir. 1981)...............................................................21

22

23

*Eminence Capital, LLC v. Aspeon, Inc.,*
 316 F.3d 1048 (9th Cir. 2003)..............................................................24

24

25

*Forsyth v. Humana, Inc.,*
 114 F.3d 1467 (9th Cir. 1997), *overruled on other grounds by Lacey v.
 Maricopa Cnty.,* 693 F.3d 896 (9th Cir. 2012) ...................................12

26

27

*Fox v. Ethicon Endo-Surgery, Inc.,*
 35 Cal. 4th 797 (2005) ........................................................................16

28

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

iv

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

**TABLE OF AUTHORITIES**
(continued)

Page

*Fujitsu v. Tellabs*,
    N.D. Ill. Case No. 1:09-cv-04530, Dkt..................................................................9

*Garon v. eBay, Inc.*,
    2011 WL 6329089 (N.D.Cal. Nov.30, 2011) .......................................................17

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
    No. 11-3613, 2012 WL 2711040 (N.D. Cal. July 6, 2012) ..................................14

*Hanover Shoe, Inc. v. United Show Machinery Corp.*,
    392 U.S. 481 (1968) ............................................................................................15

*Hennegan v. Pacifico Creative Serv., Inc.*,
    787 F.2d 1299 (9th Cir. 1986)..............................................................................15

*In re Innovatio IP Ventures, LLC Patent Litig.*,
    921 F. Supp. 2d 903 (N.D. Ill. Feb. 4, 2013)........................................................8

*Klehr v. AO. Smith Corp.*,
    521 U.S. 179 (1997) ............................................................................................15

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
    __ U.S. __, 134 S. Ct. 1377 (2014) ......................................................................9

*Matsushita Elec. Indus.Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ............................................................................................12

*McCaskey v. California State Auto. Assn.*,
    189 Cal. App. 4th 947 (2010)...............................................................................16

*MedImmune v. Genentech, Inc.*,
    549 U.S. 118 (2007) ..............................................................................................9

*Microsoft v. Motorola*,
    871 F. Supp. 2d 1089 (W.D. Wash. May 14, 2012).............................................9

*Microsoft v. Motorola*,
    No. 10-1823, 2011 WL 11480223 (W.D. Wash. June 1, 2011) ...........................8

*NCAA v. Board of Regents of University of Oklahoma*,
    468 U.S. 85 (1984)..................................................................................1, 20, 21

*Nero AG v. MPEG LA LLC*,
    No. 10-3672, at *7-8 (C.D. Cal. Sept. 14, 2010).........................................10, 23

*Newcal Indus., Inc. v. Ikon Office Solution*,
    513 F.3d 1038 (9th Cir. 2008)..............................................................................10

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

v

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

**TABLE OF AUTHORITIES**
(continued)

Page

*Nobelpharma AB v. Implant Innocations, INc.,*
141 F.3d 1059 (Fed. Cir. 1998) ........................................................................14

*Pace Indus., Inc. v. Three Phx. Co.,*
813 F.2d 234 (9th Cir. 1987)...........................................................................15

*Rambus Inc. v. FTC,*
522 F.3d 456 (D.C. Cir. 2008) ........................................................................12

*Realtek Semiconductor Corp. v. LSI Corp.,*
N.D. Cal. Case No. 5:12-cv-03451-RMW, Dkt...................................................9

*Red Lion Med. Safety, Inc. v. Ohmeda, Inc.,*
63 F. Supp. 2d 1218 (E.D. Cal. 1999) ..............................................................14

*Reiter* v. *Sonotone Corp.,*
442 U.S. 330 (1979) ........................................................................................1

*Research in Motion Ltd. v. Motorola, Inc.,*
644 F. Supp. 2d 788 (N.D. Tex. 2008)..................................................... passim

*Rickards v. Canine Eye Registrations Foundation,*
783 F.2d 1329 (9th Cir. 1986)........................................................................14

*Standard Oil Co.* v. *United States,*
221 U.S. 1 (1911)........................................................................................1, 22

*Starr v. Sony BMG Music Entertainment,*
592 F.3d 314 (2d Cir. 2010)...........................................................................22

*State Oil Co. v. Khan,*
522 U.S. 3 ....................................................................................................20

*Texaco, Inc. v Dagher,*
547 U.S. 1 (2006)..........................................................................................21

*Twin City Sportservice, Inc. v. Charles O. Finley & Co.,*
512 F.2d 1264 (9th Cir. 1975)........................................................................15

*U.S. Ecology, Inc. v. California,*
129 Cal. App. 4th 887 (2005).........................................................................16

*United States v. American Airlines,*
743 F.2d 1114 (5th Cir. 1984), *cert. dismissed,* 474 U.S. 1001 (1985) ...........20

*United States v. E.I. de Pont de Nemours & Co.,*
351 U.S. 377 (1956) ......................................................................................17

Manatt, Phelps &
Phillips, LLP
Attorneys At Law
Los Angeles

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

1
2

# TABLE OF AUTHORITIES
## (continued)

Page

3
4

*United States v. Grinnell Corp.*,
    384 U.S. 563 (1966) ........................................................................................16

5

*United States v. Line Materials Co.*,
    333 U.S. 287 (1948) ........................................................................................23

6
7

*Verizon Communications Inc. v. Trinko*,
    540 U.S. 398 (2004) ........................................................................................17

8
9

*Vizio Inc. v. Funai Elec. Co. Ltd.*,
    No. 09-0174, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ...................8, 22, 23

10

*Vizio, Inc. v. Funai Elec. Co.*,
    No. CV 09-0174 ...............................................................................................14

11
12

*Xerox Corp. v. Media Scis. Int'l, Inc.*,
    511 F. Supp. 2d 372 (S.D.N.Y. 2007)........................................................13, 14

13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
    401 U.S. 321 (1971) ........................................................................................15

14

# STATUTES

15

15 U.S.C. § 15 ........................................................................................................11

16

Section 17200 of the Cal. Bus. & Prof. Code ...........................................8, 15, 22

17

Clayton Act. § 4 ................................................................................................11, 12

18

# OTHER AUTHORITIES

19

Hovenkamp, *Federal Antitrust Policy* 311 (4th ed 2011).......................................20

20

*http://www.mpegla.com/main/programs/ATSC/Pages/Licensees.aspx* ...................5

21

# RULES

22

Fed. R. Civ. P. 8(e)(2) ............................................................................................21

23

Fed. R. Civ. P. 9(b)..................................................................................................24

Rule 8 ................................................................................................................22, 24

24

Rule 12(b)(6) ...........................................................................................................22

25

Rule 15(a) ................................................................................................................24

26
27
28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

vii

ANSWER AND AFFIRMATIVE DEFENSES, AND
COUNTERCLAIMS AND THIRD-PARTY CLAIM

Sceptre, Inc. ("Sceptre") hereby opposes Plaintiffs' and MPEG LA's notice of motion and motion to dismiss sceptre inc.'s first through sixth amended counterclaims pursuant to Fed. R. Civ. P. 12(b)(1)&(6) ("Motion," Docket ("Dkt") 67), filed by Plaintiffs and Counter-Defendants Zenith Electronics LLC ("Zenith"), Panasonic Corp. ("Panasonic"), U.S. Philips Corp. ("Philips") (together, "Plaintiffs"), and Counter-Defendant MPEG LA, LLC ("MPEG LA") (collectively, "Counter-Defendants") as follows:

## I.   <u>INTRODUCTION</u>

The anticompetitive consequences of this arrangement are apparent. Individual competitors lose their freedom to compete.  Price is higher and output lower than they would otherwise be, and both are unresponsive to consumer preference. This latter point is perhaps the most significant, since **"*Congress designed the Sherman Act as a 'consumer welfare prescription*.'"** *Reiter* v. *Sonotone Corp.*, 442 U.S. 330, 343 (1979). A <u>restraint that has the effect of reducing the importance of consumer preference in setting price and output is not consistent with this fundamental goal of anti-trust law.</u> ***<u>Restrictions on price and output are the paradigmatic examples of restraints of trade that the Sherman Act was intended to prohibit</u>***.  *See Standard Oil Co*. v. *United States*, 221 U.S. 1, 52-60 (1911).

*NCAA v. Board of Regents of University of Oklahoma,* 468 U.S. 85, 107-108 (1984)(footnotes and internal citations omitted) (emphasis added).

