Susan L. Gutierrez (State Bar No. 273980)
sgutierrez@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206
Telephone:  (310) 557-2900
Facsimile:   (310) 557-2193

Steven M. Bauer (admitted *pro hac vice*)
sbauer@proskauer.com
Justin J. Daniels (admitted *pro hac vice*)
jdaniels@proskauer.com
Safraz W. Ishmael (admitted *pro hac vice*)
sishmael@proskauer.com
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110
Telephone:  (617) 526-9600
Facsimile:   (617) 526-9899

Baldassare Vinti (admitted *pro hac vice*)
bvinti@proskauer.com
PROSKAUER ROSE LLP
Eleven Times Square
New York, New York 10036
Telephone:  (212) 969-3000

Attorneys for Plaintiffs and MPEG LA LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZENITH ELECTRONICS LLC, PANASONIC CORPORATION, and U.S. PHILIPS CORPORATION,<br><br>　　　　　　　Plaintiffs,<br>　vs.<br>SCEPTRE, INC.,<br>　　　　　　　Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. LA CV14-05150 JAK (AJWx)<br><br>Hon. John A. Kronstadt<br><br>**REPLY MEMORANDUM IN FURTHER SUPPORT OF PLAINTIFFS' AND MPEG LA'S MOTION TO DISMISS SCEPTRE, INC.'S AMENDED COUNTERCLAIMS FIRST THROUGH SIXTH PURSUANT TO FED. R. CIV. P. 12(B)(1) & (6)**<br><br>Date:　　　Dec. 15, 2014<br>Time:　　　8:30 a.m.<br>Courtroom:　750<br><br>Amended Counterclaims Re-Filed: Nov. 13, 2014 |

REPLY BRIEF ISO MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

ARGUMENT .................................................................................................................. 1

I. SCEPTRE LACKS STANDING TO SUE ........................................................ 1

    A. Sceptre Lacks Article III Standing As To All Claims ............................ 1

    B. Sceptre Also Lacks Antitrust Standing ................................................... 2

        1. Sceptre Lacks Standing For Its Sherman Act § 1 Claim .............. 2

        2. Sceptre Lacks Standing For Its Sherman Act § 2 Claims ............ 3

II. THE STATUTE OF LIMITATIONS HAS EXPIRED ..................................... 5

III. SCEPTRE'S AMENDED COUNTERCLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED ................................ 6

    A. Sceptre's Sherman Act § 2 Monopolization Counterclaim .................... 7

    B. Sceptre's Sherman Act § 2 Conspiracy to Monopolize Counterclaim .......................................................................................... 8

    C. Sceptre's Sherman Act § 1 Counterclaim .............................................. 9

    D. Sceptre's State Law Counterclaims ....................................................... 9

IV. SCEPTRE'S AMENDED COUNTERCLAIMS MUST ALSO BE DISMISSED BECAUSE THEY FAIL THE PLEADING STANDARDS OF RULES 8(a) AND 9(b) ..................................................... 9

CONCLUSION ............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alaska Airlines, Inc. v. United Airlines, Inc.*,
 948 F.2d 536 (9th Cir. 1991) ........................................................................................ 7

*American Tobacco Co. v. United States*,
 328 U.S. 781 (1946) ..................................................................................................... 8

*Apple, Inc. v. Motorola Mobility, Inc.*,
 886 F. Supp. 2d 1061 (W.D. Wisc. 2012) ("*Apple III*") ...................................... 4, 5

*Apple Inc. v. Samsung Electronics Co.*,
 No. 11-CV-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18,
 2011) ("*Apple I*") ..................................................................................................... 2, 9

*Apple v. Motorola Mobility*,
 No. 11-cv-178, 2011 WL 7324582 (W.D. Wisc. June 7, 2011)
 ("*Apple II*") .................................................................................................................. 4

*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) ..................................................................................................... 7

*Broadcom Corp. v. Qualcomm, Inc.*,
 501 F.3d 297 (3rd Cir. 2007) ....................................................................................... 2