[S]uccessful RRC [Raising rivals' costs] does not require the exit of rivals or even the permanent reduction in competitors' production capacity. If the marginal costs of established competitors are raised, those rivals will have the incentive to raise their prices and reduce their output, even if they remain viable. . . . **[R]<u>ivals whose variable costs increase would have the incentive immediately to raise their prices or reduce their output. As a result, the consumer harm would occur immediately</u>.** Thus, there is more likely to be consumer harm from RRC than from predatory pricing."

S. Salop, *Exclusionary Conduct, Effect on Consumers, and the Flawed Profit-Sacrifice Standard,* 73 Antitrust L. J 311, 316 (2006) ("*Salop on Exclusionary Conduct*") (emphasis added) (attached as Exhibit B to Appendix); *See also Apple Inc. v. Samsung Elecs. Co.,*

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

*Ltd.,* No. 11-01846, 2012 WL 1672493, at *4-6 (N.D. Cal. May 14, 2012) (holding that Apple sufficiently pled harm to competition as it alleged Samsung's non-FRAND licensing threatened to unlawfully exclude rivals from, and increase costs associated with, the downstream market).

With armfuls of patents they convinced the Federal Communications Commission ("FCC") to adopt as the U.S. standard for every television sold in this country,[1] Counter-Defendants are now engaged in a campaign to harm consumers and competition by setting an inflated price for their standard essential patents that is so high, even they have acknowledged the harm to consumers:

> [T]he royalty burden on the manufactures [sic] will eventually become the cost burden on the US consumers through the price of [digital televisions]... – which seems to be against the US Government policy of lessening the burden on the customers. On this point, we also question about ***a possible antitrust concern*** – can setting up a high royalty and transferring the cost burden to consumers through a patent pool to favor one essential patent holder ***constitute a patent abuse***?

Defendant Sceptre Corporation's First Amended Counterclaims [Dkt 62] ("FAC") ¶¶ 62 (emphasis added).

Counter-Defendants ask this Court to squelch the temerity of a small U.S. company that competes intensely on price with Plaintiffs (and/or their affiliates) for digital television sales, and has by its counterclaims challenged these admitted abuses.  Despite Counter-Defendants' suggestion that Sceptre lacks standing, has suffered no injury and has failed to plead cognizable claims, courts throughout the country have, with near uniformity, routinely denied motions to dismiss identical claims based upon highly similar facts.  As the Third Circuit has noted:

> [T]hat "private standard-setting by associations comprising firms with horizontal and vertical business relations is permitted at all under the antitrust laws [is] only on the understanding that it will be conducted in a nonpartisan manner offering procompetitive benefits," ... and in the presence of "meaningful safeguards" that "prevent the standard-setting process from being biased by members with economic interests in stifling product competition," .... As the Supreme Court acknowledged in *Allied Tube*, and as administrative tribunals, law enforcement

---

[1] For purposes of this Opposition, Sceptre accepts as true Counter-Defendants' assertions that their patents-in-suit are each standard essential patents to the ATSC Standard.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

authorities, and some courts have recognized, conduct that undermines the procompetitive benefits of private standard setting may, at least in *some circumstances*, be deemed anticompetitive under antitrust law. . . **Deception in a consensus-driven private standard-setting environment harms the competitive process by obscuring the costs of including proprietary technology in a standard and increasing the likelihood that patent rights will confer monopoly power on the patent holder.**

*Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297, 309-10, 314 (3rd Cir. 2007) (emphasis added) (citations omitted include *Allied Tube & Conduit Corp. v. Indian Head, Inc.*, 486 U.S. 492, 506-07 (1988)).

Sceptre's Counterclaims detail Counter-Defendants' unlawful conduct in: manipulating the process by which the standard setting organizations ("SSOs") adopted their technology as the government mandated U.S. standard for the receipt and transmission of digital television signals ("the ATSC Standard"); false promise to the SSOs that they would license their standard essential patents on terms that are fair, reasonable and non-discriminatory ("FRAND") so as not to harm consumers and competition in the downstream product market for television sets; breach of that commitment by intentionally setting a price for their standard essential patents that is intended to harm consumers, to whom the increased prices are passed and who suffer from reduced output, and thus choice; and restraint and elimination of competition in the market for televisions, including Counter-Defendants increased market share.

As set forth below, the legal doctrines on which the Counterclaims are premised are well established and the supporting facts well-pled. Accordingly, the Motion should be denied.

## II.   STATEMENT OF FACTS[2]

### A.   The FCC Adopted the ATSC Standard and Required FRAND Licensing Commitments From Counter-Defendants

To protect against unscrupulous conduct by any member who sought to benefit

---

[2] To avoid repetition, the "information and belief" language in the FAC is not repeated herein, but is instead incorporated by reference. For the same reason Sceptre at times refers to Counter-Defendants collectively herein rather than identify the precise Counter-Defendant(s) whose conduct is described in the FAC.

unfairly from, or to manipulate to its advantage, the ATSC standard-setting process, and to enable the ATSC and its members to develop standards free from potentially blocking patents, the ATSC instituted policies and rules requiring that members commit to negotiate licenses for standard essential patents on FRAND terms.  (FAC, ¶¶ 39-40.)  In adopting the ATSC Standard, the ATSC and the FCC relied upon express written commitments made by standard essential patent-holders — including Zenith, Panasonic and Philips, who had patents and/or patent applications pending with claims that they would later assert read on the ATSC standard — that they would not engage in patent hold up and would instead license their standard essential patents on FRAND terms. (FAC ¶¶42-46.)  By providing FRAND assurances, Zenith, Panasonic and Philips entered into an actual or implied contract for the benefit of any entity that implemented the ATSC standard, and are now irrevocably bound by, and estopped from denying, their commitments to offer licenses to their patents on FRAND terms.  (*Id.*, ¶ 45.)

### B.   ATSC Patent Pool Formation, and The Non-FRAND Royalty Rate.

The "patent pool" of claimed ATSC standard essential patents (the "ATSC Pool") consists of an arrangement between MPEG LA, as "Licensing Administrator," and patent owners, including Plaintiffs, whereby patent owners pool their patents and MPEG LA administers licenses of those patents to others who require access to the patents in order to sell devices that incorporate the ATSC Standard.  (*Id.*, ¶ 57.)  In or around December 2004, MPEG LA called for submissions of patents from patent owners that believed their patents could be essential to the ATSC standard.  (*Id.*, ¶ 61.)

As MPEG LA worked to recruit members of the ATSC Pool, the licensors and MPEG LA discussed a royalty rate of $5 per unit, regardless of device or market price.  (*Id.*, ¶ 61.)  ATSC Patent Pool licensors Samsung and Panasonic, and potentially others, objected to the $5 per unit royalty, claiming that the proposed royalty was too high, violated antitrust laws

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

4

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED  COUNTERCLAIMS

and favored Zenith's non-essential patents over the essential patents held by others.[3]  (*Id.*,
¶¶ 62-63.)  MPEG LA and Zenith refused to lower the royalty rate or modify the royalty split,
and instead negotiated financial "incentives" for the objectors to join the ATSC Pool, which
they accepted.  (*Id.*, ¶ 64.)  Although the retail price of digital televisions has dropped
significantly in the years since the excessive $5 per unit royalty rate for the ATSC Pool was
adopted, dozens of patents in the ATSC Pool has expired, and about half the patents in the
ATSC Pool are foreign patents that are not required to comply with the ATSC Standard in
the U.S., the royalty has remained constant.  (*Id.* ¶¶ 66, 70).  This has resulted in an
"extremely high ratio" of the royalty rate to the shrinking profits in digital televisions, which is
particularly problematic for lower price-tier television sellers, like Sceptre.  (*Id.*, ¶ 66.)[4]

### C.   Counter-Defendants Fail to Implement Safeguards Required by the DOJ to Ensure Patent Pools Do Not Violate the Antitrust Laws.