*Carter v. Variflex*,
 101 F. Supp. 2d 1261 (C.D. Cal. 2000) ...................................................................... 5

*Clapper v. Amnesty Int'l USA*,
 ___ U.S. ___, 133 S. Ct. 1138 (2013) ........................................................................ 1

*David Orgell, Inc. v. Geary's Stores, Inc.*,
 640 F.2d 936 (9th Cir. 1981) ....................................................................................... 6

*ERBE Elecktromedizin GmbH v. Canady Tech. LLC*,
 629 F.3d 1279 (Fed. Cir. 2010) ................................................................................... 6

*GSI Tech., Inc. v. Cypress Semiconductor Corp.*,
 No. 11-3613, 2012 WL 2711040 (N.D. Cal. July 6, 2012) ...................................... 5

*Kendall v. Visa U.S.A., Inc.*,
    518 F.3d 1042 (9th Cir. 2008) ........................................................................... 9

*Nero AG v. MPEG LA, LLC*,
    No. 10-cv-3672-MRP, 2010 WL 4878835 (C.D. Cal. Nov. 24, 2010) ............ 2, 10

*Newcal Indus. Inc. v. IKON Office Solution*,
    513 F.3d 1038 (9th Cir. 2008) ........................................................................... 2

*Pace Indus., Inc. v. Three Phoenix Co.*,
    813 F.2d 234 (9th Cir. 1987) ............................................................................. 6

*Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*,
    508 U.S. 49 (1993) ............................................................................................ 6

*Red Lion Med. Safety, Inc. v. Ohemda, Inc.*,
    63 F. Supp. 2d 1218 (E.D. Cal. 1999) ............................................................... 5

*Rickards v. Canine Eye Registrations Foundation*,
    783 F.2d 1329 (9th Cir. 1986) ........................................................................... 5

*Sun Dun, Inc. of Washington v. Coca-Cola Co.*,
    740 F. Supp. 381 (D. Md. 1990) ....................................................................... 8

*Texaco v. Dagher*,
    547 U.S. 1 (2006) .............................................................................................. 9

*United States v. American Airlines*,
    743 F.2d 1114 (5th Cir. 1984) ........................................................................... 8

*Virginia Panel Corp. v. MAC Panel Co.*,
    133 F.3d 860 (Fed. Cir. 1997) ........................................................................... 6

*Vizio, Inc. v. Funai Elec. Co.*,
    No. CV 09-0714-AHM, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010) ............ 10

*Xechem, Inc. v. Bristol-Myers Squibb Co.*,
    274 F. Supp. 2d 937 (N.D. Ill. 2003) ................................................................. 6

**FEDERAL RULES**

Fed. R. Civ. P. 9(b) ................................................................................................... 9

# ARGUMENT

## I. SCEPTRE LACKS STANDING TO SUE

### A. Sceptre Lacks Article III Standing As To All Claims

No matter how much it tries to distract from the issue, Sceptre cannot avoid the fact that it never sought or discussed a bilateral license with any Patent Owner prior to bringing suit.[1] Sceptre has no standing to make these allegations because it has no factual basis upon which to assert that the Patent Owners are violating any FRAND commitments, whether couched as a federal antitrust or state law claim. There is simply no way Sceptre can claim that injury "is certainly impending," as required by the Supreme Court. *Clapper v. Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1155 (2013).

Sceptre argues that the notice letters from MPEG LA constitute contact and thus somehow "concede[] Sceptre has Article III standing." Opp. Br. 10-11. However, Sceptre does not allege (because it cannot) that it ever attempted to negotiate licenses with the counterclaim defendant *Patent Owners* or that the counterclaim defendant *Patent Owners* refused to negotiate. Indeed, the Counterclaim allegations Sceptre cites in its opposition only assert that "*MPEG LA* has demanded that Sceptre enter into a license agreement for the ATSC Pool" and that "Sceptre has attempted to negotiate license agreements with *MPEG LA* on FRAND terms." ACC ¶¶ 72-73 (emphasis added).