The U.S. Department of Justice ("DOJ") has expressed concern regarding the
"likelihood" that patent licensors could use the patent pool "as a vehicle to disadvantage
competitors in downstream product markets."  (*Id.*, ¶ 70 (quoting Letter from Joel I. Klein,
Acting Assistant Attorney General, Antitrust Division, Department of Justice, to Gerrard R.
Beeney, Esq. dated June 26, 1997 ("DOJ Business Review Letter")).)  The DOJ Business
Review letter, provided to MPEG LA for another patent pool, emphasize the importance of
using an "independent expert" to ensure that only "essential" patents are included in a patent
pool to reduce potential anti-competitive behavior.  (*Id.*, ¶ 67-68.)  Although MPEG LA has
retained Proskauer Rose, LLP ("Proskauer") to review some patents in the ATSC Pool,
Proskauer is not "independent," as Proskauer also serves as trial counsel to Counter-

---

[3] Zenith had faced objections to the reasonableness of a $5 per unit royalty for ATSC standard patents in connection with negotiations for Zenith's digital vestigial sideband ("VSB") technology.. Several television manufacturers, including, *inter alia*, Samsung, Panasonic, and Philips, complained to Zenith that its $5 per unit royalty rate was too high, and Panasonic advised Zenith that the high price would cause some manufacturers to lose competitiveness in the market. (*Id.*, ¶¶ 52.b, 52.d.)

[4] Counter-Ds tout the "120 licensees" of the ATSC Pool as evidence of its success.  In fact, this number is grossly inflated as it includes the licensors themselves, as well as numerous duplicate entities/ affiliates.  *See* http://www.mpegla.com/main/programs/ATSC/Pages/Licensees.aspx.

Defendants in this and other infringement actions in connection with the ATSC Standard and others.  (*Id.*, ¶ 69.)  Moreover, as expressly confirmed by Panasonic and fellow ATSC Pool licensor Samsung, not every patent in the ATSC Pool is essential to the mandatory portions of the ATSC Standard.  (*Id.*, ¶¶ 62, 70.)

> **D.    Plaintiffs and MPEG LA Fail to Abide by Their FRAND Obligations and Intentionally Injure Sceptre.**

From at least 2007, Plaintiffs and/or their affiliates have competed with Sceptre in selling digital televisions throughout the United States, including this State.  (*Id.*, ¶ 71.) [5] MPEG LA demanded that Sceptre enter into a license agreement for the ATSC Pool, and Sceptre attempted to negotiate such a license on FRAND terms, informing MPEG LA that the royalty sought was unfair and unreasonable given Sceptre's size, market position and practice of competing on lower prices..  (*Id.*, ¶¶ 72-73.)  MPEG LA also demanded that Sceptre pay back royalties on products for which royalties have already been paid.  (*Id.* ¶¶ 74-77.)

In or around summer of 2012, Plaintiffs and/or MPEG LA sent letters to some of Sceptre's most important customers (including Costco and Target) stating that Sceptre was infringing their patents, expressly intending that those customers stop doing business with Sceptre.  (*Id.*, ¶¶ 80-81.)  As intended, neither Costco nor Target has done business with Sceptre since.  (*Id.*, ¶ 82-85.)

> **E.    Monopoly Power in the Upstream Technology Market.**

The relevant market in this case is the upstream market for the technology embodied in the ATSC Standard.  (*Id.*, ¶ 88.)  As owners of technology patents that are claimed to be essential to practice the ATSC standard, Plaintiffs (along with other ATSC essential patent owners) each have unquestioned monopoly power in the relevant technology market, including the power to control prices and exclude competition, or to block or "hold up" the ability of another to use the ATSC Standard.  (*Id.*, ¶¶ 90-91.)  Because Counter-Defendants

---

[5] Zenith is a wholly-owned subsidiary of LG Electronics Inc. ("LG"), which holds a major share of the digital TV market (*Id.*, ¶¶ 6, 98(a)), and Philips only recently stopped selling digital televisions and continues to license its brand to a third party. (*Id.*, ¶¶ 8, 98(b).)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

6

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

have refused to abide by their FRAND obligations, their monopoly is illegal and exists by virtue of their continuing anticompetitive conduct. (*Id.*, ¶ 92-93.)

**F.**   **The Effect of the Anticompetitive Conduct Upon the Downstream Product Market**.

The excessive ATSC royalty rates raise costs, and thus prices, which are impermissibly passed on to consumers, and restricts output, which reduces or eliminates competition in the downstream product market. (*Id.*, ¶ 97.) In fact, Counter-Defendants' anticompetitive conduct in the upstream technology market has caused a reduction in the number of television manufacturers in the downstream product market, and has increased market share for certain of the licensors in the ATSC Patent Pool, including LG. (*Id.*, ¶¶ 98, 109.) ATSC licensors can mitigate their own costs by entering into technology cross-licensing agreements, all the while increasing the costs for rivals like Sceptre, at the expense of consumers and competition. (*Id.*, ¶¶99-100.)

In addition, Sceptre has suffered injury as a result of Counter-Defendants' conduct. Plaintiffs Zenith (through its parent LG), Phillips (as licensor of its brand) and Panasonic are or were horizontal competitors in the downstream product market for all television sets sold in the United States after 1996 which utilize the ATSC Standard. (*Id.*, ¶¶79, 95-96.) By conspiring to fix prices and refusing to license on FRAND terms, Counter-Defendants are restraining and eliminating competition from lower price-tier television sellers like Sceptre. (*Id.*, ¶¶96-98.) Sceptre has reduced its output and sales of products in the downstream product market in response to the filing of this action, which has resulted in lost profits and lost opportunities. (*Id.*, ¶110.) In addition, Sceptre has incurred substantial costs in defending this action, and faces the prospect of being forced to defend additional lawsuits by the same Plaintiffs and/or other ATSC licensors. (*Id.*, ¶ 112.)

**III.**   **THE COUNTERCLAIMS ASSERT WELL ESTABLISHED LEGAL THEORIES**

**A.**   **Dismissals Are Routinely Denied in Standard Essential Patent Cases Involving FRAND Violations**

Sceptre's Counterclaims are similar to claims asserted in cases throughout the

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

7

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

1   country in which motions to dismiss were not only denied, but judgments and verdicts

2   entered against the patent owners.

3        (a)     <u>Section 2 of the Sherman Act</u> – In denying motions to dismiss Section 2

4   claims, courts have consistently held that unlawful acquisition of monopoly power in the

5   relevant "technology" market obtained through false promises to a SSO constitutes

6   actionable anticompetitive conduct under Section 2 of the Sherman Act.  *See Apple Inc. v.*

7   *Samsung Elecs. Co., Ltd., supra,* 2012 WL 1672493 at *7-8; *Broadcom Corp. v. Qualcomm*

8   *Incorporated*, 501 F.3d 297, 314-15 (3rd Cir. 2007) (finding that Broadcom stated a Sherman

9   Act § 2 claim based on deceptive FRAND assurances to SSO); *Research in Motion Ltd. v.*

10  *Motorola, Inc.*, 644 F. Supp. 2d 788, 793-97 (N.D. Tex. 2008) (denying motion to dismiss

11  allegations that exorbitant royalty rates in the technology market would force competitors in

12  the downstream product market to increase prices and thereby harm competition).

13       (b)     <u>Section 1 of the Sherman Act</u> – The court denied a motion to dismiss a claim

14  for violation of Section 1 of the Sherman Act based upon similar facts also involving ATSC

15  Standard essential patents, as it found that an agreement to fix the royalty for ATSC

16  Standard essential patents at an excessive rate and refusal to license patents on FRAND

17  terms are inherently anticompetitive and illegal.  *Vizio Inc. v. Funai Elec. Co. Ltd.*, No. 09-

18  0174, 2010 WL 7762624 *3, *6 (C.D. Cal. Feb. 3, 2010).

19       (c)     <u>Breach of Contract and Promissory Estoppel</u> – Motions to dismiss breach of

20  contract and promissory estoppel claims for breach of the standard essential patent owners'

21  FRAND commitments have been denied *by nearly every court to have considered the*

22  *issue*.[6]  See *Microsoft v. Motorola*, No. 10-1823, 2011 WL 11480223, at *4 (W.D. Wash.