Sceptre tries to excuse its failure to reach out to the Patent Owners by arguing that negotiations with them would have been "illogical, contradicted by the facts, economic and practical realities, and legally unsupported." Opp. Br. 11. But that very argument was asserted against MPEG LA and rejected by this Court as wholly

---

[1] The Patent Owners' only obligation, as alleged in the ACC, was "to make any relevant patents that they owned *available* either free of charge or on a reasonable, nondiscriminatory basis." ACC ¶ 41 (citing FCC) (emphasis added). The Patent Owners are not required affirmatively to seek out potential licensees.

1

speculative in *Nero AG v. MPEG LA, LLC*, No. 10-cv-3672-MRP, 2010 WL 4878835 (C.D. Cal. Nov. 24, 2010) (granting a motion to dismiss with prejudice):

> Nero's monopolization claim continues to rely heavily on the economic infeasibility of individual licensing, but Nero has not demonstrated any attempt to license the necessary patents individually. The burden of proving lack of a realistic opportunity to license directly cannot be met where a plaintiff never makes an inquiry or attempts to negotiate a single individual license. As the Court explained in its prior Order, because Nero has not tried to individually license only the patents it needs, its argument that direct licensing is economically infeasible remains a speculative hypothesis.

*Nero*, 2010 WL 4878835, at *2 (citations and internal quotations omitted). Sceptre has made no allegation that individual licensing would be impossible.

Sceptre also surprisingly cites *Broadcom Corp. v. Qualcomm, Inc.*, 501 F.3d 297 (3rd Cir. 2007), and *Apple Inc. v. Samsung Electronics Co.*, No. 11-CV-01846-LHK, 2011 WL 4948567 (N.D. Cal. Oct. 18, 2011) ("*Apple I*"), even though these cases undercut Sceptre's argument since both involved licenses: Broadcom claimed that "Qualcomm allegedly demanded that Broadcom license Qualcomm's UMTS technology on non-FRAND terms," 501 F.3d at 305, and Apple alleged that "Samsung has subsequently refused to license its standard essential patents on FRAND terms …," 2011 WL 4948567, at *1-2. Here, because Sceptre never sought a license from the Patent Owners, it has no basis to claim that the Patent Owners will refuse to license their patents on FRAND terms.[2]

### B. Sceptre Also Lacks Antitrust Standing

#### 1. Sceptre Lacks Standing For Its Sherman Act § 1 Claim

Tellingly, Sceptre does not challenge the settled law that a competitor does not have antitrust standing to assert a Sherman Act § 1 claim based on price fixing

---

[2] The other cases cited by Sceptre miss the issue. Three of them (*Already v. Nike*, *MedImmune*, and *Societe de Conditionnement*), concerned invalidity counterclaims in response to an infringement suit – which is not challenged here; and the last, *Newcal Indus. Inc. v. IKON Office Solution,* 513 F.3d 1038 (9th Cir. 2008), involved challenging the validity of a contract where a party had *threatened to sue* the other for interference on the contract. *Id.* at 1057. Here, there is no such claim.

against its horizontal competitors. Instead, it tries to distance itself from that law by arguing that its case is not about the "downstream product market in which Sceptre and Plaintiffs compete," but about fixing prices in the upstream technology market. Opp. Br. 12. This attempted parsing does not save the case for Sceptre.

First, Sceptre's citations to its ACC (¶¶ 88, 114-15 & 117, 121, 125-26, 128-30) are either off point or concern its Sherman Act § 2 claims. The applicable allegations make clear that its § 1 case is about the downstream market:

> 140. By engaging in the Anticompetitive Conduct, including but not limited to their practice of refusing licensing on FRAND terms, Plaintiffs and/or Plaintiffs and MPEG LA, are, upon information and belief, *attempting to unreasonably restrain and suppress price competition in the downstream product market.* (emphasis added)

Second, there can be no antitrust standing because, even under Sceptre's theory, the only persons who suffer antitrust harm from horizontal price fixing are those who buy/license the fixed good or service, and as Sceptre has not entered into a license, it did not suffer an antitrust injury. Sceptre has not pointed to a case where a plaintiff who failed to purchase the product that was the subject of a § 1 horizontal price fixing scheme was held to have antitrust standing.