23  June 1, 2011) (finding that Microsoft stated claims for breach of contract and promissory

24  estoppel based on nearly identical allegations of FRAND promises); *In re Innovatio IP*

25  *Ventures, LLC Patent Litig.*, 921 F. Supp. 2d 903, 923-25 (N.D. Ill. Feb. 4, 2013) (denying

26  motion to dismiss breach of contract and  promissory estoppel claims brought by third party

27

28  [6] Sceptre has located no cases to the contrary, and Counter-Defendants have cited none.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

8

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

suing patent holder for failing to fulfill its FRAND commitments); *Research in Motion*, 644 F. Supp. 2d at 797 (contract and promissory estoppel claim adequately pled based on breach of FRAND promises); *see also Barnes & Noble, Inc. v. LSI Corp.*, 849 F. Supp. 2d 925, 939-40 (N.D. Cal. 2012) (reliance of SSO on FRAND assurances adequately pled).

(d)     <u>Unfair Competition</u> – Motions to dismiss claims asserted under Section 17200 of the Cal. Bus. & Prof. Code have been uniformly rejected based upon similar facts.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, *supra,* 2012 WL 1672493, at *8 ("Because Apple has adequately alleged a violation of Section 2 of the Sherman Act, Apple has also stated a claim that Samsung's conduct violates the California UCL."); *Apple, Inc. v. Motorola Mobility, Inc.*, No. 11-178, 2011 WL 7324582, at *14 (W.D. Wisc. June 7, 2011) (same).

**B.     <u>Non-FRAND Verdicts Have Been Entered With Increasing Frequency Against Patent Owners</u>**

Courts and juries within the Ninth Circuit and others are entering judgments and verdicts against patent owners for violation of their FRAND commitments with increasing frequency.  *See*, *e.g.*, *Microsoft v. Motorola*, 871 F. Supp. 2d 1089 (W.D. Wash. May 14, 2012) (granting anti-suit injunction based on failure to offer licenses on FRAND terms); *Realtek Semiconductor Corp. v. LSI Corp.*, N.D. Cal. Case No. 5:12-cv-03451-RMW, Dkt. no. 324 (Feb. 26, 2014) (jury verdict against patent owners for breach of FRAND obligations); *Fujitsu v. Tellabs*, N.D. Ill. Case No. 1:09-cv-04530, Dkt. no. 1421 (July 23, 2014) (jury verdict in favor of Defendant on FRAND counterclaims).

In denying motions to dismiss these same claims asserted by Sceptre, and entering judgments and verdicts upon them, these courts have either expressly or implicitly rejected the arguments advanced by Counter-Defendants in their Motion.

**IV.     <u>SCEPTRE HAS STANDING TO ASSERT ITS CLAIMS</u>**

**A.     <u>Sceptre Has Article III Standing As To All Claims</u>**

To establish Article III standing, "[t]he plaintiff must have suffered or be imminently threatened with a concrete and particularized 'injury in fact' that is fairly traceable to the challenged action of the defendant and likely to be redressed by a favorable judicial

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

9

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED  COUNTERCLAIMS

1    decision." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct.

2    1377, 1386 (2014); *Already, LLC v. Nike, Inc.*, __ U.S. __, 133 S. Ct. 721, 727 (2013)

3    (defendant had standing to assert counterclaim of trademark invalidity "because [Plaintiff]

4    was allegedly pressing an invalid trademark to halt [defendant's] legitimate business

5    activity") (citing *MedImmune v. Genentech, Inc.*, 549 U.S. 118, 126–37 (2007) ("a genuine

6    threat of enforcement of intellectual property rights that inhibits commercial activity may

7    support standing")); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1057 (9th Cir.

8    2008) ("The threat of litigation is a cognizable injury for standing purposes"); *Societe de*

9    *Conditionnement en Aluminium v. Hunter Eng'g Co., Inc.*, 655 F.2d 938, 944 (9th Cir. 1981)

10    (case or controversy requirement satisfied "if the plaintiff has a real and reasonable

11    apprehension that he will be subject to liability if he continues to manufacture his product,"

12    where "the plaintiff is engaged in the on-going manufacture of the alleged patented item").

13         Counter-Defendants' assertion that Sceptre has failed to satisfy the "case or

14    controversy" requirements of Article III is factually incorrect and legally unsound.

15         First, COUNTER-DEFENDANT's insistence that Sceptre lacks standing because it

16    has not sought a license from them is demonstrably false by their own judicial admission,

17    which they are estopped to deny.  *See Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224

18    226 (9th Cir. 1988).  Counter-Defendants assert that Sceptre has no standing because it had

19    no contact with them regarding a license.  *See Mot. 8:10-12; 8:16-18.*  These statements are

20    false, by their own admission:

21            27.    **MPEG LA offered the ATSC pool license to Sceptre** but

22    Sceptre has declined to take the license.

23            28.    **Plaintiffs gave written notice to Sceptre of its infringement.**

24    For example, among other things, **MPEG LA, on behalf of each Plaintiff,**

25    **gave written notice to Sceptre of its infringement.**

26    Complaint ¶¶ 27-8 (emphasis supplied)*; see also* FAC ¶¶ 72-74.[7]  Counter-Defendants

27

28

_____

[7] All facts asserted in the FAC must be accepted as true for purposes of this Motion.  *See,*
*e.g., Cahill v. Liberty Mutual Ins. Co.,* 80 F.3d 336, 337-38 (9th Cir. 1996).

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

10

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

represent to this Court that there have been no communications with Sceptre regarding a license, while at the same time they expressly rely upon communications between Sceptre and MPEG LA regarding an ATSC Pool license to claim Sceptre had notice of their patent claims in this action.  Thus, by their argument and their admission, Counter-Defendants have conceded Sceptre has Article III standing.

Second, Counter-Defendants argue that Sceptre lacks Article III standing because it "is not required to accept MPEG LA's *optional* ATSC Pool License."  Mot. 8:18-19.  Counter-Defendants' argument is not only inconsistent with their prior demands that Sceptre license the entire pool (as they have themselves pled), but their insistence that the ATSC Pool license is "optional" and Sceptre may instead negotiate 300 (or 150) separate licenses for each of the patents in the ATSC Pool is illogical, contradicted by the facts, economic and practical realities, and legally unsupported.

Finally, even if it were true that Sceptre and Counter-Defendants had not discussed a license, Counter-Defendants have cited no authority for the proposition that Sceptre must have sought a license in order to have Article III standing to contest the validity of a standard essential patent license.  *See, supra, Broadcom*, 501 F.3d at 304 (entertaining antitrust claims where claimant had not obtained a license prior to filing suit); *Apple*, 2011 WL 4948567, at *1-2 (entertaining antitrust counterclaims based on FRAND violations in infringement lawsuit despite counterclaimant's failure to obtain a license).

### B.   Sceptre Has Antitrust Standing As To Its Section 1 and Section 2 Claims[8]

Counter-Defendants concede Sceptre has satisfied all requirements for antitrust standing other than antitrust injury.  (Mot. 8-12.)  The Ninth Circuit has identified four requirements for antitrust injury: (1) unlawful conduct, (2) causing injury to plaintiff, (3) that flows from that which makes the conduct unlawful, and (4) that is of the type the antitrust

---

[8] Sceptre seeks damages under Section 4 and injunctive relief under Section 16 of the Clayton Act. Section 4 provides a treble-damages remedy to "[a]ny person who [is] injured in his [or her] business or property by reasons of anything forbidden in the antitrust laws . . ." 15 U.S.C. § 15. Section 16 provides injunctive relief to anyone "threatened [with] loss or damage by a violation of the antitrust laws." *Id.* at § 26.

laws were intended to prevent.  *Am. Ad Mgmt., Inc. v. Gen. Tel. Co. of Cal.*, 190 F.3d 1051, 1055 (9th Cir. 1055).  A plaintiff sufficiently pleads antitrust injury, and a motion to dismiss is properly denied, where it asserts that defendant's failure to license standard essential patents on FRAND terms excludes rivals from, and increases royalties and other costs in, the downstream market.  *See*, *e.g., Apple v. Samsung Electronics Co., Ltd.*, 2011 WL 4948567 at *6;  *Research in Motion v. Motorola, Inc., supra,* 644 F.Supp.2d at 793.