## 2. Sceptre Lacks Standing For Its Sherman Act § 2 Claims

With respect to Sherman Act § 2, Sceptre now seems to accept that it has not been excluded from the alleged downstream product market where, since at least 2007, it has been selling products using the Patent Owners' technology without paying any royalties. Instead, it now argues that "actual exclusion" from the market is not necessary to establish standing, only a threat. Opp. Br. 14. Sceptre misses the point, because there is no threat under any circumstance that Sceptre will be excluded due to alleged anticompetitive conduct.

Importantly, Sceptre is not even faced with the "threat" of increased costs from "being forced to pay supra-competitive royalties" (Opp. Br. 14), because Sceptre never entered into a license with the Patent Owners or MPEG LA, and

3

REPLY BRIEF ISO MOTION TO DISMISS

therefore, has never paid any royalties, let alone overpaid or incurred "increased costs" as a result of the purported demand for non-FRAND royalties.  Nor will Sceptre have to pay a supra-competitive royalty in the future.  By bringing the underlying patent infringement action, the Patent Owners have put the issue of the amount of royalties into the fact finder's hands.  If and when it is determined what Sceptre has to pay, this will, by definition, be a reasonable royalty.

Sceptre's reliance on *Apple v. Motorola Mobility*, No. 11-cv-178, 2011 WL 7324582 (W.D. Wisc. June 7, 2011) ("*Apple II*"), is misplaced.  Although Apple initially survived a motion to dismiss because it had alleged that it was threatened with exclusion by Motorola's request for supra-competitive royalties, *id.* at *14, the court then dismissed Apple's claim when it learned that Apple chose to enter the smartphone market without obtaining a license from Motorola, *Apple, Inc. v. Motorola Mobility, Inc.*, 886 F. Supp. 2d 1061, 1076 (W.D. Wisc. 2012) ("*Apple III*").  Indeed, the facts of *Apple III* are much like those here – Apple was aware of Motorola's essential patents but felt that Motorola was demanding a non-FRAND royalty rate;  Apple decided to enter the smartphone market at risk, continuing to manufacture and market its products despite Motorola's licensing demands; and when Motorola brought an infringement action, Apple counterclaimed alleging a violation of § 2 of the Sherman Act arising from Motorola's alleged deceptive conduct and failure to offer a FRAND license.  *Id.* at 1076.  The court held that Apple was not harmed by Motorola's licensing demands because it entered the market anyway:  "the only injury Apple suffered as a result of Motorola's alleged antitrust violation was the attorney fees and costs that it has incurred responding to the patent litigation initiated by Motorola," and because Motorola's attempt to enforce its patents "is privileged conduct protected by the 1st Amendment," Apple did not suffer antitrust injury as the purported harm did not flow from an antitrust

violation. *Id*. at 1076-77.[3]

Here, Sceptre entered the market without taking a license and now claims that it was injured by both the costs of defending the underlying infringement suit and its resultant, "lost profits and opportunities, including decreased output and lost sales." Opp. Br. 14. It follows under *Apple III* that Sceptre's defense costs and business decisions flowing from constitutionally-protected action are not antitrust injury.

## II. THE STATUTE OF LIMITATIONS HAS EXPIRED

Sceptre does not dispute that the 4-year statute of limitations for its antitrust counterclaims (or the other limitations periods for its other claims) began to run no later than 2007 when it entered the DTV market and when MPEG LA set the $5.00 per unit rate for the ATSC Pool License. As a result, the time for it to bring those claims expired in 2011.