### 1.   **Sceptre Has Standing For Its Sherman Act §1 Claim**

Counter-Defendants argue that Sceptre lacks standing because competitors cannot suffer an antitrust injury from a conspiracy to raise prices.  (Mot. 9:8-10:17.)  Counter-Defendants miss the point.[9]

First, Sceptre has alleged that the conspiracy to raise prices has occurred in the relevant technology market, <u>not</u> in the downstream product market in which Sceptre and Plaintiffs compete.  [FAC ¶¶ 88, 114-15, 117, 121, 125-26, 128-30.]  The <u>effect</u> of Counter-Defendants' anti-competitive conduct is higher costs for an essential input for competitors in the downstream product market, thus raising those competitors' costs.  *See id.*  As a competitor, Sceptre was and is the direct target of the royalty-fixing agreement and was injured by it.  *See Am. Ad Mgmt., Inc., supra,* 190 F.3d at 1056.  The cases cited by Counter-Defendants are inapposite as they involve price fixing which held a price "umbrella" over competitors in the same product market, whereas Sceptre has alleged price fixing for an essential input.[10]

---

[9] *American Ad* made clear that Section 4 of the Clayton Act "does not confine its protections to consumers, or to purchasers, or to competitors, or to sellers. . . . The Act is comprehensive in its terms and coverage, protecting all who are made victims of the forbidden practices by whomever they may be perpetrated."  *American Ad*, 190 F.3d at 1051 (quoting *McCready*, 457 U.S. at 539).

[10] *See, e.g., Matsushita Elec. Indus.Co. v. Zenith Radio Corp.*, 475 U.S. 574, 582–83 (1986) (no antitrust injury based on price-fixing in the same market in which plaintiff and defendant were competitors); *Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 336-38 (1990) (same); *City of Moundridge v. Exxon Mobil Corp.*, 471 F. Supp. 2d 20, 30 (D.D.C. 2007) (same); *Coalition for Icann Transparency Inc. v. Verisign, Inc.*, 464 F. Supp. 2d 948, 962 n.10 (N.D. Cal. 2006) (increase in price caps or removal of price controls, *alone*, is insufficient to establish antitrust injury); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1477-78 (9th Cir. 1997) (price increase insufficient to establish anticompetitive conduct *in relevant market*), *overruled on other grounds by Lacey v. Maricopa Cnty.*, 693 F.3d 896, 927-28 (9th

Second, COUNTER-DEFENDANT's argument ignores the price discrimination allegations in the FAC, in which Sceptre has pled that Counter-Defendants and other licensors enjoy favored status as they do not pay the same effective royalty for the products in the downstream product market since they are able to "horse-trade" for their patents and thus offset their own costs, while at the same time using the non-FRAND royalties to increase the costs of rivals such as Sceptre.[11]  [FAC 99-100.]  Thus, COUNTER-DEFENDANT's are able to reduce their own costs while increasing those of Sceptre and others, who must add the cost of the non-FRAND royalty while others need not.  The anticompetitive conduct of raising rivals' costs constitutes antitrust injury and harms competition by restricting the output of televisions in the United States.  *See generally Salop on Exclusionary Conduct, supra,* 73 Antitrust L.J. at 311-16 (attached as Exhibit B to Appendix.[12]

Finally, Counter-Defendants' argument that Sceptre has suffered no antitrust injury because it has can choose to reduce prices by not paying the royalty is negated by the very existence of this lawsuit, by which COUNTER-DEFENDANT's are demanding that Sceptre pay the very license fee they claim Sceptre can simply withhold to "undercut" its competitors' pricing.  [Mot. 10-12.]  The illogic of this circuitous argument is self-evident.

## 2. **Sceptre Has Standing For Its Sherman Act §2 Claims**

Counter-Defendants offer a number of factually inapplicable and legally

---

Cir. 2012); *Rambus Inc. v. FTC*, 522 F.3d 456, 466 (D.C. Cir. 2008) ("lawful monopolist's use of deception simply to obtain higher prices normally has no particular tendency *to exclude rivals* and thus to diminish competition").

[11] Counter-Defendants' argument also assumes a fact that has not been pled and is contrary to the FAC: all competitors are actually paying the same royalty. (Motion 11:6, 12-13). In fact, Sceptre has alleged that all licensors are <u>not</u> paying the same effective royalty rate, as some were given "incentives" to join the licensors (which lowered their net royalty), and many are able to cross-license their technology patents, negating or off-setting royalties. (FAC ¶¶ 54-56, 99).

[12] Under the doctrine of raising rivals' costs, increasing the marginal costs of a low-cost producer such as Sceptre will force it to raise prices, leading to lower sales and reduced output.  This incentivizes competitors such as Plaintiffs to set a high price to license their technology, and thus increase Sceptre's marginal costs, because any reduction in the intensity of competition in the downstream product market is to their benefit.  *See id.*

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

13

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

distinguishable arguments that Sceptre lacks standing for its Section 2 claims.

First, the Supreme Court has rejected any requirement that an antitrust plaintiff must show actual exclusion from the market to establish standing. *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 528 (1983) ("An agreement to restrain trade may be unlawful even though it does not entirely exclude its victims from the market."); *see also Xerox Corp. v. Media Scis. Int'l, Inc.*, 511 F. Supp. 2d 372, 381 (S.D.N.Y. 2007) ("[counter-claimant] need not wait to make this claim until it is 'actually driven from the market and competition is thereby lessened'") (quoting *Brunswick Corp.*, 429 U.S. at 489 n.14).[13]

Second, Counter-Defendants are incorrect in arguing that because Sceptre has not paid the non-FRAND $5.00 royalty, it does not have antitrust injury, as the threat of being forced to pay supra-competitive royalties constitutes antitrust injury. *See Apple, Inc. v. Motorola Mobility*, 2011 WL 7324582, *14 (W.D.Wisc. June 7, 2011); *Research in Motion*, 644 F. Supp. 2d at 791, 793-96; *see also Blue Cross & Blue Shield United of Wisc. v. Marshfield Clinic*, 152 F.3d 588, 591 (7th Cir. 1988).

Third, Counter-Defendants' argument ignores that Sceptre has alleged conduct which establishes antitrust injury, including: (a) lost profits and opportunities, including decreased output and lost sales; (*see*, *e.g.*, *Red Lion Med. Safety, Inc. v. Ohmeda, Inc.*, 63 F. Supp. 2d 1218, 1235 (E.D. Cal. 1999) (lost profits due to anticompetitive conduct sufficient to claim antitrust injury); *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 11-3613, 2012 WL 2711040, at *7 (N.D. Cal. July 6, 2012) (antitrust injury includes "lost revenues, lost profits and market share, and stifling of product innovation"); (b) the cost of defending this (and possibly other) patent infringement suits (even if not frivolous) (*see Motorola Mobility*, 2011 WL 7324582, at *14 (expense of defending multiple lawsuits by Motorola is antitrust injury); *Xerox*, 511 F. Supp. at 381-82; *Rickards v. Canine Eye Registrations Foundation*, 783 F.2d

---

[13] The cases cited by Counter-Defendants do not support their position as they do not hold or suggest that antitrust injury requires a showing of actual exclusion from the market. Mot. 10:22-11:2.

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

1329, 1335-36 (9th Cir. 1986); *Carter v. Variflex*, 101 F. Supp. 2d 1261, 1270 (C.D. Cal. 2000).[14]

Finally, Counter-Defendants' insistence that they are within their rights to collect a royalty as "inventors" misses the mark.  While royalties may indeed be a "cost of doing business" (Mot. 12:9-10), non-FRAND royalties -- set at *admittedly* exorbitant rates that are *admittedly* intended to harm competition (*see* FAC ¶ 62), for standard essentials patents -- are not.