Sceptre argues now that the limitations period was somehow tolled by "continuing antitrust violation[s]," the last of which was allegedly the initiation of this litigation in 2014.[4] Opp. Br. 15-16 (citing to *Pace Indus., Inc. v. Three Phoenix Co.*, 813 F.2d 234, 237-38 (9th Cir. 1987)). But a non-sham patent infringement lawsuit or other communication putting patent infringers on notice cannot form the

---

[3] Sceptre's reliance on *Rickards* and *Carter* is unavailing because those decisions were based on *frivolous* lawsuits, which is not alleged here. *See Rickards v. Canine Eye Registrations Foundation*, 783 F.2d 1329, 1334-35 (9th Cir. 1986); *Carter v. Variflex*, 101 F. Supp. 2d 1261, 1265 n.1 (C.D. Cal. 2000). Nor do the *Red Lion* or *GSI Tech.* cases support Sceptre's claim that lost profits and lost opportunities constitute an antitrust injury where the alleged losses arose from claimant's own business decision allegedly motivated by fear of a lawsuit. *See Red Lion Med. Safety, Inc. v. Ohemda, Inc.*, 63 F. Supp. 2d 1218, 1221-22, 1235 (E.D. Cal. 1999) (alleged injury based on loss of potential customers due to policy on sale of replacement parts; *GSI Tech., Inc. v. Cypress Semiconductor Corp.*, No. 11-3613, 2012 WL 2711040, at *1-*2, *7 (N.D. Cal. July 6, 2012) (alleged injury based on loss of potential customers due to being shut out of chip maker consortium).

[4] Other than this litigation, Sceptre does not allege any other continuing violations. While Sceptre does cite to ACC ¶¶ 93, 147, and 153, the alleged violations and/or damages identified in those paragraphs all are directly tied to the present litigation.

basis of an antitrust claim because it is protected conduct. *See Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993); *ERBE Elecktromedizin GmbH v. Canady Tech. LLC,* 629 F.3d 1279, 1292 (Fed. Cir. 2010) (no antitrust liability based on the filing of a non-sham patent infringement lawsuit); *Apple III*; *Virginia Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 873 (Fed. Cir. 1997) ("antitrust laws do not preclude patentees from putting suspected infringers on notice of suspected infringement"). Thus, neither letters to customers nor this lawsuit can form the basis of a claim and thus cannot be an independent overt act.

Moreover, the demands cannot qualify as a continuing violation that tolls the statute of limitations because they fail the *Pace* test for continuing violations: "1) It must be a new and independent act that is not merely a reaffirmation of a previous act; and 2) it must inflict new and accumulating injury on [the antitrust] plaintiff." *Pace* , 813 F.2d at 238. The present lawsuit is merely the reaffirmation of the Patent Owners demand for royalty payments for their respective ATSC patents (an original act that was done in 2007). It is not a new and independent act, and it does not inflict new injury. *See Xechem, Inc. v. Bristol-Myers Squibb Co.*, 274 F. Supp. 2d 937, 945 (N.D. Ill. 2003) (acts did not meet continuing violation standard as they "did nothing more than reaffirm BMS's earlier effort to block . . . Xechem . . . from competing with BMS.").[5]

### III. SCEPTRE'S AMENDED COUNTERCLAIMS FAIL TO STATE CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Sceptre argues that its Counterclaims are "similar to claims asserted in cases throughout the country" and, therefore, the Court should deny the Plaintiffs' Motion.

---

[5] Moreover, any other act by Patent Owners and MPEG LA that Sceptre can point to after the 2007 time period is not a new and independent act, but rather a reaffirmation of the Patent Owners' original decision to seek royalties for their ATSC patents from Sceptre. *See e.g. David Orgell, Inc. v. Geary's Stores, Inc.*, 640 F.2d 936, 938 (9th Cir. 1981) (antitrust claims time barred because the limitations period ran from first refusal to sell to plaintiff, and subsequent refusals merely reaffirmed first refusal).

1  Opp. Br. 7-9.  However, "formulaic recitation of the elements of a cause of action will
2  not do" as the complaint must contain enough factual allegations "to raise a right to
3  relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555
4  (2007).  Sceptre's allegations fail to state claims upon which relief can be granted.