## V.   THE STATUTE OF LIMITATIONS HAS NOT EXPIRED ON THE COUNTERCLAIMS

### A.   Sceptre's Antitrust and Section 17200 Claims Are Not Time-Barred.

It is well-settled that parties may pursue recovery of damages from overt acts proven to be in furtherance of a continuing antitrust violation which occurred within the limitations period.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971); *Hennegan v. Pacifico Creative Serv., Inc.*, 787 F.2d 1299, 1301 (9th Cir. 1986).  "A continuing violation is one in which the plaintiff's interests are repeatedly invaded and a cause of action arises each time the plaintiff is injured."  *Pace Indus., Inc. v. Three Phx. Co.*, 813 F.2d 234 (9th Cir. 1987) ("the last overt act in the [antitrust violation] was the initiation of the lawsuit;" dismissal affirmed as claims filed more than four years later); *see also Hanover Shoe, Inc. v. United Show Machinery Corp.*, 392 U.S. 481, 502, n.15 (1968).  Thus, where the plaintiff alleges a "'continuing violation,' [such as] a price-fixing conspiracy..., each overt act that is part of the violation and that injures the plaintiff starts the statutory period running again, regardless of the plaintiff's knowledge of the alleged illegality at much earlier times." *Klehr v. AO. Smith Corp.*, 521 U.S. 179, 189 (1997) (citations omitted); *see also Twin City Sportservice, Inc. v. Charles O. Finley & Co.*, 512 F.2d 1264, 1270 (9th Cir. 1975) (violation

---

[14] Counter-Defendants' reliance on *Vizio, Inc. v. Funai Elec. Co.*, No. CV 09-0174 (AHM (RCx), 2010 WL 776264, at *5 (C.D.Cal. Feb. 3. 2010) is misplaced, as the patent owner itself made no FRAND commitments and was not involved in the standard setting process. *See also Nobelpharma AB v. Implant Innocations, INc.*, 141 F.3d 1059 (Fed. Cir. 1998) (involving claim that patent holder violated antitrust laws by bringing infringement suit on individual patent allegedly procured by fraud, but with no FRAND commitments or involvement with standard setting process).

1  was continuing though agreement last modified 19 years earlier, as "[t]o hold otherwise is to

2  say that some damage that might have been sustained was barred before it accrued")

3  (citation omitted).

4       The above authorities establish that Sceptre's Section 1, Section 2 and Section

5  17200 Counterclaims are timely as they allege continuing antitrust violation, the last overt act

6  of which was the filing of the present lawsuit.  *See*, *e.g.*, FAC ¶¶ 93, 147, 153; *See Pace*

7  *Indus.*, *Inc.*, 813 F.2d at 239.

8       **B.**    <u>Sceptre's State Claims Are Not Time-Barred</u>

9       Under California law, a claim only accrues "at the time when the cause of action is

10  complete with all of its elements."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 806

11  (2005); *McCaskey v. California State Auto. Assn.*, 189 Cal. App. 4th 947, 959 (2010); *U.S.*

12  *Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 901 (2005).[15]  Sceptre's breach of contract

13  and promissory estoppel claims arose when Counter-Defendants filed this action and sought

14  to enforce their alleged standard essential patents against Sceptre, which caused injury/

15  damage to Sceptre.  Accordingly, Sceptre's state law claims are not time-barred.

16  **VI.**    <u>SCEPTRE HAS STATED VALID CLAIMS FOR RELIEF</u>

17       **A.**    <u>The Sherman Act §2 Monopolization Claim States a Valid Claim for Relief</u>

18       "The offense of monopoly under § 2 of the Sherman Act has two elements: (1) the

19  possession of monopoly power in the relevant market, and (2) the willful acquisition or

20  maintenance of that power as distinguished from growth or development as a consequence

21  of superior product, business acumen, or historical accident."  *United States v. Grinnell*

22  *Corp.,* 384 U.S. 563, 570-1 (1966).

23       **1.**    <u>Sceptre Does Not Plead "Monopoly Leveraging"</u>

24       Monopoly leveraging involves the use of a monopolist's lawful monopoly in one

25

26  [15] Moreover, "The California Supreme Court has [] suggested that promissory estoppel claims would not be barred by the statute of limitations" as promissory estoppel is an equitable doctrine.  *See C&K Eng. Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 6, 8-9

27  (1978); *Barroso v. Ocwen Loan Servicing, LLC*, 208 Cal. App. 4th 1001, 1016 (2012); *Caceres v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 184605 at *22, n.7 (C.D. Cal., Oct. 28,

28  2013)

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

16

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

market to obtain, or attempt to attain, a monopoly in another market.  *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 547 (9th Cir. 1991).  In *Alaska Airlines*, The Ninth Circuit rejected the claim that American Airlines was guilty of attempted monopolization in the air transportation market by "leveraging" its lawfully obtained monopoly power in the computerized reservations systems market.  The Court held that a monopolist's use of a lawful monopoly in one market to gain a competitive advantage in the second market is not a violation of Section 2 absent a showing that the monopolist used its power in the first market to acquire or attempt to acquire a monopoly in the second market.  *Alaska Airlines*, 948 F.2d at 548.  In so holding, the Court distinguished between monopolies which are lawful and those acquired through anticompetitive or predatory conduct, which are not.  *Id*. at 549.[16]

The monopoly leveraging doctrine is inapplicable to the facts asserted in the FAC for two reasons.  First, contrary to Counter-Defendants' suggestion, Sceptre has not alleged that Counter-Defendants have monopoly power or are attempting to acquire such power in the downstream product market; rather, Scepter asserts that the monopoly power Counter-Defendants possess in the upstream technology market has caused intended *effects* in the downstream product market, such as an increase in costs, decreased product output, reduction in the number of competitors (and thus consumer choice), and increased prices passed on to consumers.  (FAC, ¶¶ 88, 114-15, 117, 121, 125-26, 128-30.)

Second, as the doctrine of monopoly leveraging applies only in the case of lawful acquisition of monopoly power in the first market, it is inapplicable in this case as Plaintiffs' acquisition of monopoly power in the upstream technology market was unlawful.  (*See, e.g.,* FAC ¶¶ 92-93.)  *See Am. Airlines, supra,* 948 F.2d at 548; *see also Broadcom Corp*, 501 F.3d at 314; *Research in Motion*, 644 F.Supp.2d at 796-97; *Apple*, 2012 WL 1672493, *4.

---

[16] The two other cases cited by Counter-Defendants do not support their position either. *Garon v. eBay, Inc.*, 2011 WL 6329089 (N.D.Cal. Nov.30, 2011), did not involve monopoly leveraging and is factually distinguishable. And, in *Verizon Communications Inc. v. Trinko*, 540 U.S. 398, 415 n. 4 (2004), the Supreme Court stated that monopoly leveraging presupposes anticompetitive conduct and that, to the extent the Court of Appeals dispensed of the requirement that there be a dangerous probability of success in monopolizing a second market, it erred.

1  Thus, Sceptre has not asserted a "monopoly leveraging" claim, but a claim for

2  violation of Section 2 of the Sherman Act, which has been affirmed as a valid claim for relief

3  based on similar facts.  *See, e.g., Broadcom, supra.*

4  2.  **Sceptre Has Sufficiently Alleged Monopoly Power**

5  Monopoly power is defined as "the power to control prices or exclude competition."

6  *United States v. E.I. de Pont de Nemours & Co.,* 351 U.S. 377, 391 (1956).  "A standard, by

7  definition, eliminates alternative technologies," thus conferring monopoly power upon those

8  who own patents that read on the standard.  *See Broadcom Corp.,* 501 F.3d at 314-315;

9  *Apple,* 2012 WL 1672493, at *1-2; *Research in Motion,* 644 F.Supp.2d at 792-794.

10  The sole basis for Counter-Defendants' argument that they do not possess monopoly

11  power is that because their patents in suit are also available bundled with hundreds of other

12  patents in the ATSC patent pool, their monopoly power "is undercut by the availability of the

13  alternative source of those patents – the ATSC Pool License." (Mot. 16:1-2).   This

14  argument fails for several reasons.

15  First, Counter-Defendants ignore the fact that each and every standard essential

16  patent carries monopoly power, as it has the power to block all use of the federally

17  mandated ATSC Standard.  *See* FAC ¶ 90-91; *see also Broadcom, supra* 501 F.3d at 315.

18  Counter-Defendants can't have it both ways: either their patents are standard essential, in

19  which case they have monopoly power over the technology market for the ATSC Standard

20  because the patents *must* be used in order to comply with FCC regulations; alternatively,

21  their patents are not essential to the ATSC Standard, and television manufacturers are not

22  required to use their patents and may instead use alternatives.  Counter-Defendants have

23  admitted their patents are standard essential, and thus, their monopoly power.  (Mot. 5:1-2.)