### A. Sceptre's Sherman Act § 2 Monopolization Counterclaim

Faced with settled law barring monopoly leveraging claims, Sceptre claims that it is not asserting such a claim.  Opp. Br. 17.  Sceptre's own pleading disproves this (ACC ¶¶ 88, 94, 115, 121); and is reaffirmed in the Joint Rule 16(b)/26(f) Report, in which Sceptre asserts that the counterclaim defendants seek "to *use their purported standard essential patents* to eliminate competition *in the downstream product market* for the sale of televisions" and "to drive lower price-tier competitors like Sceptre out of business *in order to gain market share*, at higher price points, *for themselves*." [Dkt. No. 66 at 3-4 (emphasis added)]

Sceptre also mischaracterizes why the Ninth Circuit rejected "monopoly leveraging" as a cause of action under Sherman Act § 2.  *See Alaska Airlines, Inc. v. United Airlines, Inc.*, 948 F.2d 536, 548-49 (9th Cir. 1991).  The issue was not, as Sceptre claims, whether the first monopoly was gained lawfully or unlawfully, but whether a monopoly was in fact achieved or attempted in the secondary market.  As stated by the Court:  "Unless the monopolist uses its power in the first market *to acquire and maintain* a monopoly in the second market, or to attempt to do so, there is no Section 2 violation."  *Id*. (emphasis added).  Here, Sceptre does not allege an attempted monopolization claim, and does not allege that a monopoly has been achieved in the secondary market.  Accordingly, it has no claim.

Another fatal flaw in Sceptre's § 2 claim is its failure to allege that the Patent Owners and/or MPEG-LA possess monopoly power in the relevant market (alleged as the ATSC technology market).  Sceptre argues that it has alleged power because each essential patent has power.  Opp. Br. 18.  Sceptre misses the point.  It is not

about a patent's power to exclude, but whether Sceptre has a choice; and Sceptre does not dispute that it has the option of licensing the ATSC pool or, alternatively, licensing from each patent holder. Its only argument is that this alternative is "self-evident fiction" that is "impractical and economically unfeasible." Opp. Br. 18-19. But as has already been shown, that excuse does not work. *See supra* pp. 1-2.[6]

### B. Sceptre's Sherman Act § 2 Conspiracy to Monopolize Counterclaim

For each claim under § 2, the goal or result must be a single entity's acquisition (or maintenance) of monopoly power (Opening Br. 16-17), and *American Tobacco Co. v. United States*, 328 U.S. 781 (1946), is not to the contrary. A "shared monopoly" theory was unnecessary in that case because each defendant enjoyed "marked dominance," *id.* at 796; in fact, each was individually convicted of monopolization, *id.* at 783, and the only issue was whether "actual exclusion of competitors is necessary to the crime of monopolization under Section 2 of the Sherman Act," *id.* at 784. Thus, the Supreme Court did not opine on the jury's verdict of conspiracy to monopolize. *Id.* at 789 ("[T]here is no issue of fact or question as to the sufficiency of the evidence to be discussed here").[7] Other courts have similarly observed that the Supreme Court in *American Tobacco* did not address the viability of a "shared monopoly" theory. *See, e.g.*, *Sun Dun, Inc. of Washington v. Coca-Cola Co.*, 740 F. Supp. 381, 391 (D. Md. 1990) ("In [*American Tobacco*], the Court affirmed a conviction of horizontal competitors for conspiracy to monopolize, but the issue whether *competitors* were capable of conspiring to monopolize was neither presented nor decided.") (emphasis in original).

---

[6] Sceptre claims that the Patent Owners and MPEG LA relied in their opening brief on a dissent from *Broadcast Music*. Opp. Br. 19 n.17. That is incorrect. The context makes clear that the point comes from the *majority* opinion. There was simply a typographical error; the citation should have read "23-24," not "29."

[7] *United States v. American Airlines*, 743 F.2d 1114 (5th Cir. 1984), confirmed that the *American Tobacco* opinion was limited in its holding to "whether actual exclusion of competitors" is necessary for a § 2 violation. *Id.* at 1120.