24  Second, Counter-Defendants may not escape their monopolist status simply by

25  offering to also license those same patents both individually and bundled.  The suggestion

26  that Sceptre may negotiate independent licenses to each of the 300 patents in the ATSC

27  patent pool as an "alternative" to licensing the ATSC pool as a whole is a self-evident fiction

28  that it is impractical and economically unfeasible.  Indeed, Counter-Defendants offer no legal

MANATT, PHELPS & PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

18

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

1  support for these wholly illogical propositions.[17]

2        Third, the DOJ Business Review Letter related to the MPEG-2 Patent Pool does not

3  negate Counter-Defendants' monopoly power here.  While the DOJ acknowledged that a

4  different patent pool employed an "independent patent expert" to minimize the anti-

5  competitive dangers of the pool, the ATSC patent pool does not employ an "independent"

6  expert, and the ATSC pool has not been reviewed by the DOJ.  (FAC, ¶¶ 68-69.)   *See supra*

7  Section II.  *See Allied Tube & Conduit Corp., supra,* 486 U.S. at 500-01.  Thus, the DOJ

8  Business Review Letter strongly suggests anticompetitive conduct here. [18]

9        Finally, the legally and factually unsupported suggestion that the ATSC Pool "may

10  have lowered prices" (emphasis omitted) must be disregarded as outside, and contradicted

11  by, the FAC.

12   **B.    The Sherman Act §2 Conspiracy to Monopolize Claim States a Valid
         Claim for Relief**

13
        Plaintiffs contend that Sceptre's conspiracy to monopolize claim under Section 2 of the

14  Sherman Act must allege a conspiracy to empower a single entity with monopoly power, not a

15  conspiracy to achieve joint monopoly.  (Mot. 16:14-17:20.)  The Supreme Court has rejected this

16  assertion.

17        In *American Tobacco Co. v. United States,* 328 U.S. 781 (1946), the Court affirmed a

18  conviction for conspiracy to monopolize under Section 2 against the "Big Three" of the tobacco

19  industry despite the fact that no one defendant possessed monopoly power on its own, but only

20  when the market shares of all three defendants were aggregated.  *Id.,* 328 U.S. at 793, 794-95.

21  The Court held:

22

23  _____

[17] Counter-Defendants rely upon the dissenting opinion (which they do not disclose as such)
24  in *Broadcast Music, Inc. v. Columbia Broad Sys., Inc.,* 441 U.S. 1, 29 (1979), which is not
    the opinion of the Court and therefore has no precedential value.  Regardless, the opinion
25  discussed only blanket copyright licenses; it did not involve patent pool licenses or standard
    essential patents and is otherwise factually distinguishable.

26  [18] As the DOJ has warned, patent pools "can restrict competition, whether among intellectual
    property rights within the pool or downstream products incorporating the pooled patent," and
27  there is a "likelihood" that patent pool licensors will use the pool "as a vehicle to
    disadvantage competitors in downstream product markets" absent use of an independent
28  expert to ensure that only essential patents are included in the pool.  [FAC ¶67.]

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

19

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

A correct interpretation of the statute and of the authorities makes it the crime of monopolizing, under § 2 of the Sherman Act, for **_parties, as in these cases, to combine or conspire to acquire or maintain the power_** to exclude competitors from any part of the trade or commerce among the several states or with foreign nations, provided they also have such a power that they are able, **_as a group_**, to exclude actual or potential competition from the field and provided that they have the intent and purpose to exercise that power.

*Id.* at 809 (emphasis added).

Similarly, in *United States v. American Airlines,* 743 F.2d 1114 (5th Cir. 1984), *cert. dismissed,* 474 U.S. 1001 (1985), the Fifth Circuit, relying upon *American Tobacco,* held that American Airlines and its CEO could be held liable for attempted monopolization of the Dallas-Fort Worth air hub by proposing to Braniff's CEO that they raise prices and exclude Delta.   The court held: "[W]e conclude that if Putnam had accepted Crandall's offer, the two airlines, at the moment of acceptance, would have acquired monopoly power.  At that same moment, the offense of <u>joint monopolization</u> would have been complete."  *Id.,* 743 F.2d at 1118 (emphasis added); *see also* Hovenkamp, *Federal Antitrust Policy* 311 (4th ed 2011) (commenting on the case: "[A]s the court properly pointed out, **_a successful cartel acts as a single entity and controls the market, thus 'monopolizing' it in the truest sense of the word_**") (emphasis added); *see also* ABA Section of Antitrust Law, *Model Jury Instructions in Civil Antitrust Cases,* C100-109 (ABA Publishing 2005 ed.)(attached as Ex. A to Appendix).[19]

While Counter-Defendants cite two district court cases for the proposition that conspiracy to monopolize can only involve a "single entity," neither case cites *American Tobacco.*  As the Supreme Court's decision controls, and as the above authorities support, these cases are contrary

_____

[19] *See, e.g.,* C-105 Instr. 4 *Specific Intent* "If you determine that there was an agreement **among defendants** to monopolize..., you must then decide, as to each defendant, whether plaintiff has proven that the defendant has specifically intended that the members of the conspiracy would acquire or maintain monopoly power;" C-106-7 "In determining whether each defendant has a specific intent to monopolize, you should take into consideration . . . whether they had or probably could have acquired sufficient power **acting together as a group,** to control prices in and to exclude competition. . . ."; Notes C-108 "This instruction contemplates the situation in which **horizontal competitors conspire to monopolize**") (emphasis added).

SCEPTRE'S OPPOSITION TO MOTION TO DISMISS SCEPTRE'S FIRST THROUGH SIXTH AMENDED  COUNTERCLAIMS

1   to binding precedent on this point.  *See State Oil Co. v. Khan,* 522 U.S. 3, 20 ("[I]t is this Court's

2   prerogative alone to overrule one of its precedents").

3       **C.**     **The Sherman Act §1 Claim States a Valid Claim for Relief**

4           The Supreme Court held years ago that "joint ventures have no immunity from the

5   antitrust laws."  *NCAA v. Board of Regents*, 468 U.S. at 113 (holding that the price setting

6   and output restrictions imposed by that joint venture violated Section 1); *see also Allied*

7   *Tube*, 486 U.S. at 506-07.  That agreements among members of a joint venture are often

8   judged by the rule of reason rather than by the *per se* doctrine does not mean that such

9   conduct is lawful.  *See NCAA* at 110.

10           Counter-Defendants cannot claim immunity from the antitrust laws simply by

11   characterizing their horizontal price fixing activities as a "joint venture."  That the "core

12   activity" of MPEG LA involves "collecting and distributing the royalties" for which it "must

13   have discretion to determine the prices" does not immunize such conduct from scrutiny

14   under the antitrust laws or mean that its conduct is not price fixing within the meaning of

15   Section 1.  (Mot. 18:12-17).  Counter-Defendants misread *Texaco, Inc. v Dagher*, 547 U.S.

16   1, 3 (2006), which they claim holds that price-fixing agreements by horizontal competitors

17   are lawful within the context of joint ventures; in fact, that decision holds only that it is not a

18   *per se* violation of the antitrust laws for a lawful, integrated joint venture to set its prices, and

19   that the agreement should be evaluated "pursuant to the rule of reason."  (547 U.S. at 7.)

20       **D.**     **The Breach of Contract and Promissory Estoppel Claims State Valid**

21                 **Claims for Relief**

22           As set forth in Section III above, Sceptre's breach of contract and promissory

23   estoppel claims are well-established; in fact, nearly every court to consider the issue has

24   denied motions to dismiss on similar facts.  *See supra* Section III.

25           Counter-Defendants argue that Sceptre cannot satisfy the breach element of its

26   contract claim as it "never attempted to negotiate a license with the Patent Owners."  (Mot.

27   18:28-19:1.)  However, as stated above, because this purported "fact" is demonstrably false

28   by Plaintiffs' own judicial admission and contrary to the well-pled allegations of the FAC, it

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

21

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

1  cannot form the basis for dismissal.  *See* Section V.A., *supra*.

2        Counter-Defendants next defy the most elementary of claim pleading principles in

3  arguing that Scepter "cannot have it both ways," but must elect at this pleading stage of the

4  lawsuit whether it will admit or deny the patents in suit are standard essential.  *See* Fed. R.

5  Civ. P. 8(e)(2) ("A party may set forth two or more statements of a claim or defense

6  alternately or hypothetically"); *Donovan v. Royal Logging Co.*, 645 F.2d 822, 828 (9th Cir.

7  1981).  However, Counter-Defendants cite no authority for their assertion that Sceptre must

8  make that election now.

9       **E.**      **The Section 17200 Claim States a Valid Claim for Relief**

10        Counter-Defendants do not challenge the sufficiency of Sceptre's Section 17200

11  claim except to the extent it is premised upon allegations of antitrust violations.  (Mot. at 20.)