8

REPLY BRIEF ISO MOTION TO DISMISS

### C. Sceptre's Sherman Act § 1 Counterclaim

Sceptre alleges that MPEG LA is price fixing when it sets the royalty rate for the ATSC Patent Pool license. Opp. Br. 21. In support, Sceptre claims that the Patent Owners and MPEG LA misread *Texaco v. Dagher*. *Id.* That is not correct. In *Dagher*, the Supreme Court held that "price setting by a single entity – albeit within the context of a joint venture" is "not price fixing in the antitrust sense." 547 U.S. 1, 6 (2006). Accordingly, since Sceptre's § 1 Counterclaim against MPEG LA is concededly premised on price-fixing, it must be dismissed as it fails to identify an actionable price-fixing theory of liability.

### D. Sceptre's State Law Counterclaims

Sceptre relies on prior argument to support its state law claims. For the reasons already asserted, those claims fail. *See* Opening Br. 18-20.

## IV. SCEPTRE'S AMENDED COUNTERCLAIMS MUST ALSO BE DISMISSED BECAUSE THEY FAIL THE PLEADING STANDARDS OF RULES 8(a) AND 9(b)

Sceptre does not deny that its antitrust counterclaims must "answer the basic questions: who, did what, to whom (or with whom), where, and when." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1048 (9th Cir. 2008). However, Sceptre fails to identify where in it pleads with the particularity required under Rule 9(b) to make the allegation that each Patent Owner made false statements about licensing their patents on FRAND terms in order to induce the ATSC and FCC to adopt the ATSC standard, and the Patent Owners' respective technology. Sceptre points to ACC ¶ 42(a)-(d), identifying letters from the Patent Owners to the ATSC. But on their face, all these letters report are statements. They do not show where there was deceit or fraud, or any other acts that were meant to induce the ATSC to adopt the standard based on false premises. *See Apple I,* 2011 WL 4948567, at *4.

Without answering the necessary questions, Sceptre argues that its claims should not be dismissed because this Court did not dismiss the conspiracy claim

asserted in *Vizio, Inc. v. Funai Elec. Co.*, No. CV 09-0714-AHM, 2010 WL 7762624 (C.D. Cal. Feb. 3, 2010). But the price-fixing scheme to collect double royalties in *Vizio* was different from the allegations here, and the facts of that purported scheme *were* fully set out in the complaint. *Id.* at * 6. The fact that this Court credited Vizio with adequately pleading a price-fixing conspiracy has no bearing whatsoever on whether Sceptre has met its pleading burden here.

For at least the reasons discussed above with respect to the antitrust counterclaims, Sceptre's state law breach of contract, promissory estoppel, and unfair competition counterclaims also fail the pleading requirements. Fatally, Sceptre has no information about what royalty rate the Patent Owners would charge it for their individual ATSC patents, as Sceptre has chosen not to negotiate with them. "[T]he burden of proving lack of a realistic opportunity to license directly cannot be met where a plaintiff never makes an inquiry or attempts to negotiate a single individual license." *Nero*, 2010 WL 4878835 at *2.

## **CONCLUSION**

Sceptre has now had three times to amend its counterclaims – first, to delete paragraphs [Dkt. No. 38]; second, in response to the first motion to dismiss [Dkt. No. 51]; and third, to correct errors regarding personal jurisdiction [Dkt. No. 62]. Its Counterclaims First throughout Sixth should therefore be dismissed with prejudice.

DATED: December 1, 2014

PROSKAUER ROSE LLP
Steven M. Bauer
Justin J. Daniels
Baldassare Vinti
Safraz W. Ishmael
Susan L. Gutierrez

By: */s/ Susan L. Gutierrez*
    Susan L. Gutierrez

*Attorneys for ZENITH ELECTRONICS LLC, PANASONIC CORPORATION and U.S. PHILIPS CORPORATION, and MPEG LA LLC*

10

REPLY BRIEF ISO MOTION TO DISMISS