12  For the reasons set forth above, Sceptre properly pleads that Counter-Defendants have

13  violated and continue to violate Sections 1 and 2 of the Sherman Act, and have thereby

14  violated Section 17200, as well.  *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, *supra*, 2012

15  WL 1672493 at *8 ("Because Apple has adequately alleged a violation of Section 2 of the

16  Sherman Act, Apple has also stated a claim that Samsung's conduct violates the California

17  UCL"); *Apple, Inc. v. Motorola Mobility, Inc.*, *supra*, 2011 WL 7324582 at *14 (same).

18  **VII.**    **SCEPTRE'S ANTITRUST AND STATE LAW COUNTERCLAIMS MEET THE**

19         ***TWOMBLY* STANDARD**[20]

20      **A.**      **Sceptre's Section 1 Claim Meets the Twombly Standard**

21       "A claim has facial plausibility when the plaintiff pleads factual content that allows the

22  court to draw the reasonable inference that the defendant is liable for the misconduct alleged

23  . . . ."  *Vizio, Inc. v. FunaiElec. Co. Ltd.*, No. 09-0174, 2010 WL 7762624, at *3 (C.D. Cal.

24  Feb. 3, 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)).  "[T]o

25  survive a motion to dismiss under Rule 12(b)(6), a plaintiff need only allege 'enough factual

26  matter (taken as true) to suggest that an agreement was made.'"  *Starr v. Sony BMG Music*

27
28  ---
[20] *Twombly*, 550 U.S. at 569 (under Rule 8, cause of action for Section 1 violation requires "only enough facts to state a claim for relief that is plausible on its face").

1   *Entertainment*, 592 F.3d 314 (2d Cir. 2010) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S.

2   554, 556 (2007) ).

3      In *Vizio v. Funai*, the court held that Vizio sufficiently pled a Section 1 claim based on

4   allegations of a shared commitment to a common scheme to circumvent FRAND

5   commitments to the ATSC.  2010 WL 7762624, at *6.  The court reasoned: "[W]hen

6   patentees join in an agreement . . . to maintain prices on their several products, that

7   agreement, however advantageous it may be to stimulate the broader use of patents, is

8   unlawful per se under [Section 1 of] the Sherman Act."  *Id*. (alteration in original) (quoting

9   *United States v. Line Materials Co.*, 333 U.S. 287, 290-91 (1948)).

10      Sceptre has more than satisfied this pleading standard.  Unlike *Twombly* and most of

11   the cases cited in the Motion, this is not a case in which an agreement to set prices is pled

12   based on inferences from parallel conduct.  (Mot. 21-22.)  Indeed, Counter-Defendants *admit*

13   that they have offered the ATSC patent pool license through MPEG LA (Complaint ¶23), and

14   that they have fixed the pool price at $5 per unit.  (*See* Mot. at 5.)  Sceptre has set forth facts

15   establishing that Counter-Defendants agreed to set the price for the royalty rate for the

16   ATSC Patent Pool, that they agreed not to compete on the price for their technology, and

17   that they agreed to set an excessive price of $5 per unit in violation of their FRAND

18   obligations with the intent of harming and eliminating competition.  (FAC ¶¶ 64-69, 86, 98-

19   103, 105-106, 125-31.)  The specifics of several meetings and discussions are described in

20   the Counterclaims in detail, including the participants to the discussions, the dates, and the

21   agreement.  (FAC ¶¶ 57-66.)   These facts firmly establish the existence of an unlawful

22   agreement to set prices in restraint of competition in the downstream television product

23   market.  Particularly given that most conspiracies to fix prices are proven by inference (as

24   Counter-Defendants' authorities well note), the pre-discovery facts alleged by Sceptre are far

25   more specific than those customarily pled in support of such claims.

26      Finally, contrary to Counter-Defendants' statement that Sceptre has failed to identify

27   the expired patents and those which are not essential to practice the ATSC Standard in the

28   United States upon which Sceptre bases its breach of FRAND obligations (Mot. 22:26-23:8),

23

1    Sceptre has expressly identified those patents.  (FAC ¶ 70 at 23:6-24).  Thus, unlike the

2    plaintiff in *Nero AG v. MPEG LA LLC*, No. 10-3672, at *7-8 (C.D. Cal. Sept. 14, 2010),

3    Sceptre has sufficiently identified the factual basis for its claims.

4        **B.**    **Sceptre's Section 2 Counterclaims Meets the Twomblv Standard**

5        Counter-Defendants do not dispute that a deceptive FRAND commitment is

6    anticompetitive conduct for the purposes of establishing a Section 2 claim.  *See Broadcom,*

7    510 F.3d at 311; *Apple,* 2012 WL 1672493, at *7-8; *Research in Motion,* at 793.[21]  Counter-

8    Defendants instead argue that Sceptre has not complied with the requirements of Rule 9(b)

9    of the Federal Rule of Civil Procedure ("Rule 9(b)") in pleading Counter-Defendants' FRAND

10   obligations with specificity.

11       Whether the pleading standard of Rule 8 or Rule 9(b) is applied, the Counterclaims

12   plead sufficient detail.  Contrary to Counter-Defendants' statement that Sceptre has failed to

13   plead "who made the FRAND declarations, when those declarations were made, to whom

14   were the declarations made" (Mot. 23:18-19), Sceptre has, in fact, pled all of that

15   information, including the dates, contents, senders and recipients of each of the Plaintiffs'

16   FRAND commitments.  (*See* FAC ¶42(a)-(d).)  Counter-Defendants' suggestion that Sceptre

17   has failed to identify "the specific patents" they agreed to license on FRAND terms (Mot.

18   23:20-21) is disingenuous given that each Plaintiff agreed to license ***all*** of their standard

19   essential patents on FRAND terms, and they have claimed the patents in suit and the ATSC

20   pool are essential to the ATSC Standard.  (Mot. 5:1-3; *see also* FAC ¶42.)  Accordingly, the

21   Section 2 claim satisfies the pleading requirements of *Twombly.*

22       **C.**    **Sceptre's State Law Claims Meets the Twombly Standard**

23       Counter-Defendantss half-heartedly state that Sceptre's state law claims fail for the

24   same "lack of notice" as its federal claims.  (Mot. 24:9.)  For the reasons stated above, and

25   as confirmed by numerous authorities cited throughout and in Section III above, Sceptre's

26   _____

27   [21] *Cf. Actividentity Corp. v. Intercede Group PLC,* 2009 WL 8674284, *3 (N.D.Cal.
     September 11, 2009) (citing *Broadcom,* and holding: "Monopolization and attempted
     monopolization claims 'are not akin to fraud' and thus subject to the pleading standard in
     FRCP 8, not FRCP 9(b)").

28

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

24

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED COUNTERCLAIMS

state law claims satisfy the *Twombly* pleading requirements.

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Counter-Defendants' Motion to Dismiss should be denied.[22]

Dated:  November 24, 2014

By:    /s/ Shari Mulrooney Wollman

Shari Mulrooney Wollman
MANATT, PHELPS & PHILLIPS, LLP
*Attorneys for Defendant and Counterclaimant*
SCEPTRE, INC.

313286227.3

---

[22] Sceptre respectfully requests leave to amend should this Court finds its claims deficient in any respect.  *See* Rule 15(a) Fed.R.Civ.Proc.; *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1052 (9th Cir. 2003) (dismissal with prejudice without granting leave to amend was abuse of discretion). Contrary to Counter-Defendants' assertions, Sceptre has not amended its Counterclaims "four times" but only once on substantive grounds. *See* Dkt. 36, 38, 40.  As Counter-Defendants objected to the filing of a separate Third Party Complaint, Sceptre agreed to file a single document – Dkt. 51 – which the Court struck on November 13, 2014 in favor of Sceptre's original format of separate pleadings.  [Dkt.58]  *See* Dkt. 61, 62.  With the other filings Sceptre made only minor edits.

MANATT, PHELPS &
PHILLIPS, LLP
ATTORNEYS AT LAW
LOS ANGELES

25

SCEPTRE'S OPPOSITION TO MOTION TO
DISMISS SCEPTRE'S FIRST THROUGH SIXTH
AMENDED  COUNTERCLAIMS